I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
VICKIE L. FEEMAN (STATE BAR NO. 177487)
vfeeman@orrick.com
LILLIAN J. MAO (STATE BAR NO. 267410)
lmao@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:    +1-650-614-7400
Facsimile:    +1-650-614-7401

Attorneys for Defendant
MOBILEIRON, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| GOOD TECHNOLOGY CORPORATION AND GOOD TECHNOLOGY SOFTWARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MOBILEIRON, INC.,<br><br>Defendant. | Case No. CV-12-05826 PSG<br><br>**MOBILEIRON, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**<br><br>Date:    April 28, 2015<br>Time:    10:00 a.m.<br>Courtroom: 5<br>Judge:   Hon. Paul S. Grewal |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 28, 2015, in the San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, Floor 4, Courtroom 5, before the Honorable Paul S. Grewal, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant MobileIron, Inc. ("MobileIron") will and hereby does move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Counts 2 and 3 in Plaintiffs' First Amended Complaint alleging infringement of U.S. Patent Nos. 7,702,322 and 7,970,386, respectively.

MobileIron seeks judgment on the pleadings on the grounds that the asserted claims of U.S. Patent Nos. 7,702,322 (claims 1, 5, 7 and 16) and 7,970,386 (claims 8 and 9) are directed to patent ineligible subject matter under 35 U.S.C. § 101. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and exhibits, the pleadings on file, any argument of counsel, and such other materials as may be presented in connection with the hearing on this motion.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

**TABLE OF CONTENTS**

Page

I. LEGAL STANDARDS ................................................................................................... 1

II. MOBILEIRON IS ENTITLED TO JUDGMENT ON THE '386 PATENT ...................... 4

    A. The '386 Patent Is Directed To The Abstract Idea Of Enforcing Rules ................ 4

    B. Asserted Claims 8 And 9 (And Claim 1 From Which They Depend) Lack Any Inventive Concept To Transform The Abstract Idea Into Patentable Applications ............................................................................................................ 7

III. MOBILEIRON IS ENTITLED TO JUDGMENT ON THE '322 PATENT ..................... 9

    A. The '322 Patent Is Directed To The Abstract Idea Of Ensuring Compatibility ....................................................................................................... 9

    B. Claim 7 Lacks Any Inventive Concept To Transform The Abstract Idea Into A Patentable Application ............................................................................... 12

    C. Claims 1, 5, and 16 Lack Any Inventive Concept To Transform The Abstract Idea Into Patentable Applications .......................................................... 13

IV. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*
    728 F.3d 1336 (Fed. Cir. 2013) ........................................................................................... 6, 13

*Alice Corp. v. CLS Bank International*,
    134 S. Ct. 2347 (2014) ...................................................................................................... *passim*

*Bascom Research LLC v. LinkedIn, Inc.*
    No. 12-cv-06293, 2015 U.S. Dist. LEXIS 4606, at *5-6 (N.D. Cal. Jan. 5,
    2015) ................................................................................................................................. 12, 14

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) .................................................................................................. 1

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010). ........................................................................................... 1, 2, 9, 13

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................ 1, 14

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
    No. 6:12-cv-674-LED, 2014 U.S. Dist. LEXIS 32209 (E.D. Tex. Jan. 21,
    2014) ........................................................................................................................................ 1

*Cogent Medicine, Inc. v. Elsevier*,
    No. C-13-4479, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) ............................... 1, 4, 11, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    2014 U.S. App. LEXIS 24258 (Fed. Cir. 2014) ..................................................................... 14

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) .......................................................................... 3, 4, 8, 12, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    No. 2013-1505, 2014 U.S. App. LEXIS 22902 (Fed. Cir. Dec. 4, 2014) .......................... 10, 13

*DietGoal Innovations LLC v. Bravo Media LLC*,
    2014 WL 3582914 ................................................................................................................. 12

*Digitech Image Techs., LLC v. Elecs. for Imaging, LLC.*,
    758 F.3d 1344 (Fed. Cir. 2014) ............................................................................................. 14

*Gottschalk v. Benson*,
    409 U.S. 63, 64, 67 (1972) ................................................................................................ 3, 12

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

*Le Roy v. Tatham*,
   55 U.S. 156, 14 How. 156, 175 L. Ed. 367 (1853) ................................................................. 2

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
   984 F. Supp. 2d 189 (S.D.N.Y. 2013) .................................................................................. 4

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ................................................................................................. *passim*

*O'Reilly v. Morse*,
   15 How. 62 (1854) ................................................................................................................ 2

*Open Text S.A. v. Box, Inc.*
   No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309 ....................................................1, 7, 14

*Parker v. Flook*,
   437 U.S. 584 (1978) ..........................................................................................................3, 9

