I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
VICKIE L. FEEMAN (STATE BAR NO. 177487)
vfeeman@orrick.com
LILLIAN J. MAO (STATE BAR NO. 267410)
lmao@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:     +1-650-614-7400
Facsimile:     +1-650-614-7401

GLEN LIU (STATE BAR NO. 251591)
gliu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
Telephone:     +1-949-567-6700
Fax:     +1-949-567-6710

Attorneys for Defendant
MOBILEIRON, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOD TECHNOLOGY CORPORATION AND GOOD TECHNOLOGY SOFTWARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MOBILEIRON, INC.,<br><br>Defendant. | Case No. CV-12-05826 PSG<br><br>**MOBILEIRON, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**<br><br>Date:     April 28, 2015<br>Time:     10:00 a.m.<br>Courtroom: 5<br>Judge:    Hon. Paul S. Grewal |

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 1
    A. Good's Own Characterization Of Its Patents Confirms They Are Directed To Abstract Ideas ................................................................................................. 1
    B. Neither Patent Includes Any Inventive Concept ...................................................... 5
    C. MobileIron's Motion Should Be Decided On The Merits ....................................... 7
III. CONCLUSION ............................................................................................................... 8

- i -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
NEW YORK

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alice Corp. Pty. Ltd v. CLS Bank, Int'l*,
  134 S. Ct. 2347 (2014) ................................................................................................2, 5, 6, 7

*Bascom Research LLC v. LinkedIn, Inc.*,
  No. 12-cv-06293, 2015 U.S. Dist. LEXIS 4606 (N.D. Cal. Jan. 5, 2015) ..............................5, 8

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) .......................................................................................................7

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) ..............................................................................................................6, 7

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ....................................................................................................7

*Cogent Medicine, Inc. v. Elsevier Inc.*,
  No. C-13-4486, 2014 WL 4966326 (N.D. Cal. 2014) ............................................................4, 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ....................................................................................................3

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................................................................1, 3

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ................................................................................1, 2, 3, 6, 8

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ....................................................................................................3

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. C 03-1431 SBA, 2006 U.S. Dist. LEXIS 90856 (N.D. Cal. May 15, 2006) ......................7

*Golden Hour Data Sys. v. Health Servs. Integration, Inc.*,
  No. C 06-7477 SI, 2008 U.S. Dist. LEXIS 75495 (N.D. Cal. July 1, 2008) .............................8

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) .................................................................................................................1, 3

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ..................................................................................................................6

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

*Open Text S.A. v. Box, Inc.*
  No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309 (N.D. Cal. Jan. 20, 2015) ..........................8

*OpenTV, Inc. v. Apple, Inc.*,
  No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856 (N.D. Cal. Apr. 6, 2015)..........4, 5, 6, 8

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014).................................................................................2, 6, 7, 8

**Rules**

Rule 12 ...........................................................................................................................................7

Rule 12(b)(6)..................................................................................................................................7

Rule 12(c).......................................................................................................................................7

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- iii -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

## I. INTRODUCTION

Good's opposition fails to meaningfully distinguish the processes claimed in Good's patents from common-place mental processes and abstract ideas already held patent-ineligible by the Federal Circuit and District Courts. Good's argument primarily rests on *DDR Holdings*, a case inapplicable to this one. There, the patent presented a new solution to an Internet-specific business challenge with no pre-Internet analog. But Good's '386 and '322 patents merely apply common and well-known pre-computer solutions in the wireless network context. Neither patent adds any inventive concept to their abstract core. Good's infringement positions demonstrate that it is trying to pre-empt all applications of the patents' abstract concepts in the mobile computing industry, which the Supreme Court has held improper. Moreover, given the recent significant developments related to § 101 and patent eligibility, the Court should find that determination of this issue is not barred by the disclosure requirements of the Patent Local Rules, as Good argues, and decide this "threshold inquiry of law" on the merits. For the reasons set forth below, the asserted claims of the '386 and '322 patents should be found patent ineligible.

