1  Courtland L. Reichman, SBN 2668873
   MCKOOL SMITH HENNIGAN, P.C.
2  255 Shoreline Drive, Suite 510
   Redwood Shores, California 94065
3  Tel: (650) 394-1400; Fax: (650) 394-1422
   creichman@mckoolsmith.com
4
   Steven J. Pollinger (*pro hac vice*)
5  Craig N. Tolliver (*pro hac vice*)
   Geoffrey L. Smith (*pro hac vice*)
6  Eric C. Green (*pro hac vice*)
   Joel Stonedale (*pro hac vice*)
7  MCKOOL SMITH, P.C.
   300 West 6th Street, Suite 1700
8  Austin, Texas 78701
   Tel: (512) 692-8700; Fax: (512) 692-8744
9  spollinger@mckoolsmith.com; gsmith@mckoolsmith.com;
   ctolliver@mckoolsmith.com; egreen@mckoolsmith.com;
10 jstonedale@mckoolsmith.com

11 Robert Muller, SBN 189651
   Douglas P. Roy, SBN 241607
12 CYPRESS, LLP
   11111 Santa Monica Blvd., Suite 500
13 Los Angeles, California 90025
   Tel: (424) 901-0123; Fax: (424) 750-5100
14 bob@cypressllp.com; doug@cypressllp.com

15 Attorneys for Plaintiffs
   Good Technology Corporation and
16 Good Technology Software, Inc.

17              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
18                 **SAN JOSE DIVISION**

19 Good Technology Corporation and          )  Case No. 5:12-cv-05826 PSG
   Good Technology Software, Inc.,          )
20                                          )  **GOOD TECHNOLOGY PLAINTIFFS'**
                                            )  **NOTICE OF MOTION AND MOTION**
21                      Plaintiffs,         )  **TO EXCLUDE OPINIONS OF**
          vs.                               )  **MOBILEIRON'S PROPOSED**
22                                          )  **EXPERTS RICHARD EICHMANN,**
   MobileIron, Inc.                         )  **EARL SACERDOTI, STEPHEN GRAY**
23                                          )  **AND PETER REIHER**
                        Defendant.          )
24                                          )  Date:  Tuesday, June 2, 2015
                                            )  Time:  10:00 AM
25                                          )  Ctrm:  Courtroom 5
                                            )  Judge: Honorable Paul S. Grewal
26 _____)

27

28 Case No. 5:12-cv-05826 PSG                        Good's Mot. To Exclude Eichmann,
                                                    Sacerdoti, Gray and Reiher Opinions

   1089764

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

TO DEFENDANT MOBILEIRON, INC., AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2015 at 10:00 AM or soon thereafter as it may be heard, in the courtroom of the Honorable Judge Paul S. Grewal, San Jose Courthouse, Courtroom 5 - 4th Floor, 280 South 1st Street, San Jose, CA 95113, Good Technology Corporation and Good Technology Software, Inc., ("Good") will, and hereby does, move the Court for an order excluding opinions of MobileIron's proposed experts Richard Eichmann, Earl Sacerdoti, Stephen Gray and Peter Reiher regarding Good's lost profits for MobileIron's infringement of the four Good patents-in-suit, MobileIron's alleged royalty for its counterclaim patent, alleged non-infringing alternatives, purported prior art, and claimed reduction to practice, as unreliable, irrelevant and contrary to law and fact in violation of *Daubert v. Merrell Dow Pharms., Inc.,*509 U.S. 579 (1993), and Federal Rule of Evidence 702.

This motion is supported by the attached Memorandum of Points and Authorities, the accompanying Declaration of Joel Stonedale, the record in this matter, and any argument that the Court may accept at the hearing.

## RELIEF REQUESTED

Good seeks an order excluding (1) the opinions of Richard Eichmann regarding a reasonable royalty for alleged infringement of MobileIron's counterclaim patent, (2) the opinions of Richard Eichmann regarding Good's lost profits to the extent such opinions relate to any consideration of sales *MobileIron* may have lost, (3) the opinions of Stephen Gray and Richard Eichmann concerning acceptability of alleged non-infringing substitutes referred to as "Alternative Multi-User Functionality On iOS" and "Multiple-Command Transmission," (4) the opinions of Earl Sacerdoti and Stephen Gray concerning theoretical prior art PDA Defense, SMS, AMO, and Altiris systems and (5) the opinions of Peter Reiher that the Lange reference is not prior art or concerning alleged reduction to practice of U.S. Patent No. 8,359,016 ("the '016 patent") claims, as unreliable, irrelevant and contrary to law and fact, in violation of *Daubert* and Federal Rule of Evidence 702.

Case No. 5:12-cv-05826 PSG

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1   DATED: May 1, 2015                    MCKOOL SMITH HENNIGAN, P.C.

2

3                                         By:   _/s/ Craig N. Tolliver_

4
                                          Attorney for Plaintiffs
5                                         Good Technology Corporation and
                                          Good Technology Software, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

iii

28   Case No. 5:12-cv-05826 PSG                          Good's Mot. To Exclude Eichmann,
                                                          Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1

## <u>TABLE OF CONTENTS</u>

2

Page(s)

3    I.    INTRODUCTION ...................................................................................................1

4    II.   LEGAL STANDARDS ...........................................................................................2

5    III.  MR. EICHMANN'S OPINION THAT A ROYALTY OF ▮▮▮▮ OR MORE WOULD
      BE REASONABLE FOR MOBILEIRON'S COUNTERCLAIM PATENT
6     CONTRAVENES THE ENTIRE MARKET VALUE RULE, IS THE RESULT OF
      FALSE ASSUMPTIONS AND IMPERMISSIBLE METHODOLOGIES, AND
7     SHOULD BE EXCLUDED AS SUCH...........................................................................3

8           A.    Mr. Eichmann's Methodology Of Basing A Royalty On Total Revenues He
                  Associates With Accused Products Contravenes The Entire Market Value
9                 Rule ........................................................................................................3

10          B.    Mr. Eichmann's Methodology Of Failing To Apportion To Account For
                  Unpatented Features Is Contrary To Law ...........................................................5
11
            C.    Mr. Eichmann's Opinions Are Impermissibly Based On Incorrect Facts And
12                Data, Ignoring Actual Sales Prices In Favor Of Fictional Prices To Yield A
                  ▮▮▮▮▮ Royalty Rate On Revenues That Include Non-Infringing Components ..........8
13
            D.    Mr. Eichmann's Methodology Of Allocating All Profits To MobileIron Is
14                Contrary To Law .......................................................................................9

15   IV.   MR. EICHMANN'S OPINIONS REGARDING GOOD'S LOST PROFITS—
      BASED ON HIS BACKWARDS METHODOLOGY OF INQUIRING INTO SALES
16    MOBILEIRON MAY HAVE "LOST" IF IT DID NOT INFRINGE GOOD'S
      PATENTS—SHOULD BE EXCLUDED AS UNRELIABLE, IRRELEVANT AND
17    CONTRARY TO LAW .........................................................................................11

18   V.    MR. GRAY'S METHODOLOGY OF BLINDLY ADOPTING THE UNFOUNDED
      LAY OPINION OF A MOBILEIRON EMPLOYEE REGARDING ALLEGED
19    NON-INFRINGING SUBSTITUTES, AND MR. EICHMANN'S UNFOUNDED
      RELIANCE ON MR. GRAY'S OPINIONS, ARE UNRELIABLE, AND THEIR
20    OPINIONS SHOULD BE EXCLUDED AS SUCH ...................................................12

21   VI.   MR. GRAY'S AND DR. SACERDOTI'S OPINIONS REGARDING FABRICATED
      PRIOR ART "SYSTEMS" NEVER SHOWN TO EXIST SHOULD BE
22    PRECLUDED AS UNRELIABLE AND UNFOUNDED ...................................................15

23          A.    Dr. Sacerdoti's Invalidity Opinions Based On The Fabricated "Altiris" System
                  Should Be Precluded As Unreliable And Unfounded................................................16
24
                  1.    Documents Dr. Sacerdoti Relies Upon Fail To Establish That The
25                      Theoretical Altiris System Ever Existed........................................................16

26                2.    MobileIron's "Re-Created" Test System Does Not Establish That Any
                        Altiris System Previously Existed ................................................................17

27

28

B.     Mr. Gray's Invalidity Opinions Based On The Fabricated "PDA Defense" System Should Be Precluded As Unreliable And Unfounded.....................................19

C.     Dr. Sacerdoti's Invalidity Opinions Based On The Fabricated "SMS" System Should Be Precluded As Unreliable And Unfounded....................................21

D.     Dr. Sacerdoti's Invalidity Opinions Based On The Fabricated "AMO" System Should Be Precluded As Unreliable And Unfounded....................................22

