UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOD TECHNOLOGY CORPORATION and GOOD TECHNOLOGY SOFTWARE, INC.,<br><br>Plaintiffs,<br>v.<br>MOBILEIRON, INC.,<br>Defendant. | Case No. 5:12-cv-05826-PSG<br><br>**ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT ON LANHAM ACT AND UNFAIR COMPETITION CLAIMS**<br><br>**(Re: Docket No. 195)** |

Defendant MobileIron, Inc. moves for summary judgment of Plaintiffs Good Technology Corporation and Good Technology Software, Inc.'s Lanham Act and unfair competition claims. Because the court finds that triable issues of fact abound, but only as to Good's Lanham Act claim, the motion is GRANTED-IN-PART.

**I.**

Good develops and sells mobile data and device management technologies.[1] Good owns U.S. Patent Nos. 6,151,606, 7,702,322, 7,970,386 and 8,012,219.[2] The '606 patent teaches disabling access to data on a mobile device after the user has finished using the data.[3] The '219

---

[1] *See* Docket No. 32 at ¶ 2.

[2] *See id.* at ¶¶ 18-21.

[3] *See* Docket Nos. 32-1, 32-2.

1
Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT ON LANHAM ACT AND UNFAIR COMPETITION CLAIMS

patent teaches a server system that can be used to prevent access to data stored on a mobile device through encryption or deletion.[4] The '386 patent teaches a rules engine on a wireless device that can receive a set of rules from a server and execute the set of rules so as to monitor and take action on the wireless device based on policies.[5] The '322 patent teaches distribution of software updates for wireless devices that are governed by customer-defined software policies and communicated over the internet.[6] Good's products include Good for Enterprise, Good for Government, Good Dynamics, BoxTone and AppCentral.[7]

MobileIron is an enterprise mobility management ("EMM") solutions provider, which enables companies to secure, control and manage mobile devices, mobile apps and mobile content. MobileIron owns U.S. Patent No. 8,359,016, which teaches filtering a catalog of mobile device applications based on a set of policies applied to a user profile and a mobile device profile to select a set of applications to return to the user.[8]

MobileIron offers two EMM solutions: MobileIron Core and MobileIron Cloud. MobileIron Core is comprised of three primary components: the Core server, the Sentry server and the Mobile@Work client. The Core server enables IT administrators to define security policies and to take actions upon mobile devices, apps and content. Sentry is a gateway server that manages and secures network traffic between the mobile devices and corporate systems, such as email and document repository servers. The Mobile@Work client is installed on the mobile device, enforces the security policies received from the Core server and also sends device information back to the Core server.

---

[4] *See* Docket No. 32-5.

[5] *See* Docket No. 32-4.

[6] *See* Docket No. 32-3.

[7] AppCentral is a product that allows companies to distribute mobile applications to their users. *See* Docket No. 191-10.

[8] *See* Docket No. 41 at 10.

2
Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT ON LANHAM ACT AND UNFAIR COMPETITION CLAIMS

MobileIron Cloud is MobileIron's cloud-based EMM solution and also has three main software components. The MobileIron Cloud server is the central location from which security policies and actions are defined and implemented. MobileIron Cloud also includes a Sentry gateway server that manages network traffic between the mobile devices and corporate systems. MobileIron Go, the client software, is installed on the mobile device, enforces security policies received from the MobileIron Cloud server and also sends device information back to the MobileIron Cloud server. MobileIron also offers other various products and features such as Docs@Work, Apps@Work, AppConnect and Email+.[9]

Good alleges MobileIron disseminated marketing materials disparaging the quality of Good's products and misrepresenting the nature of Good's products to customers over which the two parties competed.[10] According to Good, MobileIron's marketing materials intentionally presented false and misleading information to create confusion and influence the buying decisions of the purchasing public.[11]

In late 2012, Good sued MobileIron alleging infringement of the '606, '322, '386 and '219 patents. Good also alleges violations of the Lanham Act and California Business and Professions Code Section 17200 based on various MobileIron statements in 2011 and 2012.[12] Good's claims rest on an unofficial document captioned "What's Bad with Good."[13] MobileIron counterclaimed, alleging that Good's AppCentral product infringes MobileIron's '016 patent. MobileIron now moves for summary judgment on Good's Lanham Act and unfair competition claims.

---

[9] *See* Docket No. 219-5 at 3.

[10] *See* Docket No. 32 at ¶¶ 50-61.

[11] *See id.*

[12] *See* Docket No. 199-5 at 1; Docket No. 199-6 at Exh. A, 6-7.

[13] *See id.*

## II.

This court has subject matter jurisdiction pursuant to 15 U.S.C. § 1125 and 28 U.S.C. §1367.  The parties further consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. §636(c) and Fed. R. Civ. P. 72(a).

