1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOD TECHNOLOGY CORPORATION and GOOD TECHNOLOGY SOFTWARE, INC., ) ) ) | Case No. 5:12-cv-05826-PSG |
| Plaintiffs, ) ) | **ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT** |
| v. ) ) MOBILEIRON, INC., ) ) | |
| Defendant. ) ) | **(Re: Docket No. 191)** |

Even a quick scan of any app store confirms that while a certain number of apps listed are relevant and of interest, most aren't.  The claims of Defendant MobileIron, Inc.'s United States Patent No. 8,359,016 aim to change that, by filtering the app options made available according to who the user is and what device she uses.  Think of a vegetarian whose restaurant menu doesn't bother to list the various options for steak and you get the basic idea.

Plaintiffs Good Technology Corporation and Good Technology Software, Inc. move for summary judgment that the '016 patent is invalid and not infringed by Good's products.  The court agrees with Good that certain Good accused products are no longer at issue in the case.  But other material issues of fact persist as to Good's infringement and invalidity claims.  The motion is therefore GRANTED, but only IN PART.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT

United States District Court
For the Northern District of California

**I.**

Patent infringement and patent invalidity (anticipation or obviousness) both require a two-step process.  Taking the patent's claims as construed by the court, a trier must find each claim limitation in the object of interest—an accused product, on the one hand, and the prior art, on the other.  Miss even one limitation and you miss the mark.

Good develops and sells mobile data and device management technologies.[1]  Good owns U.S. Patent Nos. 6,151,606, 7,702,322, 7,970,386 and 8,012,219.[2]  The '606 patent teaches disabling access to data on a mobile device after the user has finished using the data.[3]  The '219 patent teaches a server system that can be used to prevent access to data stored on a mobile device through encryption or deletion.[4]  The '386 patent teaches a rules engine on a wireless device that can receive a set of rules from a server and execute the set of rules so as to monitor and take action on the wireless device based on policies.[5]  The '322 patent teaches distribution of software updates for wireless devices that are governed by customer-defined software policies and communicated over the internet.[6]  Good's products include Good for Enterprise, Good for Government, Good Dynamics, BoxTone and AppCentral.[7]

MobileIron is an enterprise mobility management solutions provider, which enables companies to secure, control and manage mobile devices, mobile apps and mobile content. MobileIron owns United States Patent No. 8,359,016, which teaches filtering a catalog of mobile device applications based on a set of policies applied to a user profile and a mobile device profile

---

[1] *See* Docket No. 32 at ¶ 2.

[2] *See id.* at ¶¶ 18-21.

[3] *See* Docket Nos. 32-1, 32-2.

[4] *See* Docket No. 32-5.

[5] *See* Docket No. 32-4.

[6] *See* Docket No. 32-3.

[7] AppCentral is a product that allows companies to distribute mobile applications to their users. *See* Docket No. 191-10.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

to select a set of applications to return to the user.[8]  Mobile devices are registered with the system and a mobile device profile is created that uniquely corresponds to that registered device.  A mobile device profile can include log data and detailed information about the mobile device's file system, thereby enabling the enterprise to closely monitor devices for security purposes.  The mobile device profile also enables an IT administrator to make applications available only to certain devices; for example, applications can be restricted to enterprise-owned devices so that they are not used on employee-owned devices.  Similarly, the mobile device management system may maintain user profiles that contain personal or organizational information about the user, which IT administrators can use to make applications available only to certain users, such as all members of a particular sales team.[9]

Claims 1, 8 and 15 of the '016 patent teach:

1. A method, comprising:
responsive to a request for a set of applications available for installation on a mobile
    device, accessing a user profile and a mobile device profile against an identifier
    associated with a user;
filtering a catalog of applications based on a set of policies applied to the user
    profile and mobile device profile to select a set of applications; and
returning the set of applications in response to the request;
wherein the returned set of applications is provided to a mobile device application
    management interface configured to display the set of applications to the user via
    the application management interface and to provide the ability for the user to
    select, via the application management interface, one or more of the displayed
    applications for installation on the mobile device.

. . .

8. An apparatus, comprising:
a memory;
a network interface;
one or more processors; and
computer program code stored on a non-transitory storage medium comprising
    instructions operative to cause the one or more processors to:
responsive to a request for a set of applications available for installation on a mobile
    device, access a user profile and a mobile device profile against an identifier
    associated with a user;
filter a catalog of applications based on a set of policies applied to the user profile
    and mobile device profile to select a set of applications; and
return the set of applications in response to the request

---

[8] *See* Docket No. 41 at 10.

[9] *See generally* Docket No. 41-1 at col. 8-11.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT AND INVALIDITY OF '016 PATENT

wherein the returned set of applications is provided to a mobile device application management interface configured to display the set of applications to the user via the application management interface and to provide the ability for the user to select, via the application management interface, one or more of the displayed applications for installation on the mobile device.