*Planet Bingo, LLC v. VKGS, LLC*,
   961 F. Supp. 2d 840 (W.D. Mich. 2013) *aff'd Planet Bingo, LLC v. VKGS
   LLC*, No. 2013-1663, 2014 WL 4195788 (Fed. Cir. Aug. 26, 2014) .......................................... 4

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
   No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) .......................................... 1

*UbiComm, LLC v. Zappos IP, Inc.*
   No. 13-1029, 2013 U.S. Dist. LEXIS 161559 (D. Del. Nov. 13, 2013) ................................... 6

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ........................................................................................ *passim*

**Statutes**

35 U.S.C. § 101 ................................................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1

Fed. R. Civ. P. 12(c) ................................................................................................................1

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- iii -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

**MEMORANDUM OF POINTS AND AUTHORITIES**

U.S. Patent Nos. 7,907,386 (the "'386 patent") and U.S. Patent No. 7,702,322 (the "'322 patent") improperly claim computer implementation of ages-old abstract concepts. Asserted claims 8 and 9 of the '386 patent are directed to the abstract idea of enforcing rules. Claims 1, 5, 7 and 15 of the '322 patent are directed to the abstract idea of ensuring compatibility between two items that will be used together. The Supreme Court's recent decision in *Alice Corp. v. CLS Bank International*[1] and subsequent rulings by the Federal Circuit confirm that such "abstract ideas" are not subject matter eligible for a patent under U.S. law.

The asserted claims of both patents simply mirror human mental processes without providing any inventive concept. While those claims limit application of the abstract ideas to a specific environment—enforcing rules on a wireless device, and software compatibility with a wireless device, respectively—courts have consistently found that such limitations are insufficient to save an abstract claim. Simply put, a particular computer implementation does not transform an abstract idea into a patent-eligible invention. Accordingly, MobileIron respectfully requests judgment in its favor on Plaintiffs' claims of infringement of the '386 and '322 patents.

**I.   LEGAL STANDARDS**

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law."[2] Because § 101 inquiries can be resolved based on a patent's intrinsic record alone, district courts, including those in this district, routinely determine patent ineligibility on Rule 12 motions.[3] The Federal Circuit has affirmed this practice.[4]

Computer implementations of abstract ideas are not patentable subject matter. Under 35

---

[1] 134 S. Ct. 2347 (2014).
[2] *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010).
[3] *See Open Text S.A. v. Box, Inc.* No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309, at *3 (N.D. Cal. Jan. 20, 2015 (granting Rule 12(c) judgment on the pleadings); *Cogent Medicine, Inc. v. Elsevier*, No. C-13-4479, 2014 WL 4966326, at *3 (N.D. Cal. Sept. 30, 2014) (granting Rule 12(b)(6) dismissal); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-674-LED, 2014 U.S. Dist. LEXIS 32209, at *23-25 (E.D. Tex. Jan. 21, 2014) (granting Rule 12(c) judgment on the pleadings); *Tuxis Technologies, LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446, at *1 (D. Del. Sept. 3, 2014) (granting Rule 12(b)(6) dismissal).
[4] *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (judgment on the pleadings); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711-12 (Fed. Cir. 2014) (Rule 12(b)(6) dismissal).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

U.S.C. § 101, an invention can be patented if it is a "process, machine, manufacture, composition of matter, or any new and useful improvement thereof."[5] But the Supreme Court has long recognized important implicit exceptions: laws of nature, physical phenomena and abstract ideas are not patentable.[6] These exceptions form "the basic tools of scientific and technological work," and are "free to all men and reserved exclusively to none."[7] Monopolizing this knowledge negates the purpose of the patent system, and "tend[s] to impede innovation more than it would tend to promote it."[8] And patents claiming ineligible subject matter improperly award supposed "inventors" with exclusive rights to concepts they could not and did not invent.[9]

In its recent *Alice* decision, the Supreme Court unanimously reaffirmed the test—first set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*[10]—for determining whether a patent improperly claims an abstract idea.[11] First, a court must determine whether the claims-at-issue are directed to an abstract idea.[12] Then, the court must determine if the patent claims contain an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent eligible application.[13]

The Federal Circuit's decision in *Ultramercial, Inc. v. Hulu, LLC*[14] illustrates the application of *Alice*'s two-part test. The representative claim in that case recited a "method for distribution of products over the Internet via a facilitator."[15] Applying the first step, the court found that "claim 1 includes eleven steps for displaying an advertisement in exchange for access to copyrighted media."[16] Taken together, the steps "recite[] an abstraction—an idea, having no

---

[5] 35 U.S.C. § 101.
[6] *Bilski*, 130 S. Ct. at 3225.
[7] *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *see also Le Roy v. Tatham*, 55 U.S. 156, 14 How. 156, 175 L. Ed. 367 (1853) ("A principle, in the abstract is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right).
[8] *Mayo*, 132 S. Ct. at 1293.
[9] *O'Reilly v. Morse*, 15 How. 62, 112-120 (1854).
[10] 132 S. Ct. 1289 (2012).
[11] 134 S. Ct. 2347, 2355 (2014).
[12] *Id.*
[13] *Id.* at 2356.
[14] 772 F.3d 709 (Fed. Cir. 2014).
[15] *Id.* at 712.
[16] *Id.* at 714.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

particular concrete or tangible form."[17]  The court noted that "certain additional limitations, such as consulting an activity log, add a degree of particularity," but "the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content."[18]