## II. ARGUMENT

### A. Good's Own Characterization Of Its Patents Confirms They Are Directed To Abstract Ideas.

Both the Supreme Court and Federal Circuit have made clear that a patent for programming a "particular component" in a "particular way" is abstract when the component is just a generic computer and the programming instructs it to simply mimic long-used and common-place mental processes.[1] Good's '322 and '386 patents do nothing more.

Good attempts to characterize its abstract patents as concrete. But Good only lists the claim steps and claim constructions without providing any analysis demonstrating that its claims are not "drawn to" the abstract concepts of rule enforcement and ensuring compatibility.[2] The

---

[1] *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas . . . .").

[2] *See* Opp. at 6 (listing limitations of the '386 patent); 10-11 (listing limitations in the '322 patent). Good also tries to make the '322 patent sound more Internet-specific by alleging the claimed system "can reduce the burden on the bandwidth of a data network by spreading out

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

high-level and generic computer-based limitations Good cites are precisely the kind of limitations other courts have already deemed too abstract for patenting.[3] Good's unexplained suggestion that the Court's claim constructions defeat this abstractness is similarly baseless. None of the constructions add concrete limitations to the patent's abstract processes.[4]

Good's reliance on *DDR Holdings* is also misplaced. *DDR Holdings* has no bearing on this case. The technology in *DDR Holdings* addressed "the ephemeral nature of an Internet 'location' [and] the near-instantaneous transport between these locations made possible by standard Internet communication protocols, which introduces a problem that does not arise in the 'brick and mortar' context."[5] The court found that the patent addressed this Internet-specific problem by achieving "a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."[6] Good's patents, on the other hand, do not identify any newly arising Internet-specific problems, nor any solution that is more than routine and conventional.

Good nonetheless attempts to shoehorn its patents into *DDR Holdings* by importing limitations from the patents' specifications to allege that the claims solve problems "specifically arising in the realm of wireless networks."[7] In reality, the patents' specifications confirm that Good was simply adapting previously known solutions to solve previously known problems as they arose in the then-emerging wireless communication context. For example, the '386 patent

---

the time when a wireless device will receive a notification that updates are available for download," *id.* at 11, but this limitation appears nowhere in the claims.

[3] *See Alice Corp. Pty. Ltd v. CLS Bank, Int'l*, 134 S. Ct. 2347, 2359 (2014) (holding claimed "use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions" did not "do more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) (finding eleven-step claim "recites an abstraction—an idea, having no particular concrete or tangible form").

[4] Good's conclusory statement that Dr. Sacerdoti's description of the patented systems somehow confirms they are not abstract is mistaken. Setting aside the non-transformative requirement of computer implementation, Dr. Sacerdoti's explanations clearly describe the same abstract mental processes described in MobileIron's motion.

[5] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014).

[6] *Id.*

[7] Opp. at 3-4.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

identifies a need to monitor wireless devices to enforce corporate policies and maintain security.[8] Neither problem is unique to wireless devices, and Good did not solve them in any way that is rooted in the wireless context.[9] Similarly, the '322 patent addresses a situation when "some software to be installed on the device may be language specific, or device specific."[10] Needing to install device- or machine-specific components is a long-known problem, and Good simply claims a computerized method for doing the same compatibility lookup that humans have performed for ages.[11]

Good also mischaracterizes *DDR Holdings* as ruling that patents are only abstract when directed to business methods. The decision of the *DDR Holdings* court was actually much narrower, holding that Internet business methods *may* still be patentable if they address a business challenge unique to the Internet.[12] This does not save the patents at issue here because they are not directed towards a challenge that is unique to the Internet. And other Federal Circuit decisions confirm that non-business method patents can fail § 101 as well.[13]

Good's attack on MobileIron's analogies is similarly meritless. Both the Supreme Court and Federal Circuit have explained that mental processes, even when they can be performed by a computer, are not eligible for patenting.[14] MobileIron's analogies illustrate how the abstract mental processes underlying Good's patents have been performed outside of the computer-implemented context, and thus necessarily and properly omit the computer-based limitations. Such analysis is common in § 101 decisions.[15] Good completely fails to distinguish its patent