VII.    DR. REIHER'S OPINION THAT THE LANGE REFERENCE IS NOT PRIOR ART TO MOBILEIRON'S '016 PATENT SHOULD BE EXCLUDED AS UNRELIABLE AND UNFOUNDED ........................................................................................................23

VIII.   CONCLUSION.........................................................................................................25

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

v

Good's Mot. To Exclude Eichmann,
Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
    2012 U.S. Dist. LEXIS 90877 (N.D. Cal. June 29, 2012) ...........................................2, 3

*Ask Chems., LP v. Computer Packages, Inc.*,
    No. 14-3041, 2014 U.S. App. LEXIS 23444 (6th Cir. Dec. 10, 2014)...........................14

*Estate of Barabin v. AstenJohnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014) ...............................................................................6, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).................................................................................... *passim*

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d 1201 (Fed. Cir. 2014).........................................................................5

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..............................................................................2, 6, 10

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*,
    No. C 07-00692 WHA, 2008 WL 2008638 (N.D. Cal. May 6, 2008)...........................13

*GPNE Corp. v. Apple, Inc.*,
    No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 53234 (N.D. Cal. Apr. 16, 2014).....................7

*Honeywell International Inc. v. Universal Avionics Systems Corp.*,
    488 F.3d 982 (Fed. Cir. 2007)...........................................................................23

*King-Indiana Forge, Inc. v. Millennium Forge, Inc.*,
    No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131 (S.D. Ind. Sept.
    29, 2009) ....................................................................................................14

*Kyocera Wireless Corp. v. ITC*,
    545 F.3d 1340 (Fed. Cir. 2008)....................................................................15, 16

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012).......................................................................... *passim*

*Open Text S.A. v. Box, Inc.*,
    2015 U.S. Dist. LEXIS 8783 (N.D. Cal. Jan. 23, 2015) ...........................................5

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ..........................................................................12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780 (N.D. Cal. May 22, 2008)...................14

*TWM Mfg. Co. v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir. 1986)..........................................................................12

vi

Good's Mot. To Exclude Eichmann,
Sacerdoti, Gray and Reiher Opinions

*UMC Electronics Co. v. United States*,
   816 F.2d 647 (Fed. Cir. 1987), cert. denied, 484 U.S. 1025 (1988) ................................23

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)............................................................................................10

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013)..............................................................................................4

*VirnetX, Inc. v. Cisco Sys.*,
   767 F.3d 1308 (Fed. Cir. 2014)...............................................................................4, 5, 7, 10

**Statutes**

35 U.S.C. § 102.................................................................................................. *passim*

**Other Authorities**

Federal Rule of Evidence 403 .................................................................................13, 14, 15

Federal Rule of Evidence 702 .................................................................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

Case No. 5:12-cv-05826 PSG

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

MobileIron's proposed experts offer a range of methodologically flawed opinions that fail multiple threshold requirements and should be excluded as unreliable, contrary to law, unsupported by the facts, and tending to confuse the issues and mislead the jury.

MobileIron's damages consultant, Richard Eichmann, contravenes the entire market value rule, fails to apportion to account for unpatented features as required, bases his opinions on incorrect, hypothetical pricing while ignoring actual pricing, and inexplicably allocates all profits to MobileIron.  He thereby arrives at a "reasonable" royalty that amounts to ███ of Good's *revenues* from certain product licenses, despite the fact those licenses include components that do not infringe MobileIron's single counterclaim patent.

Mr. Eichmann offers additional unfounded opinions regarding Good's claim for lost profits on its four patents-in-suit.  He relies on a backwards methodology based on what proportion of accused sales he supposes *MobileIron* would have "lost" if it did not infringe Good's patents (as opposed to Good's lost sales), in an effort to avoid more than 90% of Good's lost profits.

One of MobileIron's technical consultants, Stephen Gray, blindly adopts the unfounded lay opinion of a MobileIron employee regarding hypothetical non-infringing substitutes that never existed, without offering any analysis establishing that such hypothetical products would have been acceptable to MobileIron's customers.  Mr. Eichmann in turn relies on, and expands upon, Mr. Gray's unsupported conclusions, compounding Mr. Gray's errors, in a further effort to reduce Good's damages.

Mr. Gray and Dr. Earl Sacerdoti, another of MobileIron's technical consultants, attempt to fabricate prior art "systems," never shown to exist, from collections of documents from multiple sources and spanning several years.  They improperly seek to treat these fictional systems and their collections of documents as single prior art references, to escape their burden of establishing reasons

Case No. CV-12-05826 PSG

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

1    to combine their multitude of disparate references and to avoid evidence of objective indicia

2    showing nonobviousness.

3          Peter Reiher, a technical consultant for MobileIron's patent, attempted to eliminate prior art

4    by arguing MobileIron's patent was reduced to practice in a product released ten months before the

5    patent application was filed.  But he later admitted that he has failed to show that the product

6    embodied the patent claims, and thus it cannot constitute reduction to practice.

7          MobileIron's consultants' erroneous, legally-impermissible theories are not based on

8    scientific, technical, or other specialized knowledge.  They are unsupported by sufficient facts or

9    data, and are not the product of reliable principles and methods being appropriately applied to the

10   facts of the case.  They will not help the jury to understand the evidence or to determine a fact in

11   issue, and instead risk confusing the issues and misleading the jury.  Accordingly, all of these

12   opinions should be excluded.

13   **II.    LEGAL STANDARDS**

14         Courts act as gatekeepers to exclude expert testimony that does not meet the relevance and

15   reliability threshold requirements. In this role, Courts determine the admissibility of expert testimony

16   based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579

17   (1993).  The reliability of expert opinion testimony is assessed by considering whether it is "based

18   on sufficient facts or data" and "the product of reliable principles and methods" that have been

19   "reliably applied … to the facts of the case."  Fed. R. Evid. 702.  Courts should exclude testimony if

20   "there is simply too great an analytical gap between the data and opinion proffered." *Gen. Elec. Co.*

21   *v. Joiner*, 522 U.S. 136, 146 (1997) (holding that the trial court may strike "opinion evidence that is

22   connected to existing data only by the *ipse dixit* of the expert").  Analysis that does not comport with

23   applicable law likewise should be excluded under Rule 702.  *Apple, Inc. v. Samsung Elecs. Co.*,

24   2012 U.S. Dist. LEXIS 90877, *27-28 (N.D. Cal. June 29, 2012) (excluding expert testimony on

25   damages because the expert's analysis was "contrary to law").  MobileIron bears the burden of

26   establishing the admissibility of its proposed experts' testimony. *See Daubert*, 509 U.S. at 592 n.10.

27

28

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

Case No. 5:12-cv-05826 PSG                                    Good's Mot. To Exclude Eichmann,
                                                             Sacerdoti, Gray and Reiher Opinions

1

III.    **MR. EICHMANN'S OPINION THAT A ROYALTY OF ███ OR MORE WOULD**
2      **BE REASONABLE FOR MOBILEIRON'S COUNTERCLAIM PATENT**
       **CONTRAVENES THE ENTIRE MARKET VALUE RULE, IS THE RESULT OF**
3      **FALSE ASSUMPTIONS AND IMPERMISSIBLE METHODOLOGIES, AND**
       **SHOULD BE EXCLUDED AS SUCH**

4          MobileIron's proposed damages expert Richard Eichmann misapplies the law, fails to

5   apportion as required, relies on hypothetical pricing while ignoring actual pricing, and relies on

6   impermissible and unsound methodologies, building error upon error to arrive at a "reasonable"

7   royalty that amounts to ███ of Good's *revenues* from certain products licenses, despite the fact

8   those licenses include components that do not infringe MobileIron's single counterclaim patent.  The

9   Federal Circuit has emphasized that any "damages theory must be based on sound economic and

10  factual predicates." *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 67 (Fed. Cir.

11  2012).  Mr. Eichmann's theories are based on neither, and instead rely on misapplication of the law

12  and fictional sales prices.  MobileIron should not be permitted to improperly influence the jury with

13  such methodologically, legally and factually flawed opinions.  *Apple v. Samsung*, 2012 U.S. Dist.

14  LEXIS 90877, at *27-28 (excluding expert testimony on damages because the expert's analysis was

15  "contrary to law").

16       A.    **Mr. Eichmann's Methodology Of Basing A Royalty On Total Revenues He**
             **Associates With Accused Products Contravenes The Entire Market Value Rule**
17

18         While Mr. Eichmann indicates that he did not intend to apply the entire market value rule

19  ("EMVR"),[1] he in fact uses precisely the methodology the EMVR proscribes, basing his proposed

20  reasonable royalty on *revenues* for accused products, and applying the same royalty to license

21  bundles that include both the accused products and non-infringing components.[2]  Mr. Eichmann's

22  methodology, regardless of how labeled, is contrary to law, and his opinions regarding a reasonable

23  royalty for MobileIron's counterclaim patent should therefore be excluded.