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.[14]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[15]  All evidence must be viewed in the light most favorable to the non-moving party.  At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[16]  Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[17]  If this burden is met, the burden shifts to the non-moving party.[18]

## III.

MobileIron primarily seeks summary judgment on the basis that Good cannot show any expense, lost goodwill, lost sale, diverted opportunity or other harm from the MobileIron statements at issue.[19]  But "[a]n inability to show actual damages does not alone preclude a recovery under section 1117 [of the Lanham Act]."[20]  "[E]ven if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it

---

[14] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[15] *See id.*

[16] *House v. Bell*, 547 U.S.518, 559-60 (2006).

[17] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[18] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 630, 630 (9th Cir. 1987).

[19] Docket No. 199-5 at 3.

[20] *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993).

sought an injunction."[21] While Good may not be able to show that it has yet suffered harm,[22] a reasonable jury could find that Good is likely to be injured in the future. This is sufficient to proceed at trial.[23]

The parties present conflicting evidence whether MobileIron deliberately distributed false marketing materials, which gives rise to a presumption of injury.[24] The parties agree that a document was circulated—at least to some customers—that detailed problems with Good's products.[25] But they disagree whether MobileIron knew the information was false and intentionally distributed it to customers anyway. MobileIron points to the fact that the alleged misrepresentations were cabined to a document sent in certain private email communications to a handful of prospective customers, rather than through any widespread marketing announcement, press release or marketing program.[26] Good, on the other hand, points to MobileIron internal emails that suggest that MobileIron continued to disseminate information about Good despite internal concerns that the statements were false.[27] A jury is required to sort all this out.

---

[21] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997).

[22] Good states that is offered a 30(b)(6) witness and suggests that such a witness could have offered testimony about the harm suffered by Good. But Good was obligated to provide any such information about harm in its interrogatory responses. *See* Fed. R. Civ. P. 26(3)(1). Having failed to provide that information during discovery, Good may not now rely on it. And, in any event, the declaration submitted by Good's 30(b)(6) witness, Dr. Nicko Van Someren, does not allege that Good suffered any actual injury. *See* Docket No. 234-13.

[23] *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989) ("Because of the possibility that a competitor may suffer future injury . . . a competitor need not prove injury when suing to enjoin conduct that violates section 43(a) [of the Lanham Act]."); *see also Southland Sod Farms*, 108 F.3d at 1146 (9th Cir. 1997) ("[E]ven if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it sought an injunction."); *Healthport Corp. v. Tanita Corp. of Am.*, 563 F. Supp. 2d 1169, 1181 (D. Or. 2008) (denying summary judgment motion where the Lanham Act claim sought injunctive relief; no showing of actual injury was required).

[24] *See Southland Sod Farms*, 108 F.3d at 1146.

[25] *See* Docket No. 199-6 at Exh. B.

[26] *See id.*

[27] *See* Docket No. 234-14.

5
Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT ON LANHAM ACT AND UNFAIR COMPETITION CLAIMS

The parties also disagree about the breadth of statements implicated by the Lanham Act claim.  Here, MobileIron points to eight statements that reside within one document, while Good points to additional statements that were disseminated to prospective Good clients even after the filing of the complaint.[28]  Where the basis for the claim itself also is in dispute, it is inappropriate to grant summary judgment.

As to Good's unfair competition claims, the Ninth Circuit "has 'consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.'"[29]  One area in which the two causes of action differ, however, is as to the UCL's "injury-in-fact" requirement.[30]  Where the Lanham Act allows injury of a non-economic nature to suffice, the UCL confers standing only where an economic injury has been alleged.[31]  Because Good has not shown any evidence of economic harm, the UCL claims fail as a matter of law.

The motion is GRANTED-IN-PART.

**SO ORDERED.**

Dated: June 5, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[28] *See* Docket No. 199-5 at 1; Docket No. 234-5 at 1-2.

[29] *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180 n.1 (9th Cir. 2013) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)); *see also Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003) (granting summary judgment on section 17200 false advertising claims that were dependent on Lanham Act claims); *Ha v. Bank of Am., N.A.*, Case No. 14-cv-00120, 2014 WL 6904537, at *3 (N.D. Cal. Dec. 8, 2014) (finding section 17200 claim doomed because predicate fraud claim had already failed).

[30] *See Two Jinn, Inc. v. Government Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1331, 1336 (2015) (affirming summary judgment for defendant because competitor lacked standing); William L. Stern, *Business & Professions Code Section 17200 Practice*, Bus. & Prof. C. 17200 Ch. 7-C (Mar. 2015) ("the [Lanham Act] requirement permits injury of a non-economic nature to suffice, whereas the UCL standing requirement is more restrictive because it allows *only* economic injury.") (emphasis in original) (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825, n.1 (9th Cir. 2011)).

[31] *See id.*