. . .

15. A non-transitory storage medium comprising computer program code including computer-readable instructions operative, when executed, to cause one or more processors to:

responsive to a request for a set of applications available for installation on a mobile device, access a user profile and a mobile device profile against an identifier associated with a user;

filter a catalog of applications based on a set of policies applied to the user profile and mobile device profile to select a set of applications; and

return the set of applications in response to the request

wherein the returned set of applications is provided to a mobile device application management interface configured to display the set of applications to the user via the application management interface and to provide the ability for the user to select, via the application management interface, one or more of the displayed applications for installation on the mobile device.[10]

MobileIron offers two EMM solutions: MobileIron Core and MobileIron Cloud. MobileIron Core is comprised of three primary components: the Core server, the Sentry server and the Mobile@Work client. The Core server enables IT administrators to define security policies and to take actions upon mobile devices, apps and content. Sentry is a gateway server that manages and secures network traffic between the mobile devices and corporate systems, such as email and document repository servers. The Mobile@Work client is installed on the mobile device, enforces the security policies received from the Core server and also sends device information back to the Core server.

MobileIron Cloud is MobileIron's cloud-based EMM solution and also has three main software components. The MobileIron Cloud server is the central location from which security policies and actions are defined and implemented. MobileIron Cloud also includes a Sentry gateway server that manages network traffic between the mobile devices and corporate systems. MobileIron Go, the client software, is installed on the mobile device, enforces security policies received from the MobileIron Cloud server and also sends device information back to the

---

[10] Docket No. 191-11.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT

1    MobileIron Cloud server.  MobileIron also offers other various products and features such as

2    Docs@Work, Apps@Work, AppConnect and Email+.[11]

3         In late 2012, Good sued MobileIron alleging both infringement of the '606, '322, '386 and

4    '219 patents and violations of the Lanham Act and California Business and Professions Code

5    Section 17200.[12]  MobileIron counterclaimed, alleging that Good's AppCentral product infringes

6    MobileIron's '016 patent.

7         In May 2013, MobileIron served infringement contentions accusing five Good products:

8    Good for Enterprise, Good for Government, Good Dynamics, BoxTone and AppCentral.[13]  Two

9    years later, MobileIron's expert report on infringement of the '016 patent asserted only

10   infringement of AppCentral.[14]

**II.**

12        This court has subject matter jurisdiction pursuant to 15 U.S.C. § 1125 and

13   28 U.S.C. §1367.  The parties further consented to the jurisdiction of the undersigned magistrate

14   judge pursuant to 28 U.S.C. §636(c) and Fed. R. Civ. P. 72(a).

15        Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no

16   genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

17   law."  Material facts are those that may affect the outcome of the case.[15]  A dispute as to a material

18   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

19   non-moving party.[16]  All evidence must be viewed in the light most favorable to the non-moving

20

21   [11] *See* Docket No. 219-5 at 3.

22   [12] Yesterday, the court held that the '606 patent is invalid for lack of written description and not
     infringed by the accused products.  *See* Docket No. 424.

23   [13] *See* Docket Nos. 191-3, 191-4, 191-5, 191-6, 191-7.

24   [14] *See* Docket No. 191-8 at i-ii.

25   [15] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that
26   may affect the outcome of the suit under governing law will properly preclude the entry of
     summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

27   [16] *See id.*

28

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT AND INVALIDITY OF '016 PATENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

party.  At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[17]  Initially, the moving party bears the burden to show that no genuine issue of material fact exists.[18]  If this burden is met, the burden shifts to the non-moving party.[19]

### III.

This court has repeatedly explained that infringement contentions under Pat. L.R. 3-1 are distinct from evidence.[20]  And so a patentee that does not support its infringement contentions against certain products with actual evidence has no basis to argue that a reasonable jury could find that products in fact infringe.  In contrast, a patentee that moves beyond its contentions and tenders evidence sufficient to create a genuine issue of infringement (and does the same for validity) is entitled to have a jury weigh that evidence.  The record surrounding the '016 patent presents both circumstances.

*First*, summary judgment of non-infringement of the '016 patent is appropriate as to Good for Enterprise, Good for Government, Good Dynamics and BoxTone.  While MobileIron served infringement contentions as to these products, it never produced expert opinion or other evidence on whether these products infringed.  MobileIron's expert report speaks only about AppCentral's infringement.[21]

---

[17] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[18] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[19] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[20] *See, e.g., Genentech, Inc. v. Trustees of Univ. of Pa.*, Case No. 10-cv-02037, 2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012) ("Infringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case.") (citation omitted); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-cv-01846, 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012) ("Perfectly conceived and executed, expert trial testimony in a patent case should be no different than in other cases: the testimony is supported by a report which in turn reliably applies the theories disclosed in the contentions to evidence disclosed during fact discovery.").