Applying the second step, the Federal Circuit concluded that "the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity."[19]  As instructed by *Alice*, the court examined the recited steps "both individually and 'as an ordered combination'" and found that they were simply "'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'"[20]  The court noted, for example, that the steps of consulting and updating an activity log "represent insignificant 'data-gathering steps.'"[21]  Further, "[n]arrowing the abstract idea of using advertising as currency to the Internet is an 'attempt[] to limit the use' of the abstract idea 'to a particular technological environment,' which is insufficient to save a claim."[22]

The Supreme Court in *Alice* confirmed that reciting steps as computer-implemented does not transform an abstract idea into a patentable invention.[23]  Examining the claims at issue, the Court found that "the function performed by the computer at each step of the process is purely conventional."[24]  For example, the claims recited creating and maintaining shadow records, which "amounts to electronic recordkeeping—one of the most basic functions of a computer."[25]  Similarly, the recited uses of a computer to obtain data, adjust account balances, and issue automated instructions were all "well-understood, routine, conventional activities previously known to the industry."[26]  Thus, even fairly specific limitations—as found in both *Alice* and

---

[17] *Id.* at 715.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 716 (quoting *Alice*, 134 S. Ct. at 2355, 2357).
[21] *Id.* (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011)).
[22] *Id.* (quoting *Alice*, 134 S. Ct. at 2358).
[23] *Alice*, 134 S. Ct. at 2357-58 (citing *Gottschalk v. Benson*, 409 U.S. 63, 64, 67 (1972); *Parker v. Flook*, 437 U.S. 584, 585-86, 593-94 (1978)).
[24] *Id.* at 2359 (internal quotation and modification omitted).
[25] *Id.*
[26] *Id.* (internal quotation and modification omitted).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

*Ultramercial*—do not save a patent claim if they simply reflect routine computer implementation of an abstract idea.[27] As the Supreme Court recognized, "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'"[28] It follows that computer-based methods that simply mimic human mental processes or pre-computer human activities are not patentable.[29]

## II.   MOBILEIRON IS ENTITLED TO JUDGMENT ON THE '386 PATENT.

The '386 patent recites a "rules engine" that executes a "set of rules" on a "wireless device." By its own terms, the patent is directed to the abstract idea of enforcing rules. Beyond this abstract concept, the asserted claims include nothing more than generic, conventional computer functions and efforts to limit the abstract idea to a particular technological environment—none of which transform the claims into a patentable invention.

### A.   The '386 Patent Is Directed To The Abstract Idea Of Enforcing Rules.

Under *Alice* step one, asserted claims 8 and 9 of the '386 patent are directed to the abstract idea of enforcing rules. Those claims both depend from claim 1, which reads:

> 1. A user terminal comprising a wireless device, the wireless device comprising:
>
> a service to maintain data objects, provide messaging capability, and provide data access capability on behalf of a user of the wireless device; and
>
> a rules engine communicatively coupled to the service to execute a set of rules transmitted to the wireless device from a server so as to gather information related

---

[27] *See id.*; *Ultramercial*, 772 F.3d at 714-16 (finding that 11 limitations including "receiving copyrighted media from a content provider," "selecting an ad after consulting an activity log to determine whether the ad has been played less than a certain number of times," and "updating an activity log" were "routine additional steps" which were "insufficient to provide an inventive concept").

[28] *Alice*, 134 S. Ct. at 2258 (quoting *Mayo*, 132 S. Ct. at 1297).

[29] *See, e.g.*, *CyberSource*, 654 F.3d at 1371 ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas . . . ."); *Cogent Medicine*, 2014 WL 4966326, at *4 ("[U]sing a computer to identify and supply new medical literature merely automates what was previously done manually by assistants or librarians."); *Planet Bingo, LLC v. VKGS, LLC,* 961 F. Supp. 2d 840, 852 (W.D. Mich. 2013) ("[T]he recitation of a computer limitation in these method claims does not change the fact that the steps to be undertaken by a computer program are all steps that can be carried out by a human with pen and paper.") *aff'd Planet Bingo, LLC v. VKGS LLC,* No. 2013-1663, 2014 WL 4195788, at *1006-1007 (Fed. Cir. Aug. 26, 2014) (non-precedential); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 200 (S.D.N.Y. 2013) (noting claimed process "can be performed by a human absent a computer").