---

[8] '386 patent, at 1:20-28, 1:44-50 (describing monitoring "to enforce an organization's policies, to secure the mobile platform, or to permit auditing procedures"); *see also* Opp. at 9:9-12 (admitting '386 patent simply "allows for compliance with established policies and security").
[9] *See* Motion at 4-6.
[10] '322 patent, at 1:24-25.
[11] *See* Motion at 9-11.
[12] *DDR Holdings,* 773 F.3d at 1259.
[13] *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (ruling that a method for generating an image device profile is not patent eligible); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (ruling that a method for collecting data and storing data was ineligible for patentability).
[14] *Benson*, 409 U.S. at 64, 67; *CyberSource*; 654 F.3d at 1371.
[15] *See, e.g.*, *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856, *10-11 (N.D. Cal. Apr. 6, 2015) (explaining that method capable of being performed "in the

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

claims from the well-known processes MobileIron identified.

For the '386 patent, Good complains that the "nurse analogy" lacks a "rules engine" because it does not include a computer "programmed to accomplish specific tasks in a wireless network." But this argument misses the point entirely; the claimed rules engine is abstract precisely because it simply performs a conventional task that was previously carried about by humans – i.e., repeatedly gathering information, checking that information against a condition, and taking action based on the result. Good fails to understand that the nurse's mental processes are performing the role of the generic software "rules engine." Good also argues that the nurse analogy is flawed because the "rules engine" must receive rules including a condition and an action. This ignores that the nurse received rules, including conditions and actions, as part of her training. For example, a nurse will know that if a patient's temperature exceeds a certain number of degrees (the condition) then certain actions should be taken, such as administering medication.

Good's attempt to distinguish the '322 patent "car parts analogy" misunderstands the purpose of analogies and argues the analogy is "entirely dissimilar" because it does not relate to the specific claimed application of distributing software over a computer network. In particular, Good appears to complain that the analogy is inapplicable because it requires the customer to manually provide the device specific information and to make the final selection of which part to obtain, rather than automating those steps with a server. Again, this ignores that § 101 prohibits simply claiming a computer implementation of something that can be done by a human. Good next argues the analogy is inapplicable because a tire customer "may have dozens to select from." This incorrectly assumes that the claims preclude any user choice in downloading files identified by the compatibility matrix, which they do not. Whether or not the compatibility matrix identifies a single compatible part, or many compatible parts, is irrelevant to the claims. MobileIron's examples demonstrate that Good's "solutions" could be and were applied without modern

---

human mind, or by a human using a pen and paper" is abstract); *Cogent Medicine, Inc. v. Elsevier Inc.*, No. C-13-4486, 2014 WL 4966326, at *4 (N.D. Cal. 2014) ("[U]sing a computer to identify and supply new medical literature merely automates what was previously done manually by assistants or librarians.").

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

technology.[16] Good's inability to meaningfully distinguish its claims from common-place processes confirms they are directed to simple and abstract concepts.

Good also fails to distinguish its claims from any of the other processes previously found too abstract to be patented, including conditional actions and using relationships between objects. For the '386 patent, Good contrasts its claims with *Accenture* and *UbiComm* by arguing that they recite a tangible wireless device. But the Supreme Court in *Alice* explained that a claim's recitation of tangible yet generic computer parts like a "wireless device" does not alter the inquiry.[17] For the '322 patent, Good dismisses the fact that the *Cogent* case confirms the unpatentability of computer-implementation of longstanding human practices (in that case, maintaining and searching a library of information), instead reiterating its assertion that the '322 patent ensures compatibility *specific* to wireless networks. Yet Good points to nothing in its claims that distinguish them from the known use of a compatibility matrix to solve the preexisting generic problem of parts compatibility. Similarly, rather than confront the indistinguishable holding in *Bascom*, Good focuses on the addition of the words "computer-implemented" to the claims during prosecution, which played no apparent part in the *Bascom* court's analysis.[18] The fact that the claims of the '322 patent were implemented on a computer system from the outset, rather than due to an amendment during prosecution, does not make them any less abstract.