24

25  _____
      [1]  Ex. A (1/9/2015 Eichmann Rpt.) ¶66 ████████████████████████████████████████

26  ████████████████████.  Unless otherwise indicated, all lettered exhibits herein refer to the exhibits to the
    accompanying declaration of Joel Stonedale.

27    [2]  As explained in section III.C. *infra*, Mr. Eichmann separately errs by using fictional sales prices that are
    much higher than actual sales prices reflected in data Mr. Eichmann chose to ignore.

28
                                                    -3-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

For purposes of a reasonable royalty analysis,[3] "[a] patentee may assess damages based on the entire market value of the accused product *only where* the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013)). In the absence of such a showing, principles of apportionment apply. *Id.* Further the "obligation to apportion damages only to the patented features does not end with the identification of the smallest salable unit if that unit still contains significant unpatented features." *VirnetX*, 767 F.3d at 1329.

Contrary to Mr. Eichmann's assurance that he is "not applying the entire market value rule here"[4], he in fact bases his proposed royalty on *revenues*, i.e., the entire market value, for accused AppCentral products[5] and opines that MobileIron is entitled to *all* of Good's presumed profits, which he speculates to be ▮ of *all revenues* for the accused products.[6]  Mr. Eichmann's methodology of basing a royalty on the entire value of accused products, without any attempt to show that "the patented feature creates the basis for customer demand or substantially creates the value of the component parts," is directly contrary to the EMVR.  *See VirnetX*, 767 F.3d at 1326.  Regardless of whether Mr. Eichmann recognizes it or not, and "[w]hether called … 'apportionment' or anything else, the fact remains that the royalty was expressly calculated as a percentage of the entire market value of a [multi-component product] rather than a patent-practicing [component] alone. This, by definition, is an application of the entire market value rule." *VirnetX*, 767 F.3d at 1329 (quoting *LaserDynamics*, 694 F.3d at 68).

Mr. Eichmann's misapplication of the EMVR raises "the fundamental concern about skewing the damages horizon—of using a [royalty] base that misleadingly suggests an inappropriate range" of damages.  *VirnetX*, 767 F.3d at 1327.  Accordingly, Mr. Eichmann's opinions regarding a

---

[3] Mr. Eichmann's report does not include any opinions regarding lost profits with respect to MobileIron's '016 patent, and this portion of Good's brief accordingly concerns a reasonable royalty analysis.

[4] Ex. A (1/9/2015 Eichmann Rpt.) at ¶66.

[5] MobileIron's infringement expert, Dr. Reiher, provides an opinion that AppCentral infringes but does not provide any infringement opinion regarding any other Good product.

[6] Ex. A (1/9/2015 Eichmann Rpt.) at ¶¶7, 74-76.

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

reasonable royalty for MobileIron's counterclaim patent should be excluded. *Id.* at 1328-29 (agreeing that expert testimony "on the proper royalty base should have been excluded because it relied on the entire market value of [accused] products without demonstrating that the patented features drove the demand for those products.").

**B.   Mr. Eichmann's Methodology Of Failing To Apportion To Account For Unpatented Features Is Contrary To Law**

Mr. Eichmann claims that instead of applying the EMVR, he ████████████████ ████████████████████████████████████████████████████████████ ██████"[7]  But he fails to provide any analysis of the economic contribution of technology *not* claimed in the patent, and assumes without explanation that MobileIron is entitled to all of Good's profits (which he speculates to be ███ of revenues) for accused AppCentral products.[8]

"No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX*, 767 F.3d at 1326.  The "law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *Id.* at 1329; *see also LaserDynamics*, 694 F.3d at 67-68 (Fed. Cir. 2012); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."); *Open Text S.A. v. Box, Inc.*, 2015 U.S. Dist. LEXIS 8783, at *24-25 (N.D. Cal. Jan. 23, 2015).  Mr. Eichmann, however, has failed to "even attempt to subtract any other unpatented elements from the base, which therefore included various features indisputably not claimed by" MobileIron. *VirnetX*, 767 F.3d at 1328.

Mr. Eichmann instead offers the unsupported conclusion that Good's supposed profit of ███ per unit per month ███████████████████████████████████."[9]  He arbitrarily picks ██ per unit per month as the price of AppCentral (which is much higher than actual selling prices of

---

[7] Ex. A (1/9/2015 Eichmann Rpt.) at ¶66.
[8] *Id.* at ¶¶7, 74-76.
[9] Ex. A (1/9/2015 Eichmann Rpt.) at ¶76.

-5-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1    AppCentral plus non-infringing components, as detailed in section III.C. *infra*), and then arbitrarily

2    applied an �â–ˆâ–ˆ profit margin to arrive at a royalty of �Ã¢â– ˆ per unit per month, without any

3    apportionment for the unclaimed aspects of the products to which he applies the royalty.[10]

4         Like any other expert opinion, to survive *Daubert* an apportionment analysis must be based

5    on reliable scientific methodology. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th

6    Cir. 2014). A damages expert cannot "pluck[] [his apportionment] out of thin air based on vague

7    qualitative notions…." *LaserDynamics*, 694 F.3d at 69. The expert must include "economic

8    analysis to quantitatively support [his] apportionment," or otherwise face exclusion for the same

9    arbitrariness as "the '25% Rule.'" *Id*. Mr. Eichmann's arbitrary equating of a reasonable royalty

10   with a hypothetical ▢ profit margin on a hypothetical (and erroneous, as explained *infra*) $5

11   selling price, is not based on any "scientific methodology." Mr. Eichmann—an economist, not a

12   technical expert—did not undertake any analysis to determine what features not covered by the

13   patents-in-suit may be part of the accused products. Nor did he rely on any opinions on this topic

14   from MobileIron's technical expert, as there were no such opinions. "[N]othing in either *Daubert* or

15   the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to

16   existing data only by the *ipse dixit* of the expert." *General Elec. Co*., 522 U.S. at 146.

17        Having erroneously arrived at a ▢ unapportioned royalty for AppCentral, Mr. Eichmann

18   then attempts to bootstrap this same arbitrary, unapportioned royalty into his analysis of licenses to a

19   different product, Good Dynamics.[11] Mr. Eichmann acknowledges that ████████████████

20   ██████████████████████████████████████████████████████

21   ███████████████████"[12] Further, it is undisputed that Good Dynamics is a multi-purpose

22   product that has multiple components and includes at least the following capabilities, which

23   MobileIron does not even claim are covered by its patent: "Authenticate and manage users;

24   communicate between a client on a mobile device and an application server that is behind the

25

26   _____

27   [10] *Id*. at ¶¶74-76.
     [11] Ex A. (1/9/2015 Eichmann Rpt.) at ¶¶88-89.
28   [12] *Id*. at ¶66.

Case No. 5:12-cv-05826 PSG                                    Good's Mot. To Exclude Eichmann,
                                                             Sacerdoti, Gray and Reiher Opinions

enterprise firewall; Protect data in transit with secure communications; Protect data a rest with secure storage; [and] Enforce security measure such as password policies."[13]

Yet Mr. Eichmann inexplicably fails to address the value of the non-claimed features of AppCentral or of Good's "other security-related products" (Good Dynamics) included in bundles, or attempt to apportion value between them.  Mr. Eichmann fails, again, to "even attempt to subtract any other unpatented elements from the base, which therefore included various features indisputably not claimed by" MobileIron.  *VirnetX*, 767 F.3d at 1328.  The result is an *un*reasonable proposed royalty rate, amounting to ███ of the ███ average selling price and entire market value of a bundle that includes licenses to Good Dynamics and AppCentral, without any legal or factual justification for such unreasonable, economically irrational terms.

The error of Mr. Eichmann's methodology is further demonstrated by the fact that Good has sold a version of Good Dynamics without a license to AppCentral for ███ per user per month, while the average selling price of Good Dynamics with a license to AppCentral was only ███████ ███████.[14]  While pretending to apportion based on the supposed "economic contribution of the claimed technology," Mr. Eichmann simply ignores that the *actual* economic contribution of AppCentral, reflected in the real-world selling prices, is a small fraction of what Mr. Eichmann prefers.

Accordingly, Mr. Eichmann's opinions regarding MobileIron's claimed royalty should be excluded.  *See, e.g., VirnetX*, 767 F.3d at 1329 (concluding expert testimony should be excluded where the expert "failed to apportion value between the patented features and the vast number of non-patented features contained in the accused products…."); *GPNE Corp. v. Apple, Inc*., No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 53234, at *20-21 (N.D. Cal. Apr. 16, 2014) (excluding reasonable royalty opinion when expert failed to distinguish infringing features from non-infringing features and "apportion value between them").