[21] *See* Docket No. 191-9 at 30:9-17, 30:18-31:4.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT

1    MobileIron nevertheless relies on the fact that AppCentral is bundled in product packages

2    with many of these other products.[22]   MobileIron argues that because AppCentral is sold in

3    conjunction with these other products, they must remain in the case, at least for damages

4    purposes.[23]   And for the most part, the court agrees.   Because AppCentral is sold in product

5    bundles with these products, sales of these products may be used for damages purposes if otherwise

6    permitted.   But MobileIron's failure of proof that Good for Enterprise, Good for Government,

7    Good Dynamics and BoxTone practice each limitation of each asserted claim warrants summary

8    judgment that these products do not infringe.

9        *Second*, there are genuine issues of fact as to AppCentral's infringement of the '016 patent.

10   The court construed the key term "mobile device application management interface" to mean "a

11   user interface that allows a user to manage the applications for a mobile device, which includes an

12   interface to an enterprise application store."[24]   Good claims that AppCentral does not manage

13   applications on a device, as required, and points to examples in which the "Downloaded Apps"

14   screen does not accurately list the applications that have been installed on the device.[25]   In these

15   examples, the list merely reflects those applications a user clicked in the recent past.[26]   But a

16   reasonable jury could just as easily rely on evidence from MobileIron that, when the product works

17   as designed, other functionality in the AppCentral interface allows users to select applications for

18   installation on their device—something the parties' experts both agreed practiced the limitation.[27]

19   These issues about how the product works are classic jury fodder.

20

21   [22] *See* Docket No. 226-4 at 11.

22   [23] *See id.*

23   [24] Docket No. 135 at 2.

24   [25] *See* Docket No. 192-4 at 11-12.

25   [26] *See id.*

26   [27] *See* Docket No. 226-10 at 123:6-11; Docket No. 226-6 at ¶¶ 107-108.   During claim
     construction, Good argued that "mobile device application management interface" means "a
27   graphical user interface that allows a user to manage the applications on the mobile device through
     a tab or selectable window that displays a list of the applications currently installed on the mobile
28   device."   The court, however, did not adopt this construction and instead adopted MobileIron's

7

**United States District Court**
For the Northern District of California

**Third**, there are genuine issues of fact as to whether claims 1, 8 and 15 are anticipated by the "Mehta" reference (United States Patent Application Publication No. 2002/0131404). Mehta describes a system for selling applications to subscribers of a telephone carrier.[28] Mehta's disclosure centers on managing mobile device subscription plans for telephone carriers and billing subscribers for applications added onto the carriers' plans.[29] The availability of applications is dictated by the telephone customer's choice of what carrier subscriptions to pay for.[30] "[T]he list provided to the subscriber device during application discovery is filtered to display only content that has been verified" based on the use of both "subscriber profiles" and "device profiles."[31] Good argues that these steps closely mirror claims 1, 8 and 15 of the '016 patent, as explained by the testimony of its expert Robert Akl.[32]

At a minimum, a reasonable jury could find that Mehta does not disclose the required "mobile device profile, "which means "information that is specific to a particular device." While Mehta undeniably uses the term "device profile," MobileIron presents substantial evidence that Mehta's system stores only a modest number of profiles for device models supported by the system.[33] A reasonable jury could find that this information in these profiles is not "specific" to any device but rather corresponds to all devices of a particular model. While Good has its own

---

proposed construction that does not require a list of already-installed applications. *See* Docket No. 135.

[28] Docket No. 191-12 at ¶¶ 4, 61, 69.

[29] Docket No. 226-6 at ¶ 43; Docket No. 192-6 at ¶ 233; *see, e.g.*, Docket No. 191-12 at ¶¶ 61, 69, 76-77.

[30] Docket No. 226-6 at ¶ 43; Docket No. 192-6 at ¶ 234; Docket No. 191-12 at ¶¶ 59, 64, 115 ("The MAS also supports flexible billing scenarios, including subscription billing, which allows customers to subscribe to a particular service to receive only those resources or applications they desire.") ("The authorization level will typically depend on the level of service to which the client has subscribed.") ("A subscriber uses the Personalization Website 803 to subscribe to additional categories of content by changing service plans (which may possibly cause a change in the amount billed to the user).").

[31] *Id.* at ¶¶ 7, 15.

[32] *See* Docket No. 191-11; Docket No. 191-13 at ¶¶ 412-60.