> to the wireless device and to take action on the wireless device based on the gathered information and on the set of rules, the rules engine being triggered to gather the information repeatedly on the basis of a monitoring time interval, and the action taken comprising maintaining particular settings associated with the service.[30]

The first limitation simply describes the generic computer environment in which rules are enforced, i.e., a wireless device with a "service" (such as an email client) that maintains data objects, provides messaging capability, and provides data access capability.[31]  The heart of the claim is the second limitation, reciting a "rules engine" that performs the steps of (1) obtaining rules transmitted from a server, (2) gathering information repeatedly on the basis of a monitoring time interval as instructed by the rules, and (3) taking appropriate action.  This is no different than the manner in which rules have always been enforced—by monitoring activity and taking responsive action.  Before computers, the enforcement of rules was performed by humans, who would, as the claims recite, gather information and take appropriate action.

Dependent claims 8 and 9 add little to the claims other than specifying a time for the "time interval" to begin:

> 8. The wireless device of claim 1, wherein the monitoring time interval is dependent upon start-up of the wireless device.
>
> 9. The wireless device of claim 1, wherein the monitoring time interval is dependent upon installation of components or applications on the wireless device[32]

There are countless situations in which humans have long been gathering information "repeatedly on the basis of a monitoring time interval" and "tak[ing] action . . . based on the gathered information and on [a] set of rules."  A prime example is a nurse monitoring a patient in a hospital.  The nurse repeatedly collects information (e.g., every hour or some other specified time interval) on how the patient is doing, including checking the patient's vital signs, taking the patient's temperature, etc.  In doing so, the nurse is following a set of "rules" prescribed by the hospital or the nurse's training and experience.  Based on the collected information, the nurse will take actions (e.g., adjusting or maintaining medication or settings on medical devices such as a

---

[30] Ex. A ('386 patent) at 7:21-34 (attached to Good's First Amended Complaint as Ex. D [Dkt. No. 32-4]).
[31] *See also id.* at 4:8-19 (explaining that the "service" may simply be a software application).
[32] *Id.* at 8:1-6.

ventilator) to maintain certain vital signs or other desired conditions, or to maintain or begin a particular treatment.[33] Notably, many of these monitoring activities and resulting actions could be automated and performed with a computer using fundamental concepts of computer programming such as IF/THEN conditional statements.

Courts have found computer-implemented concepts similar to those claimed in the '386 patent to be abstract. For example, in *Accenture Global Services GmbH v. Guidewire Software, Inc.*, the asserted patent claimed a system for generating tasks in an insurance organization using a computer system with a transaction database and a task library.[34] Upon the occurrence of an event, the claimed system would "determine[] what tasks need to be accomplished for that transaction and assign those tasks to various authorized individuals to complete them."[35] The Federal Circuit affirmed the District Court's invalidation of the patent because it simply claimed the abstract idea of "generating tasks based on rules to be completed upon the occurrence of an event."[36] Similarly, the '386 patent is directed to taking action based on rules depending on gathered information, which would include detecting occurrence of an event.

In *UbiComm, LLC v. Zappos IP, Inc.*, a court invalidated claims directed to the abstract idea of "conditional action."[37] The asserted claims in *UbiComm* recited nearly identical steps as those carried out in the '386 patent: selecting parameters, selecting an action, monitoring those parameters to determine when they are triggered, and triggering the action.[38] The court found that "[a] conditional action is a basic tool on which a multitude of disciplines rely upon for

---

[33] There are numerous other examples where humans repeatedly collect information based on rules, and take actions based on the collected information and rules. Some examples are (1) schools monitoring student attendance or tardiness and taking action based on the collected information; (2) utility companies monitoring customer payment of bills and taking action based upon the collected information; and (3) monitoring of health issues, such as diabetes, heart conditions, or epilepsy, where action is taken to maintain the person's health and to keep their condition stable based on the collected information. Typically, such actions include maintaining information about the "service" that the rules are associated with. For example, the utility company would maintain information associated with the customer and their service in order to continue collection efforts, the school would continue to maintain attendance records for the student, and the medical facility would maintain information on the patient's health.
[34] 728 F.3d 1336, 1338-1339 (Fed. Cir. 2013), *cert denied*, 134 S. Ct. 2871 (2014).
[35] 728 F.3d at 1338.
[36] *Id.* at 1348-1349 (internal modifications omitted).
[37] No. 13-1029, 2013 U.S. Dist. LEXIS 161559, at *9 (D. Del. Nov. 13, 2013).
[38] *Id.*

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

innovation."[39] Holding the claims patent ineligible, the court stated: "[t]he fundamental role that the concept of conditional actions play in numerous disciplines is sufficient to warrant it protection as an abstract idea, because its patenting would 'impede innovation, more than it would tend to promote it.'"[40] The '386 patent, too, rests on the abstract idea of a conditional action.

### B. Asserted Claims 8 And 9 (And Claim 1 From Which They Depend) Lack Any Inventive Concept To Transform The Abstract Idea Into Patentable Applications.