### B. Neither Patent Includes Any Inventive Concept.

Good's arguments under *Alice* step two are also flawed. Good essentially reiterates many of the same arguments it made for step one. For the '322 patent, Good characterizes the inventive concept as searching a compatibility matrix for rules to determine if an update is compatible with a device, combined with assigning a software policy. But this is simply a recitation of the abstract idea of determining compatibility, as implemented using routine and conventional

---

[16] *See OpenTV*, 2015 U.S. Dist. LEXIS 44856, at *10-11 (explaining that fact that the claims at issue are performable without modern technology indicates abstractness).

[17] *Alice*, 134 S. Ct at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention").

[18] *Bascom Research LLC v. LinkedIn, Inc.*, No. 12-cv-06293, 2015 U.S. Dist. LEXIS 4606, at *18-37 (N.D. Cal. Jan. 5, 2015) (performing *Alice* analysis without discussion of prosecution history).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

computer activity such as consulting a set of compatibility rules correlating updates to particular devices, along with equally routine pre-solution activity.[19] Such steps are no more inventive than the routine activities of consulting and updating an activity log and using advertising as currency on the Internet that were rejected by the *Ultramerical* court as insufficient.

For the '386 patent, Good confuses an inventive concept under § 101 with a point of novelty under §§ 102 and 103, asserting that the claims satisfy the second prong of *Alice* because the claimed rules engine was allegedly new to wireless device technology at the time of the patent.[20] But the case law makes clear that simply implementing an abstract idea on a computer, or adding computer limitations to an abstract concept—even if never previously done—is not "inventive" for § 101 purposes.[21] This is because computer limitations are ubiquitous and the inclusion of particular computer limitations in computerized solutions is inevitable and uncreative and provides no "practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself."[22] Thus, Good's reiteration of computer-based limitations fails to address the second inquiry of *Alice*.

Claims that pre-empt an abstract idea are no less problematic when the pre-emption is limited to a specific industry.[23] And that is precisely what Good seeks, despite its assertions here that its patents are directed to narrow, technical solutions. In alleging infringement, Good asserts that its supposedly specific and narrow patents cover the entire MDM industry's use of

---

[19] *See* Motion at 12-14.
[20] Opp. at 9.
[21] *See OpenTV*, 2015 U.S. Dist. LEXIS 44856, at *18 ("[T]he fact that a company may be the first to successfully apply an abstract idea within a new technological context does not transform the abstract idea into something tangible and patentable."); *DDR Holdings*, 772 F.3d at 1258 (recognizing that a method being "previously unknown and never employed on the Internet before" is insufficient to render claims patent-eligible under *Ultramercial*).
[22] *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012) (also explaining, without regard to novelty, that merely limiting the use of an unpatentable concept to a particular technological environment does not make it patentable); *see also Alice*, 134 S. Ct at 2358, (explaining that computer implementation does not provide an inventive concept because computers are ubiquitous and thus such limitations risk substantially pre-empting future innovations); *Ultramercial*, 772 F.3d at 716 (explaining that identification of novel elements does not provide an inventive concept to generally abstract claims).
[23] *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010) (explaining that limiting claims to a specific industry does not resolve preemption concerns); *Alice*, 134 S. Ct at 2359 (same).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

1  "enforcing offline 'compliance' policies" and "providing employees with access to
2  applications."[24]  Good's attempt to pre-empt all applications of enforcing rules and ensuring
3  software capability on wireless devices is precisely the kind of pre-emption *Alice* and it
4  predecessors sought to prevent.  Good's patents therefore do not include any inventive concept
5  under § 101.

### C. MobileIron's Motion Should Be Decided On The Merits.

Good incorrectly argues that MobileIron's Rule 12 motion is procedurally barred.  To the contrary, patent eligibility under § 101 is a "threshold inquiry" of law[25] and should be addressed prior to turning to the merits of infringement or invalidity.[26]

Good's suggestion that the Patent Local Rule disclosure requirements extend to motions on the pleadings is unsupported and counter to the purpose of the rules.  The Local Rule disclosures "exist to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases."[27]  But Rule 12(c) motions require no discovery by definition, and can be brought at the outset of a case without notice to the other parties.[28]  The Federal Circuit has now confirmed that Rule 12 motions are a proper vehicle for deciding § 101 issues.[29]  Good offers no authority or explanation as to why it must have been notified of a defense that can be brought prior to any local rule disclosures and is essentially a pleading issue.