---

[13] Ex. B (1/9/15 Smith Rpt.) at ¶¶67-68.
[14] Ex. X (2/13/2015 Weinstein Rebuttal Rpt.) at ¶145.

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

1

**C.    Mr. Eichmann's Opinions Are Impermissibly Based On Incorrect Facts And Data, Ignoring Actual Sales Prices In Favor Of Fictional Prices To Yield A ███ Royalty Rate On Revenues That Include Non-Infringing Components**

2

3    Mr. Eichmann's opinions regarding a royalty should be rejected on the separate ground that

4    they are improperly based on his erroneous presumptions as to what he supposes "Good would have

5    charged" for accused products, rather than actual sales data Good provided.[15]   The result is a ███

6    or higher royalty, *exceeding* the revenues for and the entire market value of the accused AppCentral

7    product itself, as well as a product bundle that includes a license to the accused AppCentral product

8    *plus* a license to the non-infringing Good Dynamics product.[16]   As noted above, Mr. Eichmann never

9    attempts to account for the unpatented features—such as those in Good Dynamics—that are included

10    in the product licenses to which he applies his royalty.

11    Expert testimony must be based upon sufficient facts or data and the expert must reliably

12    apply the principles and methods to the facts of the case.  Fed. R. Evid. 702; *see LaserDynamics*,

13    694 F.3d at 67 (observing that any "damages theory must be based on sound economic and factual

14    predicates.").  Mr. Eichmann's opinions fail both requirements.

15    Rather than relying on actual sales data Good provided, Mr. Eichmann undertakes an

16    analysis of hypothetical ████████████████████████████████████████████████

17    ███ "[17]  Mr. Eichmann notes that Good "considered" or "suggested" various pricing models as

18    low as ██ per user per month,[18] then concludes that ████████████████████████

19    ████████████████████████████████████████████████████████████████

20    ████████████████████████████ [19] "████████████████████████████

21    ████████████████████████████████████████████████████████████████

22    ████████████████████████ "[20]  To reach his result, he selectively ignores portions of the same

23    documents he relies upon.  He "observe[s] ████████████████████████████████

24    _____

25    [15] Ex. A (1/9/2015 Eichmann Rpt.) at ¶¶7, 74-76, 85.

[16] *Id.*

26    [17] Ex. A (1/9/2015 Eichmann Rpt.) at ¶74.

[18] *Id.*

27    [19] *Id.* at ¶85.

[20] *Id.* at ¶76.

28

Case No. 5:12-cv-05826 PSG                                        Good's Mot. To Exclude Eichmann,
                                                                  Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1  ██████████████████" in a March 2013 presentation,[21] but fails to mention that the same

2  document indicates an average selling price (in contrast to list price) of ██████████ for standalone

3  AppCentral.[22]

4          More fundamentally, in basing his proposed royalty on a hypothetical selling price of ██ Mr.

5  Eichmann supposes "Good would have charged" for the accused products had they been sold

6  separately, Mr. Eichmann improperly ignores *actual* sales prices, failing to address the fact that

7  AppCentral products were sold for an average selling price ("ASP") of █████ per user per month.[23]

8  Mr. Eichmann's arbitrary choice of a ██/user/month list price for AppCentral is also irreconcilable

9  with the █████ per user per month ASP of a bundle that includes AppCentral in addition to the *non-*

10 *infringing* Good Dynamics product. Mr. Eichmann's proposed ██ royalty is approximately ████ of

11 the entire market value of this bundle of accused AppCentral <u>and non-accused</u> Good Dynamics.[24]

12 The flaw in Mr. Eichmann's methodology is even more striking when one considers the undisputed

13 fact that Good Dynamics is a multi-purpose product that has multiple components and capabilities

14 noted in the preceding section that MobileIron does not even claim to be covered by its patent.

15         Mr. Eichmann's reliance upon hypothetical sales prices while ignoring actual sales prices

16 renders his opinions unreliable and irrelevant.  The Court should exercise its gatekeeping role to

17 exclude Mr. Eichmann's unfounded royalty opinions.

18         **D.    Mr. Eichmann's Methodology Of Allocating All Profits To MobileIron Is
                   Contrary To Law**

19

20         Mr. Eichmann's errors lie not only in his failure to apportion based on respective economic

21 contributions of the claimed technology and unclaimed features as explained above.  Mr. Eichmann

22 also erroneously allocates to MobileIron 100% of the ██ in profits he incorrectly presumes Good

23

24 _____

25 [21] *Id*. at ¶74c.
   [22] Ex. X (2/13/2015 Weinstein Rebuttal Rpt.) at ¶¶171, 174; Ex. L (GOODND00923723).

26 [23] *Id*. at ¶¶54, 112, 121, 142.  Mr. Eichmann also ignores the fact that approximately ████ of the accused
   standalone AppCentral products were given to existing Good customers free of charge.  *Id*.  Based on the

27 actual ASP of █████ for products that were not provided free of charge, Mr. Eichmann's proposed ██ royalty
   is approximately ████████ of the entire market value of accused AppCentral products. *Id*.

28 [24] *Id*. at ¶172.

-9-

1   would earn, leaving nothing for Good.[25]   He offers the *ipse dixit* conclusion that "I believe [this]

2   would indicate a reasonable royalty in this case."[26]   But he fails to reconcile his conclusion with the

3   *Georgia-Pacific* framework, and cannot explain why it would be reasonable for Good or any other

4   business entity involved in a hypothetical negotiation to agree to terms where it would earn nothing

5   or suffer a loss on each sale.

6          Mr. Eichmann's arbitrary assignment of 100% of profits to MobileIron should be excluded

7   because it is not based on any reliable scientific methodology.   *Estate of Barabin*, 740 F.3d at 463

8   (9th Cir. 2014).   He erroneously "pluck[s] [his apportionment] out of thin air" and fails to offer any

9   "economic analysis to quantitatively support [his] apportionment."   *LaserDynamics*, 694 F.3d at 69.

10  Mr. Eichmann's unprincipled approach of awarding MobileIron 100% of profits without explanation

11  should be rejected for the same reasons the Federal Circuit has rejected "rules of thumb" calling for

12  much lower but similarly unreasoned allocations of 50% and 25% of profits to a patentee.[27]   As the

13  Federal Circuit has explained, an expert's apportioning of profits must be tied to the facts of the

14  case.   But Mr. Eichmann fails to explain why all profits should be allocated to MobileIron in the

15  hypothetical negotiation.   And "nothing in either *Daubert* or the Federal Rules of Evidence requires

16  a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of

17  the expert."   *General Elec. Co.*, 522 U.S. at 146.   Mr. Eichmann's allocation of all profits to

18  MobileIron is arbitrary and irrational, falling far short of the requirements set forth in Rule 702 and

19  *Daubert*, and should be excluded.

20

21  _____

22  [25] Ex. A (1/9/2015 Eichmann Rpt.) at ¶76.

    [26] *Id.* at ¶76 ████████████████████████████████████████

23  [27] *See VirnetX*, 767 F.3d at 1332 ("[W]e agree with the courts that have rejected invocations of the Nash
    theorem without sufficiently establishing that the premises of the theorem actually apply to the facts of the

24  case at hand. The use here was just such an inappropriate 'rule of thumb.' ... Anyone seeking to invoke the
    theorem as applicable to a particular situation must establish that fit, because the 50/50 profit-split result is

25  proven by the theorem only on those premises."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317
    (Fed. Cir. 2011) ("The 25 percent rule of thumb is an abstract and largely theoretical construct fails to satisfy

26  this fundamental requirement. The rule does not say anything about a particular hypothetical negotiation or
    reasonable royalty involving any particular technology, industry, or party. Relying on the 25 percent rule of

27  thumb in a reasonable royalty calculation is far more unreliable and irrelevant than reliance on parties'
    unrelated licenses, which we rejected in *ResQNet* and *Lucent Technologies*.").

28
                                                    -10-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

**IV.    MR. EICHMANN'S OPINIONS REGARDING GOOD'S LOST PROFITS—BASED ON HIS BACKWARDS METHODOLOGY OF INQUIRING INTO SALES MOBILEIRON MAY HAVE "LOST" IF IT DID NOT INFRINGE GOOD'S PATENTS—SHOULD BE EXCLUDED AS UNRELIABLE, IRRELEVANT AND CONTRARY TO LAW**

The errors in Mr. Eichmann's opinions regarding a reasonable royalty for MobileIron's counterclaim patent are discussed above.   Mr. Eichmann also offers unreliable and irrelevant opinions regarding Good's lost profits for MobileIron's infringement of Good's four patents-in-suit. While Mr. Eichmann failed to apportion when it would have reduced MobileIron's claimed royalty as explained *supra*, here Mr. Eichmann seeks to apply a legally impermissible theory under the guise of "apportioning" to eliminate more than 90% of Good's lost profits.   He opines, without citing any support, that in calculating lost profits, "[o]ne might consider … (1) [h]ow many of accused sales would *MobileIron* have lost had they been unable to utilize the Good patents-in-suit? [a]nd, (2) [h]ow many of those sales would Good have acquired?"[28]  But the issue here is *Good's* lost profits.