[33] *See* Docket No. 226-6 at ¶¶ 54-57.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    evidence that this information is specific, a jury is required to decide which evidence is more

2    persuasive.[34]

3           *Fourth*, there are genuine issues of fact as to whether claims 1, 8 and 15 are anticipated by

4    the "Clare" reference (United States Patent No. 7,409,208).  Clare relates to a "software download

5    service on a mobile network."[35]  "[T]he information regarding the available software applications

6    is filtered in accord with the stored user's preference, to form a personalized software catalog."[36]

7    Clare's application catalog is filtered to "include[] all available programs that are compatible with

8    the particular model of mobile station."[37]  Again, Good rests on Akl's expert report to substantiate

9    its claim that the reference anticipates.[38]

10          A reasonable jury could find that Clare uses a different filtering architecture than that

11   required by the claims.  The claims recite filtering based on a "set of policies." The IT

12   administrator specifies "policies" that are general across multiple users, and the system then

13   "applie[s]" the policies to a user profile in order to select a user-specific set of applications.

14   MobileIron presents substantial evidence that Clare filters based on a user-preference-driven

15   mobile device profile, whereas the '016 patent filters based on an enterprise-centric set of policies

16   applied to the user profile and the mobile device profile.[39]  Because there is a fundamental question

17   of fact as to how each product filters, summary judgment is not warranted.[40]

18          *Fifth*, there are genuine issues of fact as to whether each asserted claim of the '016 patent is

19   invalid as obvious.  Although Good argues that any claim elements Mehta lacks would be supplied

20   ――――――――――――――――――――

21   [34] Because the court has found issues of material fact as to the independent claims, the court also
     finds that issues of material fact necessarily persist as to dependent claims 3, 4, 6, 9, 16 and 18.

22   [35] *See* Docket No. 191-14.

23   [36] *See id.* at 3:39-42.

24   [37] *See id.* at 13:42-60.

25   [38] *See* Docket No. 191-11; Docket No. 191-13 at ¶¶ 261-98.

26   [39] *See* Docket No. 226-4 at 18-20.

27   [40] Because the court has found issues of material fact as to the independent claims, the court also
     finds that issues of material fact necessarily persist as to dependent claims 3, 4, 6, 9, 16 and 18.

28
Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-
INFRINGEMENT AND INVALIDITY OF '016 PATENT

1    by a combination with either Clare or Early GFE, MobileIron has presented evidence why it would

2    not have been obvious to introduce the missing elements.  For example, Dr. Reiher explains that it

3    would have been illogical to modify Mehta's system to use the missing "mobile device profile,"

4    since that would involve storing much more data, and thus require more system resources, than

5    Mehta's approach.[41]  As another example, Reiher explains that including "required applications" to

6    paying consumers, such as in Mehta's subscription-based system, would be undesirable and

7    nonsensical.[42]

8         MobileIron similarly offers substantial evidence that deficiencies in Clare could not be

9    remedied by combination with either Mehta or Early GFE.[43]  For example, Reiher explains that it

10   would not have been obvious to use policy-based filtering instead of Clare's filtering architecture,

11   because it would have been contrary to Clare's goal of tailoring catalogs to each customer's

12   preferences.[44]  There is also substantial evidence that there was no motivation to use consumer

13   application stores like either Mehta's or Clare's in an enterprise context, because they did not offer

14   the level of control that enterprises valued.[45]

15        In addition, MobileIron has introduced evidence of objective indicia, or secondary

16   considerations, of non-obviousness.  The Federal Circuit has long held that such evidence must be

17   considered before an obviousness determination is made.[46]  MobileIron presents evidence of the

18   success of MobileIron's own product, which it claims practices the '016 patent; praise of the

---

[41] Docket No. 226-6 at ¶ 88.

[42] *Id.* at ¶ 36.

[43] *See, e.g.*, *id.* at ¶¶ 36, 87-89; Docket No. 192-6 at ¶¶ 171, 184.

[44] *Id.* at ¶ 171.

[45] *See* Docket No. 226-6 at ¶¶ 19, 87.

[46] *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) ("[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness."); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983) ("[Objective indicia] may be the most pertinent, probative, and revealing evidence available to aid in reaching a conclusion on the obvious/nonobvious issue.  It should when present always be considered as an integral part of the analysis.").

10

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT

patented features in MobileIron's enterprise application store; and industry recognition of the advantages of enterprise applications stores.[47]  For example, multiple MobileIron customers have cited the enterprise application store as a key benefit of MobileIron's products.  Among them, customers have praised, for example, the patented filtering approach.[48]  Good's witnesses have also recognized the importance of the patented features.[49]  This is more than enough to create a genuine issue of material fact.

IV.

The motion is GRANTED-IN-PART.

**SO ORDERED.**

Dated: July 1, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[47] *See* Docket No. 226-6 at ¶¶ 90-104.

[48] Docket No. 227-12; Docket No. 226-6 at ¶ 99.

[49] *See* Docket No. 226-8 at 26:8-29:3; *see* Docket No. 226-6 at ¶ 102; Docket No. 226-7 at 158:15-159:2.

Case Nos. 5:12-cv-05826-PSG
ORDER GRANTING-IN-PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF '016 PATENT