Because the claims of the '386 patent are directed to an abstract idea, they can only be eligible for patenting under *Alice* step two if they "do significantly more than simply describe that abstract method."[41] They do not. The claims simply implement the concept of enforcing rules using "well-understood, routine, conventional" computer processes.[42] In addition, the recitation of a "wireless device" running a "service" simply reflects "an 'attempt to limit the use' of the abstract idea 'to a particular technological environment,' which is insufficient to save a claim."[43]

Taken individually, the elements in claim 1 are simply generic and commonplace computer or software components. The claim first recites a "user terminal comprising a wireless device." Wireless devices are no less conventional and ubiquitous than the computer systems that the Supreme Court found did not supply an "inventive concept" in *Alice*. Next, the claim recites a "service" (i.e., software)[44] performing the conventional computer functions of "maintain[ing] data objects, provid[ing] messaging capability, and provid[ing] data access capability," which again is no more transformative than the routine functions in *Alice* and *Ultramercial*.[45] Indeed, the '386 patent refers to long-known messaging and data transfer techniques, including e-mail.[46]

---

[39] *Id.*
[40] *Id.* at 9-10 (citing *Mayo*, 132 S. Ct. at 1293).
[41] *Ultramercial*, 772 F.3d at 715.
[42] *Alice*, 134 S. Ct. at 2359.
[43] *Ultramercial*, 772 F.3d at 716 (quoting *Alice*, 134 S. Ct. at 2358) (internal quotations omitted).
[44] *See* Ex. A ('386 patent) at 4:8-19.
[45] *See Alice*, 134 S. Ct. at 2359 ("Using a computer to create and maintain 'shadow' accounts amounts to electronic recordkeeping—one of the most basic functions of a computer."); *Ultramercial*, 772 F.3d at 717 ("[T]he transfer of content between computers is merely what computers do . . . .").
[46] Ex. A ('386 patent) at 3:4-15 (transmitting data in packets), 3:28-39 ("message transactions" such as e-mail and instant messages); *see Open Text*, 2015 U.S. Dist. LEXIS 6309, at *11 (finding it "apparent from the patent itself that [certain] implementation-specific elements were

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

The third element of claim 1 is the "rules engine"—the software component responsible for performing the claimed abstract idea. There is nothing inventive about the rules engine. It simply executes the rules "to gather information repeatedly on the basis of a monitoring time interval" and "to take action on the wireless device based on the gathered information and the set of rules."[47] The Federal Circuit has held that mere "data-gathering steps" are "insignificant" and "thus add nothing of practical significance to the underlying abstract idea."[48] And using a "monitoring time interval" to gather information is a "well-understood, routine, conventional activity, previously engaged in by those in the field."[49] The additional limitations of dependent claims 8 and 9—which require that the monitoring time interval be based on the start-up of the device or the installation of applications and components, respectively—also provide nothing inventive. These limitations merely specify a starting point for the time interval for information to be gathered, and do not provide any inventive substance to transform the otherwise abstract claim into a patentable invention.

The fact that the rules enforced by the rules engine are "transmitted to the wireless device from a server" also fails to provide an inventive concept. The Federal Circuit has confirmed repeatedly that transmitting data over a computer network is a conventional, routine activity, which fails to transform an abstract idea into a patentable application.[50]

Lastly, limiting the rules engine's conditional action to "maintaining settings associated with the service" does not save the asserted claims. This requirement simply narrows the type of conditional action covered by the claims to one specific category. But merely "attempting to limit the use of the idea to a particular technological environment" does not provide an inventive

---

known prior to the invention of the [asserted] patents" because the patent referred to them as preexisting technology).

[47] Ex. A ('386 patent) at 7:21-34.

[48] *Ultramercial*, 722 F.3d at 716 (citing *CyberSource*, 654 F.3d at 1370) (internal quotations omitted)

[49] *Mayo*, 132 S. Ct. at 1299; *see also* Ex. A ('386 patent) at 6:10-12 ("One skilled in the art will appreciate that a variety of monitoring time intervals may be implemented by the rules engine 214.").

[50] *Ultramercial*, 772 F.3d at 717 ("Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the [patent ineligibility] analysis."); *CyberSource*, 654 F.3d. at 1370-1373 (explaining a claimed method is *ineligible* despite its use of the Internet).

- 8 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

concept.[51] An abstract conditional action is no less abstract simply because the types of conditions or actions are specified.[52]

Taken together, the elements of asserted claims 8 and 9 do not add more to the abstract concept of rule enforcement than they do individually. Accordingly, the alleged invention claimed in the '386 patent is merely an abstract idea, consisting only of a well-known concept being uninventively "appl[ied] [] with a computer."[53] Because the asserted claims do not contain patent-eligible subject matter, judgment for MobileIron is appropriate.