The fact that this motion on the pleadings comes now rather than at the outset of the case should not subject it to any additional disclosure requirements or preclusion from being heard.

---

[24] Dkt. No. 235 (Good's Opposition to Motion For Summary Judgment of No Lost Profits) at 3-4 (claiming Good's patents are *required* to practice these "critical" MDM concepts), 19 (taking position that no non-infringing alternatives exist for Good's patents).
[25] *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010).
[26] *Ultramercial,* 772 F.3d at 718-719 (Mayer, J., concurring) (explaining importance of resolution of issues under § 101 and likening such determinations to a jurisdictional inquiry).
[27] *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 U.S. Dist. LEXIS 90856, *12 (N.D. Cal. May 15, 2006).
[28] FED. R. CIV. P. 12(c) (allowing motions to be brought as early as the close of pleadings).
[29] *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming judgment on the pleadings); *Ultramercial,* 772 F.3d at 711-12 (affirming Rule 12(b)(6) dismissal).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

The timing of MobileIron's motion simply reflects the recent, dramatic change in § 101 jurisprudence. Had this been the state of the law in 2012, MobileIron would have brought this motion at the outset of the case, and Good would have had no right to discovery or disclosure. But the Federal Circuit's *Ultramercial* decision issued in November 2014,[30] and many of this district's post-*Alice* § 101 decisions, including the *Bascom* and *Open Text* decisions cited in MobileIron's motion, did not issue until 2015, after the close of discovery.[31] It was these developments in the law that demonstrated Good's patents are ineligible under § 101, so MobileIron could not bring such a motion or amend its contentions prior to the fact discovery cutoff.

Because of the recent significant developments related to § 101 and patent eligibility, MobileIron's motion should be decided on the merits, and should not be subjected to disclosure requirements that did not contemplate a threshold § 101 inquiry. In any event, to the extent the Court finds disclosure necessary, leave should be granted for MobileIron to amend its contentions to assert patent ineligibility under § 101. Amendment is appropriate given the significant developments in the law and the lack of prejudice to Good.[32] Patent ineligibility under § 101 is a pure issue of law that does not require discovery or expert opinion.[33] And, in fact, Good has not alleged or shown that it was in anyway prejudiced in discovery, or claim construction.

## III. CONCLUSION

For the foregoing reasons, the '386 and '322 patents should be held ineligible for patenting under § 101.

---

[30] *Ultramercial,* 772 F.3d 709.
[31] *Bascom,* 2015 U.S. Dist. LEXIS 4606; *Open Text S.A. v. Box, Inc.* No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309 (N.D. Cal. Jan. 20, 2015).
[32] *See Golden Hour Data Sys. v. Health Servs. Integration, Inc.,* No. C 06-7477 SI, 2008 U.S. Dist. LEXIS 75495, at *15 (N.D. Cal. July 1, 2008) (allowing amendment to invalidity contentions where plaintiff would not be prejudiced).
[33] *See OpenTV,* 2015 U.S. Dist. LEXIS 44856, at *6 ("The issue of invalidity under Section 101 presents a question of law." (citing *DDR Holdings*, 773 F.3d at 1255)).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG

| | | |
|---|---|---|
| 1 | Dated: April 14, 2015 | I. NEEL CHATTERJEE |
| 2 | | VICKIE L. FEEMAN |
| | | LILLIAN J. MAO |
| 3 | | GLEN LIU |
| | | Orrick, Herrington & Sutcliffe LLP |
| 4 | | |
| 5 | | |
| | | By:   */s/ Lillian J. Mao* |
| 6 | | LILLIAN J. MAO |
| 7 | | Attorneys for Defendant |
| | | MOBILEIRON, INC. |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

MOBILEIRON'S REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CV12-05826 PSG