There is no reason, let alone precedent, for "one [to] consider … how many of accused sales would MobileIron have lost" if it did *not* infringe Good's patents.   The lost profits inquiry concerns Good's lost profits, not MobileIron's.   It is assumed for purposes of damages assessments that the "accused sales" *do* infringe valid patents.   Indeed, Mr. Eichmann explicitly assumes infringement in his damages analysis.[29]   The appropriate analysis under applicable law addresses the situation where *no* infringing sales would have been made by MobileIron, and thus, in Mr. Eichmann's words, MobileIron would have "lost" all accused sales.   Mr. Eichmann's theory that MobileIron would not have "lost" ▮▮▮ of its infringing sales makes no sense, is contrary to law and Mr. Eichmann's own assumptions, and is irrelevant.   Mr. Eichmann's theory should be excluded for the additional reason that it is particularly likely, if not designed, to mislead the jury.

---

[28] Dkt. 236-8 (2/13/2015 Eichmann Rpt.) at ¶71.
[29] Ex. C (2/13/2015 Eichmann Rpt.) at ¶12.

-11-

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

**V.    MR. GRAY'S METHODOLOGY OF BLINDLY ADOPTING THE UNFOUNDED LAY OPINION OF A MOBILEIRON EMPLOYEE REGARDING ALLEGED NON-INFRINGING SUBSTITUTES, AND MR. EICHMANN'S UNFOUNDED RELIANCE ON MR. GRAY'S OPINIONS, ARE UNRELIABLE, AND THEIR OPINIONS SHOULD BE EXCLUDED AS SUCH**

Mr. Eichmann challenges Good's lost profits, in part, based on his assertion that there were non-infringing alternatives to the accused products.[30]  But none of Mr. Eichmann's supposed non-infringing alternatives actually existed.  The "alternatives" Mr. Eichmann offers are pure speculation of how MobileIron *might* have been able to modify its accused products to "design around" Good's patents.  Despite facing an injunction, MobileIron never developed and offered such redesigned products and instead continued offering the infringing products.  None of Mr. Eichmann's theoretical products were available to purchasers of MobileIron's infringing products while Good has been losing sales and profits as a result of MobileIron's infringement.

A basic requirement for any non-infringing alternative is that it must be shown to be "acceptable" to customers, including technically and economically acceptable, as an alternative to the accused products.  "Mere existence of a competing device does not make that device an acceptable substitute."  *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986).  "'A product lacking the advantages of that patented can hardly be termed a substitute 'acceptable' to the customer who wants those advantages.'"  *Id.* (quoting *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1162 (6th Cir. 1978)).

To reach his conclusions regarding purported non-infringing alternatives, Mr. Eichmann relies on the unfounded opinions of Mr. Gray, a technical consultant.  For U.S. Patent No. 6,151,606 ("the '606 patent"), Mr. Gray describes a hypothetical alternative he calls ███████████ ██████████████████████" [31]  For U.S. Patent No. 8,012,219 ("the '219 patent"), he describes a hypothetical alternative he refers to as ███████████████████████ [32]  Mr. Gray opines that these two hypothetical designs would have been "*technically*" acceptable and feasible, but offers no independent analysis and admits that his opinion is based on the unsupported conclusions of a

---

[30] Dkt. 236-8 (2/13/2015 Eichmann Rpt.) at ¶¶37-38.
[31] Dkt. 255-40 (2/13/2015 Gray Rpt.) ¶¶327-329.
[32] *Id.* at ¶¶334-337.

-12-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1    MobileIron employee, Suresh Batchu.  Regarding the first hypothetical design, Mr. Gray states that

2    ████████████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████[33]    Regarding the

4    second hypothetical design, Mr. Gray states, nearly identically, that ████████████████████

5    ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████[34]

7        Mr. Gray failed to undertake any independent analysis to determine whether or not

8    MobileIron's hypothetical alternatives, had they existed, would have been acceptable to

9    MobileIron's customers, "technically," economically or otherwise.[35]  Instead, Mr. Gray relies on

10   unspecified conversations with MobileIron's non-expert employee for his assumptions that

11   MobileIron's hypothetical design-arounds would have been only "*technically* acceptable" and

12   "feasible."[36]  But Mr. Gray could not even explain anything Mr. Batchu did to arrive at his

13   conclusion.[37]  And neither Mr. Gray nor the lay-witness MobileIron employee offer customer studies

14   or surveys or anything else to support their self-serving, conclusory statements.  Mr. Gray elected

15   not to ask MobileIron's employee what the basis was for his opinion and chose to blindly adopt a

16   biased lay witness's unsupported statements as his own expert opinion, rendering his opinion

17   unreliable.[38]

18       "Important factual points should not be proven through experts spoon-fed by wholly biased

19   sources."  *Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*, No. C 07-00692 WHA, 2008 WL

20   2008638, at *1 (N.D. Cal. May 6, 2008).  Under Rules 702 and 403, an expert cannot merely "bless"

21

22

23   [33] *Id.* at ¶329.

     [34] *Id.* at ¶337.

24   [35] Ex. D (3/19/2015 Gray Dep. Tr.) at 131:9-18, 132:24-133:9 (regarding multi-user functionality); 143:23-144:2 (regarding multiple command transmission).

25   [36] Dkt. 255-40 (2/13/2015 Gray Rpt.) ¶329 (regarding multi-user functionality), ¶337 (regarding multiple command transmission).

26   [37] Ex. D (3/19/2015 Gray Dep. Tr.) at 131:19-132:3 (regarding multi-user functionality), 144:6-9 (regarding multiple command transmission).

27   [38] Nor did Good have any opportunity to depose Mr. Batchu regarding his lay opinions on non-infringing alternatives.  His opinion was not revealed until after the close of fact discovery in Mr. Gray's expert report.

28

Case No. 5:12-cv-05826 PSG                    Good's Mot. To Exclude Eichmann,
                                              Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

a client's assertions.[39]  "[N]o professional should reasonably rely on such a rigged and biased source of information for any materially important fact to his or her opinion … .  [U]nder Rule 403, the 'probative value' of such testimony is far outweighed by risk of 'misleading the jury,' such that references and opinion dependent thereon should be excluded."  *Therasense*, 2008 U.S. Dist. LEXIS 124780, at *16. This is especially true where, as here, the fact relied upon is the sole basis for the expert's opinion. "The more central the 'fact' issue is in the overall opinion and overall trial and the more controverted the 'fact' is in the context of the case, the more due diligence an expert should exercise before merely taking a partisan's word." *Id*. at *18. Mr. Gray's conclusory, unfounded statements regarding noninfringing alternatives fail the requirements of Rules 702 and 403 and *Daubert*, and should be excluded.

Further, Mr. Gray's methodological errors infected the opinions of MobileIron's damages consultant, Mr. Eichmann, who relies on Mr. Gray's unfounded opinion without undertaking independent analysis.  As an additional ground for exclusion, while Mr. Gray's opinions were limited to "technical" acceptability and feasibility, Mr. Eichmann states more broadly that "[b]ased on" some unspecified ███████████████████████████████████████████████████

█████████████████████████████████."[40]  But Mr. Eichmann offers no support for opining that MobileIron's hypothetical alternatives, had they existed, would have been "acceptable" to MobileIron's customers in all respects, including economically.  Mr. Eichmann notes time and cost estimates from Mr. Gray, but fails to explain why or offer any evidence that MobileIron's never-implemented designs in fact would be acceptable to MobileIron's customers.[41]  Mr. Eichmann merely adopts Mr. Gray's unfounded opinions relying on unsupported lay witness opinions of a

---

[39] *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780, at *16 (N.D. Cal. May 22, 2008); *Ask Chems., LP v. Computer Packages, Inc.*, No. 14-3041, 2014 U.S. App. LEXIS 23444, at *10 (6th Cir. Dec. 10, 2014); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 U.S. Dist. LEXIS 96131, at *4 (S.D. Ind. Sept. 29, 2009) ("When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded.").

[40] Dkt. 236-8 (2/13/2015 Eichmann Rpt.) ¶38 ████████████████████████████████████ 

███████████████████████████████████████████████).

[41] Dkt. 236-8 (2/13/2015 Eichmann Rpt.) ¶¶37-38.