## III. MOBILEIRON IS ENTITLED TO JUDGMENT ON THE '322 PATENT.

The '322 patent is directed to the abstract idea of ensuring compatibility, achieved by the same method long practiced by humans manually: consulting information specifying whether a part is compatible with a device. Beyond this abstract concept, the asserted claims include nothing more than generic, conventional computer functions and efforts to limit application of the abstract idea to software updates for wireless devices. Neither is sufficient to save the claims.

### A. The '322 Patent Is Directed To The Abstract Idea Of Ensuring Compatibility.

Under *Alice* step one, asserted claims 1, 5, 7 and 16 of the '322 patent are directed to the abstract idea of ensuring compatibility. Claim 7, the broadest claim, reads:

> 7. A method comprising:
>
> a web-based software server receiving device specific information from a wireless device;
>
> the web-based software server searching a compatibility matrix to identify rules associated with each update available to download to the wireless device;[54]
>
> the web-based software server transmitting a message to the wireless device indicating one or more files within the updates to download; and
>
> downloading the one or more files to the wireless device.[55]

Looking past the jargon, this claim simply describes the steps of (1) obtaining information about a

---

[51] *Alice*, 134 S. Ct. at 2358 (citing *Bilski*, 130 S. Ct. at 3230).
[52] *See Parker v. Flook*, 437 U.S. 584, 595 (1978) (explaining that ineligible concepts are not patentable "even if the solution is for a specific purpose").
[53] *Alice*, 134 S. Ct. at 2350.
[54] The Court construed this element as requiring "for each update, searching rules that indicate whether an update is compatible with a particular wireless device." Dkt. No. 135, p. 2.
[55] Ex. B ('322 patent) at 6:37-46 (attached to Good's First Amended Complaint as Exhibit C [Dkt. No. 32-3]).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

device, (2) determining which components are compatible with the device, and (3) using those components with the device. This is no different than the process humans have long used to determine compatibility of interchangeable parts. The only specificity provided in claim 7 is that the compatibility check is performed by a "web-based software server" instead of a human, and that the parts in question are updates for wireless devices. This still embodies no more than the abstract idea of first ensuring compatibility before using an update with a wireless device.[56] And while the other asserted claims have additional limitations, they still revolve around the same concept of how to get the compatible part (i.e., updates) to a corresponding wireless device.[57]

The '322 patent claims recite nothing more than a computer-implemented version of a basic mental process. Ensuring compatibility is long-known concept, dating back to at least the industrial revolution and the advent of manufacturing interchangeable and replaceable parts. Artisans, and even ordinary consumers, have long needed to ensure compatible parts were used when assembling and maintaining multi-part machines. Naturally, this determination could often require checking a table setting forth which parts are compatible with which machines (i.e., a "compatibility matrix") to prevent incompatible mismatches. The mental process of ensuring compatibility using a table is rudimentary. One need only look up the particular machine in the table, see which parts are depicted as compatible, and then select and install the parts. Use of interchangeable parts is one of "the basic tools of scientific and technological work."[58]

One common example is the "parts interchange" used for buying auto parts. When an

---

[56] *See Ultramercial*, 772 F.3d at 715 ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content."). *DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2013-1505, 2014 U.S. App. LEXIS 22902 (Fed. Cir. Dec. 4, 2014), is distinguishable. While the problem of software compatibility may sound like "a problem specifically arising in the realm of computer networks," the '322 patent addresses the problem through a practice "known from the pre-Internet world." *Id.* at *26. *DDR Holdings* specifically cautions that "not all claims purporting to address Internet-centric challenges are eligible for patent" and refers back to the *Ultramercial* decision, which is far closer to the circumstances of this case. *Id.* at *29-30.
[57] *See* Ex. B ('322 patent) at 6:6-22 (independent claim 1), 6:66-7:13 (independent claim 12, from which asserted claim 16 depends); *Ultramercial*, 772 F.3d at 715 ("Although certain additional limitations . . . add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea . . . .").
[58] *Mayo*, 132 S. Ct. at 1293.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

individual seeks to upgrade her car,[59] e.g., with better tires, the attendant at an auto-parts store will take the following steps: (1) ask the individual for the make, model, and year of her car, (2) consult a booklet that cross-references vehicles and part numbers to determine the appropriate tire size for the customer's car, (3) tell the customer what tire size she needs, and (4) sell the appropriate-sized tires to the customer.  These are precisely the four steps described in claim 7:

| 7. A method comprising: | |
| --- | --- |
| a web-based software server receiving device specific information from a wireless device; | Auto-parts store learns from customer what model, make, and year she drives. |
| the web-based software server searching a compatibility matrix to identify rules associated with each update available to download to the wireless device; | Attendant at auto-parts store consults a chart to determine the appropriate size tires.[60] |
| the web-based software server transmitting a message to the wireless device indicating one or more files within the updates to download; and | Attendant at auto-parts store tells customer what size tires to buy. |
| downloading the one or more files to the wireless device. | Customer buys the appropriate-sized tires. |