Case No. 5:12-cv-05826 PSG                                   Good's Mot. To Exclude Eichmann,
                                                            Sacerdoti, Gray and Reiher Opinions

1    biased MobileIron employee regarding "technical" acceptability and feasibility, perpetuating the

2    infirmities described above with respect to Mr. Gray's testimony.  Mr. Eichmann's conclusory,

3    unfounded opinions should be excluded under Rules 702 and 403 and *Daubert*.

4    **VI.    MR. GRAY'S AND DR. SACERDOTI'S OPINIONS REGARDING FABRICATED
              PRIOR ART "SYSTEMS" NEVER SHOWN TO EXIST SHOULD BE PRECLUDED**

5    **AS UNRELIABLE AND UNFOUNDED**

6           Unable to proffer any actual products or systems that existed in the prior art, MobileIron's

7    experts assemble dozens of miscellaneous documents and present groups of these *documents* as

8    though they are physical "systems" that anticipate or render obvious certain claims of the patents-in-

9    suit.  But MobileIron's experts fail to establish that the alleged "systems"—which MobileIron refers

10   to as Altiris, PDA Defense, SMS and AMO—*ever existed*, let alone existed during the relevant time

11   before the priority dates of Good's patents.

12          It is understandable that MobileIron's experts would want to cast multiple documents as a

13   single "system" to avoid the rigors of performing an obviousness analysis for all of the individual

14   documents, but the Federal Circuit has rejected such gamesmanship.  The Federal Circuit "requires

15   that in order to anticipate a claim, a *single* prior art reference must expressly or inherently disclose

16   each claim limitation." *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1351 (Fed. Cir. 2008)

17   (internal quotation omitted) (emphasis added).  In *Kyocera*, the Court rejected arguments that a

18   collection of documents referred to as the "GSM standard" "function as a single, coherent reference"

19   and therefore should be treated as a single reference that could anticipate asserted claims.  *Id*. at

20   1351-52.  The court noted that the documents were written by different authors at different times,

21   and concluded that each document, "though part of the greater GSM standard, stands as a separate

22   document in its own right." *Id*. at 1351.  The court accordingly determined that "the GSM standard is

23   actually several prior art references with separate dates of creation, rather than a single prior art

24   reference" and "is not available for use as a single anticipating reference under § 102." *Id*. at 1351-

25   52.  The same is true here.  The documents MobileIron's experts offer for each of the four fictional

26   systems are separate documents in their own right, with separate dates of creation, regardless of

27   whether they describe similar technology, and cannot be used as a single anticipating reference

28

-15-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

under § 102.  *Id*.  Nor are the fictional systems, purportedly described by the documents, available as a single anticipating reference—it has not been established that they ever existed, let alone existed at the relevant time.  MobileIron's experts fail to identify any such "systems" that were ever created prior to the patent priority dates and that implemented the teachings from the multitude of references MobileIron's experts seek to improperly combine.

If MobileIron believed its theoretical "systems" existed at the relevant times, it should have pursued discovery from third parties and offered credible evidence of their existence.  Having failed to do so, MobileIron cannot now end-run the single-reference rule simply by having its experts decree that multiple ████████████████████████████████████████████████████████

████████████████████████████."[42]  While MobileIron may argue that its groups of documents should be combined in an obviousness analysis, those documents cannot be treated as a single reference that anticipates or, when combined with other references, renders obvious any asserted patent claims.  *Kyocera*, 545 F.3d at 1351-52.  Mr. Gray's and Dr. Sacerdoti's methodologies of concocting four "systems" from collections of disparate documents are contrary to law and divorced from the facts, and their opinions regarding these fabricated "systems" should be excluded.  *Id*.

### A.     Dr. Sacerdoti's Invalidity Opinions Based On The Fabricated "Altiris" System Should Be Precluded As Unreliable And Unfounded

Dr. Sacerdoti alleges that an "Altiris Handheld Management Suite" ("Altiris") system, which he describes as "a collection of related products," is prior art that anticipates or renders obvious certain claims of U.S. Patent No. 7,970,386 ("the '386 patent"), but fails to show that any such system ever existed, let alone existed before the priority date of the '386 patent, and his collection of documents is not a "system" that can be treated as a single prior art reference.[43]

### 1.     Documents Dr. Sacerdoti Relies Upon Fail To Establish That The Theoretical Altiris System Ever Existed

Dr. Sacerdoti's invalidity opinion depends on a combination of six documents, including technical literature, marketing materials, and release notes.[44]  Dr. Sacerdoti asserts that the ██████

---

[42] *See, e.g*., Dkt 186-7 (1/9/2015 Sacerdoti Rpt.), App. C at 1, App. D at 2, App. E at 2, App. G at 1.
[43] Ex. E (1/9/2015 Sacerdoti Rpt.) at 69-72; Dkt. 186-7 (1/9/2015 Sacerdoti Rpt.), App. E at 1-2.
[44] Dkt. 186-7 (1/9/2015 Sacerdoti Rpt.), App. E at 1.

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████.["45]   But the references have not been shown to be "prior art" or to describe any single prior art system at all.  They indicate copyright dates from 2004 to 2005, indicating that revisions were made throughout that period, contrary to Dr. Sacerdoti's unfounded claim that these documents all describe "the same prior art system."[46]   Also belying Dr. Sacerdoti's claim, the references appear to cover different versions of an Altiris design or product,[47] and Dr. Sacerdoti does not even argue that the features and functionalities of any such Altiris designs were unchanging over time.  Even if Dr. Sacerdoti had established that one or more products having some of the features described in the references existed at some time, this would not support his opinion that a *single* product existed before the June 3, 2005 priority date and embodied *all* the features and functionality described in each of the references.  Thus, there is no basis for Dr. Sacerdoti treating the multiple references, or the fictional system he claims they describe, as a single prior art reference.  If Dr. Sacerdoti wished to use more than one of the references for his invalidity theories, he should have offered a sound reason for combining them.

Dr. Sacerdoti's analysis is premised on all the documents he cites describing a single prior art system, which has not been shown to ever exist, let alone exist at the relevant time.  His opinions regarding the fabricated Altiris system therefore should be excluded as unreliable and contrary to the facts and the law.

       **2.**      **MobileIron's "Re-Created" Test System Does Not Establish That Any Altiris System Previously Existed**

MobileIron, unable to proffer any "Altiris system" that existed in 2004 (before the priority date of the '386 patent), hired a consultant, Alan Purdy, to attempt to create one for litigation ten

---

[45] *Id*. at App. E at 2.

[46] *See, e.g.*, Ex. M (DEFINV0009670 (Altiris Inventory Solution 6.1 for Pocket PC Product Guide)) *and* Ex. N (DEFINV0009668 (Altiris Handheld Management Suite Datasheet, indicating 2005 copyright)); Ex. O (DEFINV0009623 (Release Notes Altiris Pocket PC Agent 6.1 Service Pack 1, indicating 2004 copyright)).

[47] *Compare, e.g.*, Ex. O (DEFINV0009623 (Release Notes Altiris Pocket PC Agent 6.1 Service Pack 1)) *with* Ex. M (DEFINV0009670 (Altiris Inventory Solution 6.1 for Pocket PC Product Guide)) *and* Ex. N (DEFINV0009668 (Altiris Handheld Management Suite Datasheet)).

-17-

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

years later, from an assembly of hardware and software components of unknown provenance.[48]  Dr. Sacerdoti, in opining that claims of the '386 patent are invalid, blindly relies on ███████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████"[49]  But Dr. Sacerdoti has no foundation for concluding that such a system even existed during the relevant time.  Neither Dr. Sacerdoti nor Mr. Purdy offer any evidence that such a system actually existed in 2004, long before Mr. Purdy created one in 2014 at MobileIron's behest for this litigation.  There is no indication that Mr. Purdy took any steps to establish the provenance of the individual software and hardware components he assembled, let alone establish that they were combined in the identical manner in 2004.  Dr. Sacerdoti's analysis is premised on the system being assembled from "prior art machines," but he provides no evidence for his supposition that the particular "machines" existed at all, let alone in the same state in 2004.  Both the hardware and the software Mr. Purdy assembled have not been shown to exist in 2004, and even if they did then exist in some form, could have been reconfigured or otherwise modified at any point during the ten years before Mr. Purdy conducted his tests.