Two recent cases from this district illustrate the abstract nature of the '322 patent claims. *Cogent Medicine, Inc. v. Elsevier, Inc.* involved a patent on a "library interface" to medical literature organized into folders.[61]  The court found that the claims were directed to "the abstract idea of maintaining and searching a library of information":

> Given a database of information, the alleged invention catalogues the information and sets aside particular information that may be especially relevant based on the particular user.  This idea is little different than the basic concept of organizing a physical library so that an individual can search for information by going to the relevant portion of the library and picking a book.[62]

Continuing to compare the claims to human activities, the court found, "[i]n the medical field, the alleged invention is akin to the longstanding practice of keeping an updated set of folders for supplying doctors with the latest medical knowledge."[63]  Although directed to a different concept,

---

[59] Plaintiffs have applied the asserted claims of the '322 patent to the provision of "replacement" versions of mobile apps, and have also argued that those claims apply to entirely new apps for a mobile device as well.  In any event, the auto parts scenario applies whether a customer is seeking an upgrade, a recall part, or a replacement part.

[60] In the language of the Court's claim construction, the attendant is "searching rules that indicate whether a [tire] is compatible with a particular [vehicle]."

[61] 2014 WL 4966326, at *1-2.

[62] *Id.* at *4.

[63] *Id.*

the '322 patent is abstract for the same reason: it simply mirrors longstanding human practices. Arguably the practice of consulting a compatibility table is even more routine and commonplace than the practice of maintaining folders of medical literature.

Similarly, *Bascom Research LLC v. LinkedIn, Inc.*, involved a patent directed to creating a "link relationship" between two documents located on a network, assigning attributes describing the link relationship, and presenting the link relationship and attributes.[64] The court found that the claims "simply describe[] the abstract idea of creating, storing and using relationships between objects."[65] Citing *Cogent Medicine*, the court found the fact that "establishing and using relationships between documents is a common, age-old practice" supported finding it was an abstract idea.[66] The court further noted that the concept "can also be performed mentally," bringing it into the category of unpatentable mental processes.[67] As in *Bascom*, the '322 patent here describes a common, age-old practice. Indeed, the idea of the '322 patent is simply a subset of the abstract idea in *Bascom*: instead of also creating and storing relationships between objects, the '322 patent only requires using a pre-defined compatibility relationship.

**B.  Claim 7 Lacks Any Inventive Concept To Transform The Abstract Idea Into A Patentable Application.**

Under *Alice* step two, the limitations in claim 7 do not provide "significantly more" than the abstract idea of ensuring compatibility.[68] The first step of the claim requires sending device-specific information, but this is simply routine pre-solution activity by which the computer performing the compatibility check obtains the relevant information about the device.[69] Similarly, the third and fourth steps of transmitting a message to the device indicating which files

---

[64] No. 12-cv-06293, 2015 U.S. Dist. LEXIS 4606, at *5-6 (N.D. Cal. Jan. 5, 2015)
[65] *Id.* at *23.
[66] *Id.* (citing *Cogent Medicine*, 2014 WL 4966326, at *4; *DietGoal Innovations LLC v. Bravo Media LLC*, 2014 WL 3582914, at *3, 10).
[67] *Bascom,* 2015 U.S. Dist. LEXIS 4606, at *25 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *CyberSource*, 654 F.3d at 1371).
[68] *Ultramercial*, 772 F.3d at 715 ("The second step in the analysis requires us to determine whether the claims do significantly more than simply describe that abstract method.").
[69] *Mayo*. 132 S. Ct. at 1298 (explaining the pre-solution measurement was not inventive because it was "well understood, routine, conventional activity previously engaged in by scientists who work in the field"); *Ultramercial*, 772 F.3d at 716 ("[T]he steps of consulting and updating an activity log represent insignificant 'data-gathering steps.'" (quoting *CyberSource*, 654 F.3d at 1370)).

to download and then downloading those files is a natural and obvious use for the result of the compatibility check, providing nothing inventive to "transform" the abstract idea.[70]  Finally, the fact that the first three steps of claim 7 are performed by a "web-based software server" also fails to provide any inventive concept.  The "web-based software server" is just a generic server, noted without further description in the specification (other than its location outside the enterprise).[71]  Such conventional, well-known computer parts do not render a claim any less abstract.[72]

Taking the elements of claim 7 together, "as an ordered combination," does not change the result.  The claimed method as a whole lacks any inventive aspect, as it is just a step-by-step guide to ensuring compatibility of a part with a device.[73]  As explained above, the limitations only serve to confine the abstract idea to the context of software updates for wireless devices.  But "limit[ing] the use of the idea to a particular technological environment" does not suffice.[74]

Accordingly, claim 7 does not contain patent-eligible subject matter, and judgment for MobileIron is appropriate.