Dr. Sacerdoti either failed to consider these issues or consciously elected not to do anything to investigate them, yet still relied upon Mr. Purdy's claim charts and screenshots.[50]  Either way, whether by negligence or willful blindness, Dr. Sacerdoti's failure to provide any foundation that this newly-assembled system actually existed a decade ago renders his opinions unreliable.  It is his obligation to set forth the basis of any opinions he plans to rely upon, and here he fails to meet the most basic of requirements—showing that alleged prior art in fact ever existed prior to the invention.  Dr. Sacerdoti failed to take even basic steps to investigate Mr. Purdy's system.  In fact, Dr. Sacerdoti testified he did not know when or where Mr. Purdy's system was set up and that he was not provided

---

[48] Ex. E (1/9/2015 Sacerdoti Rpt.) at 5.
[49] *Id.*
[50] *Id.* (stating that Dr. Sacerdoti ████████████████████████████████████████

████████████████████████████████████████████████████████████

Case No. 5:12-cv-05826 PSG                                      Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1   an opportunity to even inspect Mr. Purdy's test system.[51]  And while Dr. Sacerdoti admitted that █████

2   ███████████████████████████████████████████████████████████████████

3   ██████" and "so on and so forth,"[52] he and Mr. Purdy ████████████████████████[53]

4   Dr. Sacerdoti admits that ███████████████████████████████████████████████

5   █████████████████████████████  but disclaims any knowledge of how Mr.

6   Purdy configured the test system beyond the incomplete information shown in the claim chart.[54]

7   Despite the lack of foundation, Dr. Sacerdoti relied entirely on Mr. Purdy and ████████████████

8   ████████████████████████████████████████████████████████████."[55]

9        Like MobileIron's expert, Good has also been kept in the dark concerning Mr. Purdy's

10  system.  Good was never informed of Mr. Purdy's creation until Dr. Sacerdoti relied upon it in his

11  report.  And Good was not afforded an opportunity to inspect the system or to depose Mr. Purdy.

12  Nor has MobileIron provided any details about the system's configuration.

13        Dr. Sacerdoti's opinions, based on the experiments of someone he claims "re-created" a

14  complex prior art system, but who is not testifying in this case and whose configuration of a system

15  conjured a decade after the relevant time was not investigated let alone verified by Dr. Sacerdoti, are

16  unreliable and should be excluded.

17  **B.    Mr. Gray's Invalidity Opinions Based On The Fabricated "PDA Defense"
       System Should Be Precluded As Unreliable And Unfounded**

18

19        Mr. Gray alleges that a so-called "PDA Defense" system, from a company known as

20  Asynchrony Solutions, is prior art that anticipates or renders obvious certain claims of the '219

21  patent.[56]  Mr. Gray's invalidity analysis relies on a collection of materials, including a book, product

22  documentation, marketing materials, webpages, and even a handbook about the Palm V Organizer

23  that has no relation to PDA Defense.[57]  Like Dr. Sacerdoti, Mr. Gray claims that these references

24  ――――――――――――――――――
    [51] Ex. F (3/18/2015 Sacerdoti Dep. Tr.) at 225:24-226:7.

25  [52] *Id.* at 226:11-18.

    [53] *Id.* at 227:22-228:6.

26  [54] *Id.* at 228:7-24.

    [55] *Id.* at 229:2-9.

27  [56] Ex. G (1/9/2015 Gray Rpt.) ¶106.

    [57] *Id.* at ¶106.

28                                          -19-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[58]  But Mr.

Gray's circular statement is contradicted by the references themselves.  They indicate different

versions of PDA Defense operating on different operating systems with different features on

different devices.[59]  Several of the references include copyright dates ranging from 2000 to 2003,[60]

indicating that revisions were made throughout that period.   And David Melnick, a former

Asynchrony employee, testified that the features of PDA Defense varied over time and depending on

which type of PDA was being used.[61]

Even if Mr. Gray had established that one or more products having some of the features

described in the references existed at some time, this would not support his opinion that a *single*

product existed before the August 9, 2002 priority date (or even before the August 9, 2003 priority

date Mr. Gray argues should apply) and embodied *all* the features and functionality described in

each of the references.[62]  Thus, there is no basis for Mr. Gray treating the multiple references, or the

fictional system he claims they describe, as a single prior art reference.  If Mr. Gray wished to use

---

[58] *Id.* at ¶107.

[59] *See, e.g.,* Ex. H (DEFINV0008547 (PDA Security)) at 8741 ("One additional fail-safe feature in PDA Defense Enterprise version 3.1 works only for BlackBerry RIM devices."); Ex. I (AS000003 (PDA Defense RIM Installation Flow Chart indicating 2002 copyright)); Ex. J (AS000017-61 (PDA Defense Enterprise Version 3.1b.03.07.24 Administrator Guide indicating 2000-2003 copyright and describing Palm OS, Pocket PC and RIM devices)); Ex. K (AS000093-99 (PDA Defense Enterprise Version 3.1b.03.07.24 Upgrade Instructions indicating 2000-2003 copyright)).

[60] *See, e.g.,* Ex. J (AS000017-61 (PDA Defense Enterprise Version 3.1b.03.07.24 Administrator Guide indicating 2000-2003 copyright and describing Palm OS, Pocket PC and RIM devices)); Ex. K (AS000093-99 (PDA Defense Enterprise Version 3.1b.03.07.24 Upgrade Instructions indicating 2000-2003 copyright)).

[61] Ex. P (10/24/2014 Melnick Depo. Tr.) at 110:8-111:20 (former PDA Defense employee testifying that "the PDA Defense product ... incorporated a number of new features and capabilities and had evolved" over time and "[c]ertainly we added feature and functionality based on client requirements over time to the platform" and "there were a lot of sort of specific little features and functionality elements that were enhanced over time.").

[62] Moreover, Mr. Gray fails to show that references he relies upon actually existed or described any system that existed before the '219 patent's priority date.  He relies upon two website pages—which he calls "Bomb Enterprise" and "PDA Bomb"—and indicates they are "from June 2, 2001 as viewed through" a website (web.archive.org), but fails to establish they in fact are "from" or were published as of June 2, 2001 or any other time before the priority date.  Ex. G (1/9/2015 Gray Rpt.) ¶106.  MobileIron has objected to Good's use of such materials from the same website, arguing that they are hearsay, not sufficiently authenticated and untimely disclosed.  Dkt. No. 264 (MobileIron's Objection To Reply Evidence).  Similar objections would apply to the webpages Mr. Gray offers, and MobileIron should not be permitted to rely on such evidence here while arguing Good cannot rely on precisely the same type of evidence from the same source.

Case No. 5:12-cv-05826 PSG

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1   more than one of the references for his invalidity theories, he should have provided a sound reason

2   for combining them.

3          Mr. Gray's analysis is premised on all the documents he cites describing a single prior art

4   system, which has not been shown to ever exist, let alone exist at the relevant time.  Mr. Gray's

5   opinions regarding the fabricated PDA Defense system therefore should be excluded as unreliable

6   and contrary to the facts and law.

7          **C.     Dr. Sacerdoti's Invalidity Opinions Based On The Fabricated "SMS" System
               Should Be Precluded As Unreliable And Unfounded**

8          Dr. Sacerdoti alleges that a Microsoft "Systems Management Server 2003 including the

9   Device Management Feature Pack" ("SMS") system is prior art that anticipates or renders obvious

10  certain claims of the '386 patent[63] and U. S. Patent No. 7,702,322 ("the '322 patent").[64]  Dr.

11  Sacerdoti's invalidity theories rely on a combination of multiple documents, including technical

12  literature and marketing materials.[65]  Dr. Sacerdoti seeks to treat these multiple documents as a

13  single prior art reference, arguing that these ███████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████████[66] But his premise that the

16  documents "identify … the same prior art system" is undone by the references themselves, which

17  indicate copyright and publication dates spanning several years.[67]  Dr. Sacerdoti has failed to make

18  any showing that the features and functionalities of any SMS-related product remained unchanged

19  over time, that his supporting documentation all describes a *single* SMS product, or that such a

20  product actually existed before the priority date and embodied *all* the features and functionality

21  described in each of the references.

22

23

24  [63] Ex. E (1/9/2015 Sacerdoti Rpt.) at 48-53.
    [64] *Id*. at 105-10.

25  [65] Ex. E (1/9/2015 Sacerdoti Rpt.) at 48-53, 105-10; Dkt. 186-7 (1/9/2015 Sacerdoti Rpt.), Appendix C at 1,
    Appendix G at 1.

26  [66] Dkt. 186-7 (1/9/2015 Sacerdoti Rpt.), Appendix C at 1, Appendix G at 1.

27  [67] *See, e.g*., Ex. Q (DEFINV0000001 (Microsoft Systems Management Server (SMS) 2003 Device
    Management Feature Pack Guide indicating "Published: October 2004")); Ex. R (DEFINV0004634
    (Operations Guide, Microsoft Systems Management Server 2003, indicating 1994-2003 copyright)).

28
                                              -21-

1    Accordingly, there is no basis for Dr. Sacerdoti treating the multiple references, or the

2 fictional system he claims they describe, as a single prior art reference.  If Dr. Sacerdoti wished to

3 use more than one of the references for his invalidity theories, he should have provided a sound

4 reason for combining them.