### C.  Claims 1, 5, and 16 Lack Any Inventive Concept To Transform The Abstract Idea Into Patentable Applications.

The additional claim limitations in claims 1 and 16 similarly fail to provide the needed inventive concept.  Beyond the steps of claim 7, claims 1 and 12 (from which claim 16 depends) each outline a series of steps to occur before the compatibility check, involving (1) receiving a message that updates are available, (2) "assigning policies" to associate the updates with the wireless device, and (3) notifying the wireless device of those updates.[75]  Individually, these steps simply constitute routine computer functions such as transferring information between computers

---

[70] *Mayo*, 132 S. Ct. at 1298 ("The prohibition against patenting abstract ideas cannot be circumvented by adding insignificant post-solution activity") (internal citations omitted).
[71] Ex. B ('322 patent) at 2:60-64, Fig. 1.
[72] *See Accenture,* 728 F.3d at 1344-45 (finding claims that recite a "server component" to be patent ineligible); *Alice*, 134 S. Ct. at 2358 (holding recitation of "purely functional and generic" hardware does not render a claim patent eligible).
[73] *See Ultramercial*, 772 F.3d at 715 (explaining additional limitations are insufficient because they "simply instruct the practitioner to implement the abstract idea with routine, conventional activity").
[74] *Alice*, 134 S. Ct. at 2358 (citing *Bilski*, 130 S. Ct. at 3230).  As noted in footnote 55 above, *DDR Holdings* is not to the contrary.  Unlike *DDR Holdings*, there is no process in the '322 patent claims that "overrides the routine and conventional sequence of events" one would expect from operating a computer.  *Cf.* 2014 U.S. App. LEXIS 22902, at *30-31.
[75] *See* Ex. B ('322 patent) at 6:6-23, 6:66-7:13.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG

and basic data manipulation.[76] Similarly, claim 16's requirement that the device "access the web-based software server to receive information about the updates" is just a routine transfer of information between computers that fails to transform an abstract idea into a patentable application. Taken together, the additional limitations of claims 1 and 16 serve no purpose other than to inform the IT administrator and the wireless device that updates exist so that the compatibility check can occur. And the "assigning policies" step is itself an abstraction, as it consists only of "establishing relationships" between devices and updates.[77] Combining these steps with the abstract compatibility check adds nothing "significant beyond the sum of their parts taken separately."[78]

Claim 5's requirement that the "customer site" include a "management console" is no more than the addition of a conventional component that provides nothing inventive to the underlying concept of ensuring compatibility. A "management console" is just the interface used to interact with the system. The '322 patent's "explanation-free" description of a customer site including a management console confirms the lack of any novelty.[79] Thus, the existence of a "management console" is simply a non-transformative detail about the technological environment that the abstract idea operates in.

---

[76] *See Alice*, 134 S.Ct. at 2359 (finding electronic recordkeeping is "one of the most basic functions of a computer"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends information over a network – with no further specification – is not even arguably inventive."); *Digitech Image Techs., LLC v. Elecs. for Imaging, LLC.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (explaining that a process to "manipulate existing information to generate addition information is not patent eligible"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 2014 U.S. App. LEXIS 24258, *7 (Fed. Cir. 2014) (explaining that "the concept of data collection, recognition, and storage is undisputedly well-known"); *Ultramercial*, 722 F.3d at 716-17 ("[The Internet] is a ubiquitous information-transmitting medium, not a novel machine. . . . Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *CyberSource*, 654 F.3d at 1370 (ruling unpatentable a claim for a computer method requiring one to "obtain and compare intangible data").

[77] *Bascom*, 2015 U.S. Dist. LEXIS 4606, at *25-26 (explaining that "establishing relationships between document objects and making those relationshps accessible" was an abstract idea).

[78] *Mayo,* 132 S. Ct. at 1298.

[79] Only three sentences in the '322 patent specification say anything about a management console (or "MC 150"), and none of them provide any technical detail. Ex. B ('322 patent) at 2:57-60, 3:6-9; *see Open Text*, 2015 U.S. Dist. LEXIS 6309, at *11 ("That web pages were known in 1997 needs no citation and is apparent from the patent's explanation-free discussion of web pages.").

Accordingly, each asserted claim of the '322 patent is directed to ineligible subject matter, and judgment for MobileIron is appropriate.

IV. **CONCLUSION**

For the foregoing reasons, MobileIron respectfully requests that the Court grant judgment in favor of MobileIron on Counts 2 and 3 of Plaintiffs' First Amended Complaint.

Dated: March 24, 2015

I. NEEL CHATTERJEE
VICKIE L. FEEMAN
LILLIAN J. MAO
Orrick, Herrington & Sutcliffe LLP

By: _____*/s/ I. Neel Chatterjee*_____
I. NEEL CHATTERJEE
Attorneys for Defendant
MOBILEIRON, INC.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 15 -

MOBILEIRON'S MOTION FOR JUDGMENT
ON THE PLEADINGS
CV12-05826 PSG