5    Dr. Sacerdoti's analysis is premised on all the documents he cites describing a single prior art

6 system, which has not been shown to ever exist, let alone exist at the relevant time.  Dr. Sacerdoti's

7 opinions regarding the fabricated SMS system therefore should be excluded as unreliable and

8 contrary to the facts and law.

9    **D.    Dr. Sacerdoti's Invalidity Opinions Based On The Fabricated "AMO" System Should Be Precluded As Unreliable And Unfounded**

10    Dr. Sacerdoti argues that a "Unicenter TNG Asset Management Option" ("AMO") system

11 from Computer Associates International is prior art that anticipates or renders obvious certain claims

12 of the '386 patent.[68]  Dr. Sacerdoti's invalidity opinion relies on a combination of thirteen

13 documents, including technical literature, marketing materials, and custom computer code scripts.[69]

14 Dr. Sacerdoti seeks to treat these multiple documents as a single prior art reference, arguing that

15 these ██████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ██████████████████████████████████."[70]

19    But the references do not describe any single prior art system at all.  They include copyright

20 and publication dates ranging from 1998 to 2005, indicating that revisions were made throughout

21 that period, contrary to Dr. Sacerdoti's assertion that these documents all describe "the same prior art

22 system."[71]  And Dr. Sacerdoti has failed to make any showing that the custom computer scripts he

23

24 ─────────────────────
[68] Ex. E 1/9/2015 Sacerdoti Rpt. at 60-63.
[69] Dkt. 186-7 1/9/2015 Sacerdoti Rpt., Appendix D at 1.
25 [70] *Id.* at Appendix D at 2.
[71] *See, e.g.*, Ex. S CAI_0000001-24 (Unicenter Desktop and Server Management, Release Impact Guide r11,
26 indicating 2005 copyright), at 5 (describing "new and enhanced features" in r11 release); Ex. T
CAI_0000025-300 (Unicenter Desktop and Server Management, Implementation Guide r11, indicating 2005
27 copyright), at 5 (describing "new and enhanced features" in r11 release); Ex. U CAI_0001008 (AMO 3.0
Basic Admin Console and Engine User's Guide, indicating "Guide Revision 01 August 1998").
28                                           -22-

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1   cites were ever implemented in any "AMO system."  Nor has he established that the features and

2   functionalities of the purported AMO system remained unchanged over time, that his supporting

3   documentation all describes a *single* product and that such a product existed before the priority date

4   and embodied *all* the features and functionality described in each of the references.  To the contrary,

5   documents dated 2005 indicate that they reflect "new" features.[72]

6          Accordingly, there is no basis for Dr. Sacerdoti treating the multiple references, or the

7   fictional system he claims they describe, as a single prior art reference.  If Dr. Sacerdoti wished to

8   use more than one of the references for his invalidity theories, he should have provided a sound

9   reason for combining them.

10         Dr. Sacerdoti's analysis is premised on all the documents he cites describing a single prior art

11  system, which has not been shown to ever exist, let alone exist at the relevant time.  Dr. Sacerdoti's

12  opinions regarding the fabricated AMO system therefore should be excluded as unreliable and

13  contrary to the facts and law.

14  **VII.   DR. REIHER'S OPINION THAT THE LANGE REFERENCE IS NOT PRIOR ART
         TO MOBILEIRON'S '016 PATENT SHOULD BE EXCLUDED AS UNRELIABLE**
15       **AND UNFOUNDED**

16         Dr. Reiher argued in his report that the Lange reference[73] is not prior art because

17  MobileIron's '016 patent was reduced to practice in the form of a "MobileIron version 2.0" product

18  that was released before the Lange reference was published.[74]  In a subsequent deposition, however,

19  he admitted that he failed to analyze this product to show that it embodied each limitation of each

20  asserted claim, and thus there is no reasoned basis for his conclusion.

21         "[T]here cannot be a reduction to practice of the invention ... without a physical embodiment

22  which includes all limitations of the claim."  *UMC Electronics Co. v. United States*, 816 F.2d 647,

23  652 (Fed. Cir. 1987), cert. denied, 484 U.S. 1025 (1988); *see Honeywell International Inc. v.*

24

---

25  [72] Ex. S (CAI_0000001-24 (Unicenter Desktop and Server Management, Release Impact Guide r11,
    indicating 2005 copyright)), at 5 (describing "new and enhanced features" in r11 release); Ex. T
26  (CAI_0000025-300 (Unicenter Desktop and Server Management, Implementation Guide r11, indicating 2005
    copyright)), at 5 (describing "new and enhanced features" in r11 release).

27  [73] "Lange" refers to U.S. Patent Application Publication No. 2012/0072312, filed on September 22, 2010.
    [74] Dkt. 261-6 (2/13/2015 Reiher Rpt.) at ¶132.
28

Case No. 5:12-cv-05826 PSG                          Good's Mot. To Exclude Eichmann,
                                                    Sacerdoti, Gray and Reiher Opinions

*Universal Avionics Systems Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007) ("An invention is reduced to practice when the patentee has an embodiment that meets every limitation and operates for its intended purpose.").

The few conclusory paragraphs Dr. Reiher points to in his report[75] fail to mention all the limitations of the '016 patent claims, let alone establish that they were present in the "MobileIron version 2.0" product.[76] And Dr. Reiher admitted in his deposition that ███████████████████ ████████████████████████████████████████████████████████████."[77] He admitted that he failed to address several claim limitations, including limitations regarding mobile device profiles,[78] filtering,[79] application management interfaces,[80] user directory stores,[81] application identification[82] and user profiles.[83]

Dr. Reiher's opinion that "the inventors of the '016 patent had reduced the invention to practice" is not founded on any reliable comparison of the '016 patent claim limitations to the MobileIron version 2.0 product. Accordingly, Dr. Reiher's opinions that MobileIron version 2.0 practices the '016 patent and that the Lange reference or any other reference[84] is not prior art should be excluded as unfounded and unreliable.

---

[75] Dkt. 261-6 (2/13/2015 Reiher Rpt.) at ¶132 ███████████████████████████████████████ ███████████████████████████████████████████████████████████████").

[76] Ex. W (2/13/2015 Reiher Rpt.) at ¶¶48-51.

[77] Ex. V (3/9/2015 Reiher Depo. Tr.) at 175:1-3.

[78] *Id.* at 175:14-21 ███████████████████████████████████████████████████████████████

[79] *Id.* at 175:22-176:5.

[80] *Id.* at 176:6-17.

[81] *Id.* at 176:18-22 ███████████████████████████████████████████

[82] *Id.* at 176:23-177:2 ("███████████████████████████████████████████ ███████).

[83] *Id.* at 177:3-7 ███████████████████████████████████████████████

[84] Dr. Reiher appears to contend only that Lange is not prior art in view of the alleged reduction to practice in MobileIron version 2.0. However, for the reasons explained herein, he should not be permitted to contend that any reference is excluded as prior art on the basis of his unsupported suggestion that the patent claims were reduced to practice in MobileIron version 2.0.

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

1    **VIII.   CONCLUSION**

2           For the foregoing reasons, Good respectfully requests that the Court exclude (1) the opinions

3    of Richard Eichmann regarding a reasonable royalty for alleged infringement of MobileIron's

4    counterclaim patent, (2) the opinions of Richard Eichmann regarding Good's lost profits to the

5    extent such opinions relate to any consideration of sales *MobileIron* may have lost, (3) the opinions

6    of Stephen Gray and Richard Eichmann concerning acceptability of alleged non-infringing

7    substitutes referred to as "Alternative Multi-User Functionality On iOS" and "Multiple-Command

8    Transmission," (4) the opinions of Earl Sacerdoti and Stephen Gray concerning purported prior art

9    PDA Defense, SMS, AMO, and Altiris systems and (5) the opinions of Peter Reiher that the Lange

10   reference is not prior art or concerning the reduction to practice of the '016 patent claims.

11

12   DATED: May 1, 2015                              MCKOOL SMITH HENNIGAN, P.C.

13

14                                                   By:   _/s/ Craig N. Tolliver_

15                                                   Attorney for Plaintiffs
                                                     Good Technology Corporation and
16                                                   Good Technology Software, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:12-cv-05826 PSG                                    Good's Mot. To Exclude Eichmann,
                                                              Sacerdoti, Gray and Reiher Opinions

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

## CERTIFICATE OF SERVICE

On May 1, 2015, the foregoing document was served via email upon counsel of record for MobileIron:

I. NEEL CHATTERJEE
nchatterjee@orrick.com
VICKIE L. FEEMAN
vfeeman@orrick.com
LILLIAN J. MAO
lmao@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025

By: _/s/ Craig N. Tolliver_
Craig N. Tolliver

McKool Smith Hennigan, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065

-26-

Case No. 5:12-cv-05826 PSG

Good's Mot. To Exclude Eichmann, Sacerdoti, Gray and Reiher Opinions