1    [counsel listed on signature page]

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   GOOD TECHNOLOGY CORPORATION          Case No. CV-12-05826 PSG
     AND GOOD TECHNOLOGY SOFTWARE,
13   INC.,                               **GOOD'S SUPPLEMENT TO JOINT
                                         SUBMISSION RE: AMENDED
14              Plaintiffs,              PROPOSED JURY INSTRUCTIONS**

15        v.

16   MOBILEIRON, INC.,

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

1    In light of MobileIron's untimely, unilateral submission of "MobileIron's Supplemental

2    Proposed Jury Instructions" (Dkt. 514) over Good's objections and despite MobileIron's prior

3    representations that the Court's standing order requires a joint submission, Good submits this

4    supplement to the joint amended proposed jury instructions (Dkt. 461) in advance of the

5    upcoming charge conference set for July 27, 2015 at 4:45 p.m.[1, 2]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    [1] Good Technology propose instructions to the extent they would equally apply to both sides, and does not waive any objection by submitting its respective proposal. Good Technology reserves the right to modify or supplement this document and any and all other jury documents drafted and exchanged in this matter, including voir dire, preliminary jury instructions, final jury instructions, verdict forms, and other materials, based on, for example, any pretrial or other rulings by the Court, to address any additional issues, arguments, evidence or developments in the case, submission of, edits or changes to any of the other side's jury documents, as a result of any meet and confers or other negotiations between the parties, pending and anticipated motions and rulings, and similar developments.

21

22

23

24    [2] Good submits these proposed jury instructions in accordance with the Court's direction to submit proposed jury instructions only on matters as to which summary judgment has not been granted, and in accordance with the Court's indication that it would provide preliminary jury instructions similar to the preliminary instructions provided in *Emblaze v. Apple*, Case No. 5:11-cv-01079-PSG, Dkt. No. 563 (Preliminary Jury Instructions) (N.D. Cal. June 27, 2014). To the extent appropriate or necessary to preserve issues for appeal or other further proceedings, Good maintains and does not withdraw its prior proposals and objections regarding jury instructions, including without limitation its proposals and objections regarding indirect infringement, willful infringement and lost profits (*see* Dkt. No. 398 (6/26/2015 Joint Proposed Jury Instructions)). Further, Good maintains its objection that each proposed instruction submitted by MobileIron that the parties do not agree upon is untimely. *See, e.g., id.* at 6 n. 2.

25

26

27

28

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20  21  22  23  24  25  26  27  28

## 1.  BURDEN OF PROOF- PREPONDERANCE OF THE EVIDENCE [JOINTLY PROPOSED]

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authorities

    *See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); Ninth Circuit Manual of Model Jury Instructions – Civil (2007), No. 1.3.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

## 2. BURDEN OF PROOF- CLEAR AND CONVINCING EVIDENCE [JOINTLY PROPOSED]

When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

*See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

3

Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); Ninth Circuit Manual of Model Jury

4

Instructions – Civil (2007), No. 1.4; *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining

5

clear and convincing evidence); *see also Murphy v. I.N.S.*, 54 F.3d 605, 610 (9th Cir.1995) (the

6

burden of proving a matter by clear and convincing evidence is "a heavier burden than the

7

preponderance of the evidence standard").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

### 3. EXPERT OPINION [JOINTLY PROPOSED]

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reason given for the opinion, and all the other evidence in the case.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

*See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

3

Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); Ninth Circuit Manual of Model Jury

4

Instructions – Civil (2007), No. 2.11; Fed. R. Evid. 602, 701–05.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 7 -

Good's Supp to Amended
Joint Proposed Jury Instructions
CV12-05826 PSG

**4.  DEPOSITION IN LIEU OF LIVE TESTIMONY [JOINTLY PROPOSED]**

As I have previously explained, a deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, or because the parties have agreed not to call an individual live, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court by videotape or read to you from a deposition transcript in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2        *See* Ninth Circuit Manual of Model Jury Instructions – Civil (2007), No. 2.4 [Comment:

3   This instruction should be used only when testimony by deposition is used in lieu of live

4   testimony. The committee recommends that it be given immediately before a deposition is to be

5   read. It need not be repeated if more than one deposition is read. If the judge prefers to include the

6   instruction as a part of his or her instructions before evidence, it should be modified

7   appropriately.]; *Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523

8   (Final Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**5.  DEMONSTRATIVE EVIDENCE [JOINTLY PROPOSED]**

During the trial, materials have been shown to you to help explain testimony or other evidence in the case. Other materials have also been shown to you during the trial, but they have not been admitted into evidence. You will not be able to review them during your deliberations because they are not themselves evidence or proof of any facts. You may, however, consider the testimony given in connection with those materials.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

*See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

3

Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); *see also* Ninth Circuit Manual of Model

4

Jury Instructions – Civil (2007), No. 2.12; Fed. R. Evid.1006; Fed. R. Evid.611(a)(1); Fed. R.

5

Evid. 403.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 11 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

## 6.  DELIBERATE FALSE ADVERTISING—ELEMENTS OF CLAIM

### Good's Proposal

Good Technology contends that MobileIron engaged in deliberate false advertising in violation of the Lanham Act. To succeed on this claim, Good Technology must prove three things by a preponderance of the evidence:

1.     MobileIron made a deliberately false or misleading description or representation of fact in an advertisement or promotion about the nature, characteristics, qualities, or geographic origin of Good Technology's goods, services, or commercial activities or about MobileIron's goods, services, or commercial activities.  A description or representation is false if it is literally untrue.  A description or representation is misleading if it is literally true but likely to mislead or confuse consumers.

2.     MobileIron's description or representation constitutes an advertisement or promotion if it is: (1) commercial speech; (2) by MobileIron and MobileIron is in commercial competition with Good Technology; (3) for the purpose of influencing consumers to buy MobileIron's goods or services; and (4) sufficiently disseminated to the relevant purchasing public to constitute "advertising" or "promotion" within the Enterprise Mobile Management industry.

3.     MobileIron caused its description or representation to enter interstate commerce.

If you find that MobileIron has engaged in deliberate false advertising, Good Technology is entitled to a monetary award unless MobileIron has proved by a preponderance of the evidence all of the following: (1) that the deliberate false advertising did not actually deceive or have the tendency to deceive a substantial segment of its audience; (2) that it was not likely to influence the purchasing decisions of MobileIron's or Good Technology's consumers; and (3) that Good Technology has not been or is not likely to be injured as the result of the deliberately false or misleading description or representation.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

Authorities

**Good's Proposal**

*See U-Haul Int'l v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir.1986)); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir.1997).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ~~6.~~ **7.  FALSE ADVERTISING—ELEMENTS OF CLAIM**

#### Good's Proposal

Good Technology contends that MobileIron engaged in false advertising in violation of the Lanham Act. To succeed on this claim, Good Technology must prove six things by a preponderance of the evidence:

1.      MobileIron made a false or misleading description or representation of fact in an advertisement or promotion about the nature, characteristics, qualities, or geographic origin of Good Technology's goods, services, or commercial activities or about MobileIron's goods, services, or commercial activities.  A description or representation is false if it is literally untrue. A description or representation is misleading if it is literally true but likely to mislead or confuse consumers.

2.      MobileIron's description or representation constitutes an advertisement or promotion if it is: (1) commercial speech; (2) by MobileIron and MobileIron is in commercial competition with Good Technology; (3) for the purpose of influencing consumers to buy MobileIron's goods or services; and (4) sufficiently disseminated to the relevant purchasing public to constitute "advertising" or "promotion" within the Enterprise Mobile Management industry.

3.      The description or representation actually deceived or had the tendency to deceive a substantial segment of its audience.

4.      The deception was material, in that it was likely to influence the purchasing decisions of MobileIron's or Good Technology's consumers.

5.      MobileIron caused its description or representation to enter interstate commerce.

6.      Good Technology has been or is likely to be injured as the result of the false or misleading description or representation either by direct diversion of sales from itself to MobileIron, or by lessening of the goodwill which its products or business enjoy with its customers.

1    If you find that Good Technology has proved by a preponderance of the evidence that
2    MobileIron distributed a deliberately false or misleading description or representation of fact in
3    an advertisement or promotion about Good Technology's or MobileIron's goods, services, or
4    commercial activities, then you may presume that the description or representation caused actual
5    consumer deception and reliance (i.e., points 3, 4, and 6 above are met) for which Good
6    Technology is entitled to appropriate monetary relief, unless MobileIron has rebutted the
7    presumption.

8    **GOOD'S POSITION:**

9    Good objects that MobileIron's proposed instruction is confusing and deviates from and
10   modifies the model instruction language that is applicable to this case, includes inapplicable
11   language and misstates the law.  Among other things, MobileIron's proposed instruction deviates
12   from the plain language of the Lanham Act, including but not limited to § 1125(a), and fails to
13   follow controlling case law. For example, MobileIron's proposal uses the phrase "statement"
14   throughout whereas Good's proposal uses the phrase "description or representation[,]" which
15   tracks the language of § 1125(a). Similarly, MobileIron's proposal uses the phrase "advertisement
16   or promotion about Good Technology's products[,]" whereas Good's proposal uses the phrase
17   "advertisement or promotion about the nature, characteristics, qualities, or geographic origin of
18   Good Technology's goods, services, or commercial activities or about MobileIron's goods,
19   services, or commercial activities[,]" which tracks the language of § 1125(a). Furthermore,
20   MobileIron's proposal uses the phrase "[a] statement is misleading if it can be shown that the
21   statement has misled, confused or deceived the consuming public[,]" which is improper because it
22   requires proof of actual deception, which the Court in *Southland Sod Farms* stated is not always
23   required to establish a claim. Good's proposal uses the phrase "[a] description or representation is
24   misleading if it is literally true but likely to mislead or confuse consumers[,]" which is consistent
25   with the definition used by the Court in *Southland Sod Farms. Southland Sod Farms v. Stover*
26   *Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997).

27
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 15 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1     In addition, MobileIron's proposal adds an additional sentence to element five (5): "[a]

2     statement enters interstate commerce if it is made across state lines[,]" which is improper because

3     there is no controlling case law or pattern jury instruction that states as much and MobileIron

4     offers no legal support for including this sentence. Good further objects to the inclusion of this

5     additional sentence as confusing and unnecessary.

6     For element six (6), MobileIron's proposal does not include the phrase "has been" injured,

7     which improperly deviates from the language in *Rice* and *Southland Sod Farms*, and is further

8     objectionable for the reasons set forth in Good's objection to MobileIron's proposal for Lanham

9     Act Damages (Instruction #30) below.

10    MobileIron's proposal with respect to the presumption of deliberate falsity is improper,

11    inaccurate, and confusing. For example, it does not instruct the jury to presume injury (element

12    6). This is illogical and directly contradicted by controlling case law, including this Court's Order

13    denying MobileIron's motion for summary judgment on Good's Lanham Act claim. Dkt. No. 349

14    at 5:4-5. Good's proposal language is appropriate because it is based on § 1125(a) and *Southland*

15    *Sod Farms*. MobileIron fails to cite any statutory or case law in support of its proposed language

16    on this point. Moreover, MobileIron's proposal incorrectly instructs the jury to only apply the

17    presumption based upon a "deliberately false statement of fact" rather than a "deliberately false

18    *or misleading* description or representation of fact." This is inconsistent with the controlling case

19    law, including *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986), wherein

20    the court held that "[h]e who has attempted to deceive should not complain when required to bear

21    the burden of rebutting a presumption that he succeeded." The intent to deceive is what matters

22    for purposes of the presumption, as "falsity" may be demonstrated by proof that a statement was

23    "literally false" or "literally true but likely to mislead or confuse consumers." *Southland Sod*

24    *Farms*, 108 F.3d at 1139.

25    MobileIron's proposal improperly includes a final paragraph concerning proof of the

26    elements. More importantly, this instruction is inaccurate and confusing because it fails to

27    account for the presumption based on deliberate falsity.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 16 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   Further, MobileIron offers no justification for reconsidering the Court's prior ruling that

2   the Lanham Act claims would be presented to the jury, as noted in Good's July 9 responses (Dkt.

3   Nos. 453 & 454) to MobileIron's July 8 "Motions To Clarify."  Good's responses (Dkt. Nos. 453

4   & 454) are incorporated by reference as if fully set forth here.

5

6

7                                      **MobileIron's Proposal**

8   Good Technology contends that MobileIron engaged in false advertising. To succeed on

9   this claim, Good Technology must prove five things by a preponderance of the evidence:

10   1.   MobileIron made a false or misleading statement of fact in an advertisement or

11        promotion about Good Technology's products.

12        • A statement is false if it is literally untrue.

13        • A statement is misleading if it can be shown that the statement has misled,

14           confused or deceived the consuming public.

15        • MobileIron's representations constitute an advertisement or promotion if

16           they are: (1) commercial speech; (2) by MobileIron and MobileIron is in

17           commercial competition with Good Technology; (3) for the purpose of

18           influencing consumers to buy MobileIron's goods or services; and (4)

19           sufficiently disseminated to the relevant purchasing public to constitute

20           "advertising" or "promotion" within the Mobile Device Management

21           industry.

22   2.   The statement actually deceived or had the tendency to deceive a substantial

23        segment of its audience.

24   3.   The deception was material, in that it was likely to influence the purchasing

25        decisions of MobileIron's or Good Technology's consumers.

26   4.   MobileIron caused its statement to enter interstate commerce.  A statement enters

27        interstate commerce if it is made across state lines.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 17 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

5.     Good Technology is likely to be injured as the result of the false statement either by direct diversion of sales from itself to MobileIron, or by lessening of the goodwill which its products or business enjoy with its customers.

If you find that Good Technology has proved that MobileIron made a deliberately false statement of fact in an advertisement or promotion about Good Technology's products, then you may presume that points 2 and 3 above are met unless MobileIron has rebutted that presumption. MobileIron will have rebutted such a presumption if it has shown there is evidence that the statement did not cause actual deception or that the statement was not likely to influence the purchasing decisions of MobileIron's or Good Technology's consumers.

If you find that Good has proved all five elements listed above, then you must find for Good Technology.  If you find that Good Technology has not proved all five elements listed above, then you must find for MobileIron.

**MOBILEIRON'S POSITION**:  MobileIron objects to the order of the jury instruction and proposes that it be included after the jury instructions relating to the patent claims of each party.  MobileIron further objects to Good's proposal because it refers to dissemination "within the Enterprise Mobile Management industry."   Good's claims are based on statements made before the "Enterprise Mobility Management" industry existed. *See* Order Granting Motion For Summary Judgment On Lost Profit Damages (Dkt. No. 378) at 2.  MobileIron further objects to Good's proposal as inconsistent with the guidance of the NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS, which provides that the elements of a false advertising claim are set forth in *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).  MobileIron also objects to Good's proposal on deliberate falsity because it is not consistent with the language in *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir.1997), which Good cites as the source for its instruction.  *Southland Sod Farms* states that a presumption of actual consumer deception and reliance may apply if a defendant's claims were "deliberately false within the meaning of meaning of § 43(a)."   In contrast, Good's instruction claims that the presumption applies if MobileIron "deliberately distributed" a false statement.  This language is inaccurate and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 18 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

Case 5:12-cv-05826-PSG   Document 517   Filed 07/27/15   Page 20 of 114

1   confusing and could lead the jury to find liability for the deliberate distribution of statements that
2   MobileIron believed to be true.   MobileIron believes that Good Technology's Lanham Act claim
3   should be bifurcated and tried before the Court, as explained in its motions for clarification (Dkt
4   Nos. 442 and 443).   If this claim is not presented to the jury, the instructions relating to the
5   Lanham Act claim will not be necessary.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 19 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

Authorities

2

**Good's Proposal**

3

*See* Ninth Circuit Model Jury Instructions, 15.4, Comment Page, 304 (citing for elements

4

of a False Advertising claim *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir.2003)

5

("In order to prove a claim for false advertising under the Lanham Act, 15 U.S.C. §

6

1125(a)(1)(B), a claimant must establish: 1) in advertisements, defendant made false statements

7

of fact about its own or another's product; 2) those advertisements actually deceived or have the

8

tendency to deceive a substantial segment of their audience; 3) such deception is material, in that

9

it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods

10

to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the

11

foregoing either by direct diversion of sales from itself to defendant, or by lessening of the

12

goodwill which its products enjoy with the buying public."; Seventh Circuit Model Jury

13

Instructions, 13.3.1 False Advertising Under Lanham Act – Elements of Claim; 15 U.S.C. §

14

1125(a)(1)(B); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 735

15

(9th Cir.1999); Ninth Circuit Model Jury Instructions, 15.4, Comment Page, 304 (citing as an

16

example of a cause of action for false advertising under 15 U.S.C. § 1125 *U-Haul Int'l v. Jartran,*

17

*Inc.*, 793 F.2d 1034 (9th Cir.1986)); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

18

1146 (9th Cir.1997).

19

20

**MobileIron's Proposal**

21

Ninth Circuit Manual of Model Jury Instructions Civil (2007) at 304 ("Elements

22

required for a false advertising claim, cognizable under 15 U.S.C. § 1125(a)(1)(B), are set forth in

23

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003)."); *Rice v. Fox Broadcasting*

24

*Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) ("In order to prove a claim for false advertising under

25

the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a claimant must establish: (1) in advertisements,

26

defendant made false statements of fact about its own or another's <u>products</u>; (2) those

27

advertisements actually deceived or have the tendency to deceive a substantial segment of their

28

audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its falsely advertised good to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public."); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139-40 & fn. 3 (9th Cir. 1997) ("Prior to the 1988 amendments to § 43(a), Pub.L. No. 100-667 § 132, 102 Stat. 3935, 3946, the interstate commerce requirement was associated with the defendant's falsely advertised goods or services.  After the 1988 amendments, it is the statement itself, rather than the falsely advertised goods or services, that must be used in interstate commerce.").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 21 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

## ~~7.~~ **8.**  INTERPRETATION OF CLAIMS [JOINTLY PROPOSED]

2

3   Before you decide whether or not there has been infringement of any of Good

4   Technology's or MobileIron's patent claims and whether or not the patent claims are valid, you

5   will need to understand the patent claims.  As I mentioned, the patent claims are numbered

6   sentences at the end of each patent that describe the boundaries of the patent's protection. It is my

7   job as judge to explain to you the meaning of any language in the claims that needs interpretation.

8   The parties have agreed on the meaning of some of the language in the claims at issue.

9   The parties have agreed that:

10       1.    In MobileIron's '016 patent, the term "mobile device profile" means "information

11           that is specific to a particular mobile device."

12       2.    In MobileIron's '016 patent, the term "user profile" means "information that
        provides characteristics of a particular user (such as name, email address,

13           organizational information, etc.)."

14       3.    In MobileIron's '016 patent, the accessing, filtering, and returning steps are
        performed in the recited order.

15   In addition, I have interpreted the meaning of some of the language in the patent claims

16   involved in this case.  You must accept those interpretations as correct.  My interpretation of the

17   language should not be taken as an indication that I have a view regarding the issues of

18   infringement and invalidity.  The decisions regarding infringement and invalidity are yours to

19   make.

20   I have interpreted the following terms in the claims at issue as follows:

21       4.    In MobileIron's '016 patent, the term "to provide the ability for the user to select,
        via the application management interface, one or more of the displayed

22           applications for installation on the mobile device" means "to allow the user to
        select for installation one or more applications using the application management

23           interface."

24       5.    In MobileIron's '016 patent, the term "mobile device application management
        interface" means "a user interface that allows a user to manage the applications for

25           a mobile device, which includes an interface to an enterprise application store."

26       6.    In MobileIron's '016 patent, the term "identify[ing] required applications" means
        "identify[ing] which applications have been designated by an administrator as

27           'required' for a user or set of users."

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 22 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

7.  In Good Technology's '322 patent, the term "searching a compatibility matrix [to identify/for] rules associated with each update" means "for each update, searching rules that indicate whether an update is compatible with a particular wireless device."

8.  In Good Technology's '322 patent, the term "rules uniquely identifying the updates for the wireless device" means "rules used to identify updates available for a particular wireless device."

9.  In Good Technology's '322 patent, the term "message indicating one or more files within the updates to [download/upload]" means "message indicating at least one file within the updates to [download/upload]."

10. In Good Technology's '386 patent, the term "rule" means "condition and an action to be taken if that condition is met."

11. In Good Technology's '386 patent, the the term "rules engine" means "component on the wireless device that, without further communication with a server, evaluates the condition(s) specified in one or more rules received from the server and takes any action indicated by the rule."

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 23 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1        Authorities

2              *See Emblaze v. Apple*, Case No. 5:11-cv-01079-PSG, Dkt. 603 (Rev. Final Jury

3    Instructions) (N.D. Cal. July 10, 2014) (Grewal, J.); Model Patent Jury Instructions for the

4    Northern District of California (June 17, 2014), No. 2.1; Model Patent Jury Instructions for the

5    Northern District of California (June 17, 2014), Section A.3 at 4-5.*Markman v. Westview

6    Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324

7    (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir.

8    1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*)*; Markman v.

9    Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*); *Golden Bridge

10   Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final Jury Instructions) (N.D. Cal.

11   June 11, 2014) (Grewal, J.)

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 24 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   **8. 9.  HOW A CLAIM DEFINES WHAT IT COVERS [JOINTLY PROPOSED]**

2   I will now explain how a claim defines what it covers.

3   A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements

4   in a single sentence. If a device, system, or method satisfies each of these requirements, then it is

5   covered by the claim.

6   There can be several claims in a patent. Each claim may be narrower or broader than

7   another claim by setting forth more or fewer requirements. The coverage of a patent is assessed

8   claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim

9   elements" or "claim limitations." When a thing (such as a product or method) meets all of the

10  requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall"

11  within the scope of that claim. In other words, a claim covers a product or method where each of

12  the claim elements or limitations is present in that product or method.

13  As I just instructed you, there are certain specific terms that I have defined or that the

14  parties have agreed upon and you are to apply the definitions that I provide to you. By

15  understanding the meaning of the words in a claim and by understanding that the words in a claim

16  set forth the requirements that a product or method must meet in order to be covered by that

17  claim, you will be able to understand the scope of coverage for each claim. Once you understand

18  what each claim covers, then you are prepared to decide the issues that you will be asked to

19  decide, such as infringement and invalidity.

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 25 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

*See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

3

Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); Federal Circuit Bar Association, Model

4

Patent Jury Instructions (February 2012), Section B.2, Instruction 2.2; authorities cited therein;

5

*Cook Biotech Inc. v. ACell, Inc.*, 460 F.3d 1365, 1373-78 (Fed. Cir.2006); *Invitrogen Corp. v.*

6

*Biocrest Mfg.*, L.P., 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a

7

method claim . . . is open-ended and allows for additional steps.").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 26 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**9.  10.  INFRINGEMENT- BURDEN OF PROOF [JOINTLY PROPOSED]**

I will now instruct you on the rules you must follow in deciding whether infringement of one or more of the asserted claims of the patents in this case has been shown.  To prove infringement of any claim of any of the patents in this case, the patent holder must persuade you that it is more likely than not that the alleged infringer has infringed that claim.

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 27 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1      <u>Authorities</u>

2           Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

3      Section B.3, Instruction 3.1.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 28 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    **10. 11.  DIRECT INFRINGEMENT [DISPUTED]**

2

3                              **Good's Proposal**

4    A patent's claims define what is covered by the patent.  A product or method directly

5    infringes a patent if it is covered by at least one claim of the patent.

6    Deciding whether a claim has been directly infringed is a two-step process.  The first step

7    is to decide the meaning of the patent claim.  I have already made this decision, and I have

8    already instructed you as to the meaning of the asserted patent claims.  The second step is to

9    decide whether the alleged infringer has made, used, sold, or offered for sale or imported within

10   the United States a product or used within the United States a method covered by any claim of

11   any of the patents in this case.  If it has, it infringes.  You, the jury, make this decision.

12   With one exception, you must consider each of the asserted claims of the patent

13   individually, and decide whether the alleged infringer's product or method infringes that claim.

14   The one exception to considering claims individually concerns dependent claims.  A dependent

15   claim includes all of the requirements of a particular independent claim, plus additional

16   requirements of its own.  As a result, if you find that an independent claim is not infringed, you

17   must also find that its dependent claims are not infringed.  On the other hand, if you find that an

18   independent claim has been infringed, you must still separately decide whether the additional

19   requirements of its dependent claims have also been infringed.

20   You may have heard evidence about both the patent holder's commercial product or

21   method and the alleged infringer's accused product or method.  However, in deciding the issue of

22   infringement you may not compare the alleged infringer's accused product or method to the

23   patent holder's commercial product or method.  Rather, you must compare the alleged infringer's

24   accused product or method to the claims of the asserted patent when making your decision

25   regarding infringement.

26   Whether or not the alleged infringer knew its product or method infringed or even knew of

27   the patent does not matter in determining direct infringement.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 29 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1  There are two ways in which a patent claim may be directly infringed. A claim may be

2  "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following

3  instructions will provide more detail on these two types of direct infringement.

4

5  **GOOD'S POSITION**:

6  Good objects that MobileIron's proposed instruction deviates from and deletes from the

7  model instruction language. MobileIron improperly seeks to delete "or method" from the first

8  sentence of the model ("A product *or method* directly infringes a patent if it is covered by at least

9  one claim of the patent") and add a redundant sentence not found in the model: "A method

10  directly infringes a patent if it is covered by at least one claim of the patent and is actually

11  performed." The model accurately reflects the law, and MobileIron's proposed departure from

12  the model would be redundant and confusing, would create undue emphasis, and would wrongly

13  suggest that there is some requirement beyond a method being covered by a patent claim.

14

15  **MobileIron's Proposal**

16  A patent's claims define what is covered by the patent. A product directly infringes a

17  patent if it is covered by at least one claim of the patent. A method directly infringes a patent if it

18  is covered by at least one claim of the patent and is actually performed.

19  Deciding whether a claim has been directly infringed is a two-step process. The first step

20  is to decide the meaning of the patent claim. I have already made this decision, and I have

21  already instructed you as to the meaning of the asserted patent claims. The second step is to

22  decide whether the alleged infringer has made, used, sold, or offered for sale or imported within

23  the United States a product or used within the United States a method covered by any claim of

24  any of the patents in this case. If it has, it infringes. You, the jury, make this decision.

25  With one exception, you must consider each of the asserted claims of the patent

26  individually, and decide whether the alleged infringer's product or method infringes that claim.

27  The one exception to considering claims individually concerns dependent claims. A dependent

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 30 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   claim includes all of the requirements of a particular independent claim, plus additional

2   requirements of its own.  As a result, if you find that an independent claim is not infringed, you

3   must also find that its dependent claims are not infringed.  On the other hand, if you find that an

4   independent claim has been infringed, you must still separately decide whether the additional

5   requirements of its dependent claims have also been infringed.

6       You may have heard evidence about both the patent holder's commercial product or

7   method and the alleged infringer's accused product or method.  However, in deciding the issue of

8   infringement you may not compare the alleged infringer's accused product or method to the

9   patent holder's commercial product or method.  Rather, you must compare the alleged infringer's

10  accused product or method to the claims of the asserted patent when making your decision

11  regarding infringement.

12      Whether or not the alleged infringer knew its product or method infringed or even knew of

13  the patent does not matter in determining direct infringement.

14      There are two ways in which a patent claim may be directly infringed.  A claim may be

15  "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following

16  instructions will provide more detail on these two types of direct infringement.

17      **MOBILEIRON'S POSITION**:  MobileIron objects to Good's proposal because it is not

18  sufficiently clear that a method claim is directly infringed only when the method is performed,

19  and not in some other manner (e.g., sale of software embodying a method).

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 31 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

**Good's Proposal**

3

*See* Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

4

No. 3.2; 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17

5

(1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed.

6

Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-*

7

*Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch,*

8

*Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

9

10

**MobileIron's Proposal**

11

Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

12

Section B.3, Instruction 3.2; *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("[A]

13

method or process claim is directly infringed only when the process is performed.").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**11.  12.  LITERAL INFRINGEMENT [DISPUTED]**

### Good's Proposal

To decide whether the accused products or methods literally infringe any claims of the patents in this case, you must compare each product or method with the patent claim and determine whether every requirement of the claim is included in that product or method.  If so, the product or method literally infringes that claim.  You must decide literal infringement for each asserted claim separately.

If a patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in an accused product or method. The fact that an accused product also includes other parts or that an accused method includes additional steps will not avoid infringement, as long as the accused product or method has every requirement in the patent claim.

If the alleged infringer's product or method does not itself include every requirement in the patent claim, but other persons supplied the missing elements, the accused infringer is liable for infringement if it directed or controlled the acts by those persons.  The alleged infringer does not direct or control someone else's action merely because the alleged infringer entered into a business relationship with that person.  It is sufficient if, for example, the alleged infringer instructed or caused that other person to perform each step in an infringing manner, or if every step is attributable to the alleged infringer as controlling party.

The accused infringer is also liable for infringement if it placed into service a system that contains all the requirements of a claim.  One way of placing the system into service is to exercise control of the system as a whole and derive a benefit from it.  Physical or direct control or possession of every component of the system is not required.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 33 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

If one party controls and makes use of a system that contains all the requirements of a claim, that party may be an infringer even though the parts of the system do not all operate in the same place or at the same time.

**GOOD'S POSITION**:   MobileIron's proposed instruction omits relevant matters, including liability for placing into service a system that contains all the elements of a claim, as referenced in Good's July 9 responses (Dkt. Nos. 453 & 454) to MobileIron's July 8 "Motions To Clarify."  *See, e.g., Soverain Software LLC v. J.C. Penney Corp.*, 899 F. Supp. 2d 574, 581 (E.D. Tex. 2012) ("Thus, Defendants' web server, by delivering web pages containing embedded programming, ***puts the system as a whole into service*** so that Defendants may benefit from the system.  Accordingly, Defendants use the system under § 271(a) by ***putting the system into service***, i.e., controlling the system as a whole and deriving benefit from it."); *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 887 (E.D. Va. 2013) ("In other words, even though defendants' use of the system may be put in motion by the Facebook user, defendants themselves directly infringe the system because they ***place into use*** each element of the claimed system.").  Good's responses (Dkt. Nos. 453 & 454) are incorporated by reference as if fully set forth here.

Further, Good's proposed instruction conforms MobileIron's proposed language to applicable law.  MobileIron's proposal indicates circumstances under which an alleged infringer "cannot" be liable for infringement, but fails to indicate the relevant circumstances under which an infringer *is* liable, confusing and misleading the jury to misapply the law ("[i]f the alleged infringer's product or method does not itself include every requirement in the patent claim, the alleged infringer *cannot* be liable for infringement merely because other parties supplied the missing elements, *unless* the accused infringer directed or controlled the acts by those parties.").

**MobileIron's Proposal**

To decide whether the accused products or methods literally infringe any claims of the patents in this case, you must compare each product or method with the patent claim and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 34 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1  determine whether every requirement of the claim is included in that product or method.  If so,

2  the product or method literally infringes that claim.  You must decide literal infringement for each

3  asserted claim separately.

4      If a patent claim uses the term "comprising," that patent claim is to be understood as an

5  open claim.  An open claim is infringed as long as every requirement in the claim is present in an

6  accused product or method. The fact that an accused product also includes other parts or that an

7  accused method includes additional steps will not avoid infringement, as long as the accused

8  product or method has every requirement in the patent claim.

9      If the alleged infringer's product or method does not itself include every requirement in

10  the patent claim, the alleged infringer cannot be liable for infringement merely because other

11  parties supplied the missing elements, unless the accused infringer directed or controlled the acts

12  by those parties.  The alleged infringer does not direct or control someone else's action merely

13  because the alleged infringer entered into a business relationship with that person.  Instead, the

14  alleged infringer must specifically instruct or cause that other person to perform each step in an

15  infringing manner, so that every step is attributable to the alleged infringer as controlling party.

16      If one party controls and makes use of a system that contains all the requirements of a

17  claim, that party may be an infringer even though the parts of the system do not all operate in the

18  same place or at the same time.

19      **MOBILEIRON'S POSITION**:   MobileIron objects to Good's proposal as deviating

20  from Instruction 3.3 of the Model Patent Jury Instructions for the Northern District of California

21  (June 17, 2014) in ways that are confusing, misleading, and legally incorrect.  Contrary to Good's

22  objection, MobileIron's proposal reflects the law regarding infringement of system claims, as

23  indicated by the model instruction's citation to *Centillion Data Sys., LLC v. Qwest Comm'ns Int'l,*

24  631 F.3d 1279 (Fed. Cir. 2011).  Good's proposal is legally inaccurate and also misleading as it

25  implies there are two ways to infringe a system claim.

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 35 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Authorities</u>

**Good's Proposal**

*See* Model Patent Jury Instructions for the Northern District of California (June 17, 2014), Section B.3, Instruction 3.3; *Soverain Software LLC v. J.C. Penney Corp.*, 899 F. Supp. 2d 574, 581 (E.D. Tex. 2012); *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 887 (E.D. Va. 2013); *See, e.g., Soverain Software LLC v. J.C. Penney Corp.*, 899 F. Supp. 2d 574, 581 (E.D. Tex. 2012) ("Thus, Defendants' web server, by delivering web pages containing embedded programming, ***puts the system as a whole into service*** so that Defendants may benefit from the system.  Accordingly, Defendants use the system under § 271(a) by ***putting the system into service***, i.e., controlling the system as a whole and deriving benefit from it."); *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 887 (E.D. Va. 2013) ("In other words, even though defendants' use of the system may be put in motion by the Facebook user, defendants themselves directly infringe the system because they ***place into use*** each element of the claimed system."); *Exelis Inc. v. Cellco P'ship*, 2012 U.S. Dist. LEXIS 159085, *5-6 (D. Del. Oct. 9, 2012) ("The parties agree that for "system" claims, the recent Federal Circuit decision in *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279 (Fed. Cir. 2011), is controlling. (D.I. 550 at 4)  In *Centillion*, 631 F.3d at 1284, the Federal Circuit explained that "to ***'use'*** a system for purposes of infringement, a party must ***put the invention into service***, i.e., control the system as a whole and obtain benefit from it."  Use, however, ***does not require physical control or possession of every component of the system***. *Id.*").

*Emblaze v. Apple*, Case No. 5:11-cv-01079-PSG, Dkt. 603 (Rev. Final Jury Instructions) (N.D. Cal. July 10, 2014) (Grewal, J.); *Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir. 2009);

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 36 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1  *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc.*
2  *v. Paymentech, L.P.,* 498 F.3d 1373 (Fed. Cir. 2007).

3

4        **MobileIron's Proposal**

5        Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

6  Section B.3, Instruction 3.3; *Emblaze v. Apple*, Case No. 5:11-cv-01079-PSG, Dkt. 603 (Rev.

7  Final Jury Instructions) (N.D. Cal. July 10, 2014) (Grewal, J.); *Golden Bridge Technology v.*

8  *Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final Jury Instructions) (N.D. Cal. June 11,

9  2014) (Grewal, J.);  *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed.

10 Cir. 2005); *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v.*

11 *Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.,* 535 F.3d

12 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir.

13 2005); *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373 (Fed. Cir. 2007).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 37 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**12.  13.  INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS [DISPUTED]**

**Good's Proposal**

If you decide that an accused product or method does not literally infringe an asserted patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the product or method is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

You may not use the doctrine of equivalents to find infringement if you find that the alleged infringer's product or method is the same as what was in the prior art before the application for the patent or what would have been obvious to persons of ordinary skill in the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 38 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1  field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of

2  equivalents, protection that it could not have lawfully obtained from the Patent and Trademark

3  Office

4

5  **GOOD'S POSITION**:  Good objects that MobileIron's proposed instruction is confusing

6  and deviates from and modifies the model instruction language that is applicable to this case,

7  includes inapplicable language, such as the second-to-last paragraph regarding "subject matter …

8  described in the patent but not covered by any of its claims," and does not accurately reflect the

9  law.

10  Further, MobileIron deletes applicable language from the model—"If the product or

11  method is missing an identical or equivalent part or step to even one requirement of the asserted

12  patent claim…"—and replaces it with "Every requirement of the asserted patent claim must have

13  either an identical or equivalent part or step in the accused product or method; if even one

14  requirement is missing…".

15  MobileIron also adds vague and confusing language that is not in the model, including its

16  last proposed paragraph stating among other things that an alleged equivalent "cannot … ignore

17  an element…."  This is not an issue for the jury, however.  Application of the all elements rule or

18  "vitiation," is a question of law for the Court.  *See, e.g., Panduit Corp. v. HellermannTyton Corp.*,

19  451 F.3d 819, 826 (Fed. Cir. 2006) ("The determination of infringement under the doctrine of

20  equivalents is limited by two primary legal doctrines, prosecution history estoppel and the 'all

21  elements' rule, the applications of which are questions of law.").  Accordingly, there is no such

22  instruction in the model.

23

24  **MobileIron's Proposal**

25  If you decide that an accused product or method does not literally infringe an asserted

26  patent claim, you must then decide whether that product or method infringes the asserted claim

27  under what is called the "doctrine of equivalents."

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 39 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. Every requirement of the asserted patent claim must have either an identical or equivalent part or step in the accused product or method; if even one requirement is missing, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

You may not use the doctrine of equivalents to find infringement if you find that the alleged infringer's product or method is the same as what was in the prior art before the application for the patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

patent but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

You may not determine that an alternative aspect of a product or method is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.   Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

**MOBILEIRON'S POSITION**:   MobileIron objects to Good's proposal as omitting relevant portions of Instruction 3.4 of the Model Patent Jury Instructions for the Northern District of California (June 17, 2014).  MobileIron further submits that the model's proposed language beginning "If the [product] [method] is missing an identical or equivalent [part] [step]…" is confusing in this case because of its use of multiple "or"s strung together; MobileIron's proposal is to the same legal effect and is more clear.  MobileIron further submits that its final paragraph regarding claim vitiation is proper, as it comes directly from Instruction 3.1d of the Federal Circuit Bar Association, Model Patent Jury Instructions (February 2012).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 41 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1      Authorities

2          **Good's Proposal**

3          *See* Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

4      No. 3.4; *Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 826 (Fed. Cir. 2006) ("The

5      determination of infringement under the doctrine of equivalents is limited by two primary legal

6      doctrines, prosecution history estoppel and the 'all elements' rule, the applications of which are

7      questions of law."); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002);

8      *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg.*

9      *Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne*

10     *Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA,*

11     *Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285

12     F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473,

13     1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

14

15         **MobileIron's Proposal**

16         Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

17     Section B.3, Instruction 3.4; Federal Circuit Bar Association, Model Patent Jury Instructions

18     (February 2012), Section B.3, Instruction 3.1d (regarding claim vitiation).

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 42 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

~~13.~~ **14.  CONTRIBUTORY INFRINGEMENT [DISPUTED]**

**Good's Proposal**

Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement, someone other than a party in this case must directly infringe a claim of a patent; if there is no direct infringement by anyone, there can be no contributory infringement.  If you find someone has directly infringed a claim of one of the patents, then a party in this case is liable for contributory infringement if it is more likely than not that:

(1)     The party sold, offered for sale, imported or otherwise supplied an important component of the infringing part of the product or method;

(2)     The component is not suitable for substantial non-infringing use; and

(3)     The party supplied the component with knowledge of the patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "component suitable for substantial non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**<u>GOOD'S POSITION</u>**:

Good objects that MobileIron's proposed instruction is confusing, does not properly reflect the law, includes superfluous and improper language not in the model that unduly suggests that Good is liable.  Good further objects that MobileIron's proposed instructions are not party-neutral.  Further, MobileIron's proposed instruction includes other improper language not in the model and otherwise departs from the model, such as "Good Technology supplied the component

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 43 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

with the belief that there was a high probability that the component would be used in an infringing manner and it deliberately avoided confirming its belief."

**MobileIron's Proposal**

MobileIron contends that Good Technology is liable for contributing to infringement by others, such as its customers and users of its products.  Contributory infringement may arise when Good Technology supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement, someone other than a party in this case must directly infringe a claim of a patent; if there is no direct infringement by anyone, there can be no contributory infringement.  If you find someone other than Good Technology has directly infringed a claim of MobileIron's '016 patent, then Good Technology is liable for contributory infringement if it is more likely than not that:

(1)     Good Technology sold, offered for sale, imported or otherwise supplied an important component of the infringing part of the product or method;

(2)     The component is not suitable for substantial non-infringing use; and

(3)     Either a) Good Technology supplied the component with knowledge of the patent and knowledge that the component was especially made or adapted for use in an infringing manner, or b) Good Technology supplied the component with the belief that there was a high probability that the component would be used in an infringing manner and it deliberately avoided confirming its belief.

A "component suitable for substantial non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

**MOBILEIRON'S POSITION**:  MobileIron objects to Good's proposal to the extent it misleadingly implies to the jury that Good may prevail on an indirect infringement theory.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 44 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    Authorities

2    **Good's Proposal**

3    *See* Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

4    Instruction 3.8; 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al.*, 491

5    F.3d 1342, 1356-58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S.

6    476 (1964); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc.*

7    *v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch &*

8    *Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining &*

9    *Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.

10   Ct. 2060 (2011); *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1366-67 (Fed. Cir.

11   2013); Final Jury Instructions at 22-23, *TV Interactive Data Corp. v. Sony Corp.*, No. 3:10-cv-

12   00475 (N.D. Cal. Mar. 25, 2013) (Dkt. 774); *Helios Software, LLC v. Spectorsoft Corp.*, 2014

13   U.S. Dist. LEXIS 135379, at *37 (D. Del. Sept. 18, 2014).

14

15   **MobileIron's Proposal**

16   Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

17   Section B.3, Instruction 3.8; Federal Circuit Bar Association, Model Patent Jury Instructions

18   (February 2012), Section B.3, Instruction 3.2.

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 45 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

## ~~14.~~ **15.  INDUCING PATENT INFRINGEMENT [DISPUTED]**

2

3

### Good's Proposal

4

In order for a party to induce infringement, the party must have induced another to

5

directly infringe a claim of a patent; if there is no direct infringement by anyone, there can be no

6

induced infringement.  A party is liable for inducement of infringement if it is more likely than

7

not that the party:

8

      1.      intentionally took action that actually induced direct infringement;

9

      2.      was aware of the patent; and

10

      3.      knew that the acts it was causing would infringe the patent.

11

12

If the three requirements just stated are not met, a party cannot be liable for inducement

13

unless it actually believed that it was highly probable its actions would encourage infringement of

14

a patent and it deliberately chose to avoid learning the truth. To prove inducement, it is not

15

enough that the accused infringer was merely indifferent to the possibility that its actions might

16

encourage infringement of a valid patent.  Nor is it enough that the accused infringer took a risk

17

that was substantial and unjustified.

18

In deciding whether the alleged infringer induced infringement, you may consider whether

19

the accused infringer actually believed that the acts it encouraged did not infringe the patent.

20

**GOOD'S POSITION**:  Good objects that MobileIron's proposed instruction is confusing

21

and includes superfluous and improper language not in the model that improperly suggests that

22

Good is liable.  Good further objects that MobileIron's proposed instructions are not party-neutral

23

and delete language from and otherwise depart from the model instruction.

24

25

### MobileIron's Proposal

26

MobileIron contends that Good Technology is liable for actively inducing another, such as

27

its customers and users of its products, to infringe a patent.  In order for a party to induce

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 46 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

infringement, the party must have induced another to directly infringe a claim of a patent; if there is no direct infringement by anyone, there can be no induced infringement.  Good Technology is liable for inducement of infringement if it is more likely than not that Good Technology:

1.     intentionally took action that actually induced direct infringement;

2.     was aware of the patent; and

3.     knew that the acts it was causing would infringe the patent.

If the three requirements just stated are not met, Good Technology can still be liable for inducement if it believed that it was highly probable its actions would encourage infringement of a patent and it chose to avoid learning the truth.  To prove inducement, it is not enough that the accused infringer was merely indifferent to the possibility that its actions might encourage infringement of a valid patent.  Nor is it enough that the accused infringer took a risk that was substantial and unjustified.

**MOBILEIRON'S POSITION**:  MobileIron objects to Good's proposal to the extent it misleadingly implies to the jury that Good may prevail on an indirect infringement theory.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 47 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

**Good's Proposal**

3     See Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

4     Instruction 3.9; 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 131 S.Ct.

5     2060 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (en banc)

6     (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005));

7     *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011); *Broadcom Corp. v. Qualcomm,*

8     *Inc.*, 543 F.3d 683 (Fed. Cir. 2008); *Limelight Networks, Inc. v Akamai Techs.*, 134 S. Ct. 2111,

9     572 U.S.____ (2014);  *Commil USA v. Cisco Sys.*, 720 F.3d 1361 (Fed. Cir. 2013), 135 S. Ct.

10    1920 (U.S. 2015).

11

12    **MobileIron's Proposal**

13    Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

14    Section B.3, Instruction 3.9.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 48 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    ~~15.~~  **16.  INVALIDITY- BURDEN OF PROOF [DISPUTED]**

2

3                                **Good's Proposal**

4          I will now instruct you on the rules you must follow in deciding whether or not a patent

5    claim is invalid. Before discussing the specific rules, I want to remind you about the standard of

6    proof that applies to this defense. Patents are presumed valid.  To prove that any claim of a patent

7    is invalid, you must be persuaded by clear and convincing evidence, i.e., the evidence must

8    produce in your minds a firm belief or conviction that the claim is invalid.

9

10         **GOOD'S   POSITION:**    Good objects that MobileIron's proposed instruction is

11   confusing, ambiguous and does not accurately reflect the law.  The jury should be instructed on

12   the presumption of validity to avoid confusion and accurately reflect the law.  *See, e.g.,* American

13   Intellectual Property Law Association Model Patent Jury Instructions, II.A.ii. ("[The Defendant]

14   must prove the facts underlying its invalidity argument(s) by clear and convincing evidence in

15   order to overcome the presumption of validity."); *Novo Nordisk A/S v. Caraco Pharm. Labs.,*

16   *Ltd.*, No. 2011-1223, 2013 U.S. App. LEXIS 12251, at *12-13 (Fed. Cir. June 18, 2013) ("It is

17   black-letter law that a patent is presumed valid under 35 U.S.C. § 282, that a party challenging its

18   validity bears the burden of proving the factual elements of invalidity by clear and convincing

19   evidence. . . ."); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 3:08-cv-05129-JCS, Dkt. 1597

20   at 18 (N.D. Cal. May 24, 2011);  *TV Interactive Data Corp. v. Sony Corp.*, No. 3:10-cv-00475,

21   Dkt. 774 at 25 (N.D. Cal. Mar. 25, 2013) ("Because patents are presumed valid, to prove

22   invalidity of any patent claim, [the alleged infringer] must persuade you that it is highly probable

23   that the claim is invalid."); *see also Lighting Ballast Control, LLC v. Philips Elecs. North Am.*

24   *Corp.*, No. 7:09-cv-29-O, 2011 U.S. Dist. LEXIS 154682, at *21–22 (N.D. Tex. June 10, 2011)

25   ("ULT's contention that LBC's reference to a patent's statutory presumption of validity is

26   prejudicial is not well taken.").

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 49 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

2                                    **MobileIron's Proposal**

3          I will now instruct you on the rules you must follow in deciding whether or not a patent

4    claim is invalid. Before discussing the specific rules, I want to remind you about the standard of

5    proof that applies to this defense.  To prove that any claim of a patent is invalid, you must be

6    persuaded by clear and convincing evidence, i.e., the evidence must produce in your minds a firm

7    belief or conviction that the claim is invalid.

8          **MOBILEIRON'S POSITION**:  MobileIron objects to Good's proposal as deviating

9    from Instruction 4.1 of the Model Patent Jury Instructions for the Northern District of California

10   (June 17, 2014) by unnecessarily adding a statement of the presumption of validity, which may

11   mislead the jury.  While MobileIron does not dispute that patents are entitled to a presumption of

12   validity, MobileIron believes the statement is improper in the context of Good's proposed

13   instruction, where it may incorrectly suggest to the jury that the presumption is something in

14   addition to, rather than reflected by, the "clear and convincing" standard.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 50 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   Authorities

2   **Good's Proposal**

3   *See* American Intellectual Property Law Association Model Patent Jury Instructions,

4   II.A.ii. ("[The Defendant] must prove the facts underlying its invalidity argument(s) by clear and

5   convincing evidence in order to overcome the presumption of validity."). There is a presumption

6   of validity. *See Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, No. 2011-1223, 2013 U.S. App.

7   LEXIS 12251, at *12-13 (Fed. Cir. June 18, 2013) ("It is black-letter law that a patent is

8   presumed valid under 35 U.S.C. § 282, that a party challenging its validity bears the burden of

9   proving the factual elements of invalidity by clear and convincing evidence. . . ."). Many courts—

10  including courts in this district— instruct the jury on the presumption of validity *to avoid*

11  *confusion*. *See* Final Jury Instructions, *Volterra Semiconductor Corp. v. Primarion, Inc.*, 3:08-cv-

12  05129-JCS, at 18 (N.D. Cal. May 24, 2011) (Dkt. 1597);  Final Jury Instructions at 25, *TV*

13  *Interactive Data Corp. v. Sony Corp.*, No. 3:10-cv-00475, at 25 (N.D. Cal. Mar. 25, 2013) (Dkt.

14  774) ("Because patents are presumed valid, to prove invalidity of any patent claim, [the alleged

15  infringer] must persuade you that it is highly probable that the claim is invalid."); *see also*

16  *Lighting Ballast Control, LLC v. Philips Elecs. North Am. Corp.*, No. 7:09-cv-29-O, 2011 U.S.

17  Dist. LEXIS 154682, at *21–22 (N.D. Tex. June 10, 2011) ("ULT's contention that LBC's

18  reference to a patent's statutory presumption of validity is prejudicial is not well taken.").

19  *See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

20  Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); *Emblaze v. Apple*, Case No. 5:11-cv-

21  01079-PSG, Dkt. 603 (Rev. Final Jury Instructions) (N.D. Cal. July 10, 2014) (Grewal, J.);

22  Model Patent Jury Instructions for the Northern District of California (June 17, 2014), No. 4.1;

23  *Microsoft Corp. v. i4i LTD Partnership*, 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v.*

24  *Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal*

25  *Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

26  **MobileIron's Proposal**

27  Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 51 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   Section B.4.1, Instruction 4.1; Instruction 7, *supra*.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 52 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

### ~~16.~~ **17.**  WRITTEN DESCRIPTION REQUIREMENT [JOINTLY PROPOSED]

2

3       The patent law contains certain requirements for the part of the patent called the

4   specification. Patent claims may be invalid if the patent specification does not contain an

5   adequate written description of the claimed invention.

6       To show that a patent claim lacks an adequate written description, it must be shown by

7   clear and convincing evidence that the specification fails to meet the law's requirements for

8   written description of the invention. In the patent application process, the applicant may keep the

9   originally filed claims, or change the claims between the time the patent application is first filed

10  and the time a patent is issued. An applicant may amend the claims or add new claims. These

11  changes may narrow or broaden the scope of the claims. The written description requirement

12  ensures that the issued claims correspond to the scope of the written description that was provided

13  in the original application.

14      In deciding whether the patent satisfies this written description requirement, you must

15  consider the description from the viewpoint of a person having ordinary skill in the field of

16  technology of the patent when the application was filed. The written description requirement is

17  satisfied if a person having ordinary skill reading the original patent application would have

18  recognized that it describes the full scope of the claimed invention as it is finally claimed in the

19  issued patent, even though the description may not use the exact words found in the claim.

20      The written description requirement may be satisfied by any combination of the words,

21  structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of

22  a claim or any particular requirement in a claim need not be expressly disclosed in the original

23  patent application if a person having ordinary skill in the field of technology of the patent at the

24  time of filing would have understood that the full scope or missing requirement is in the written

25  description in the patent application.

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 53 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1       Authorities

2       *Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 520 (Final Jury

3   Instructions) at 26 (N.D. Cal. June 10, 2014) (Grewal, J.); Federal Circuit Bar Association, Model

4   Patent Jury Instructions (February 2012), Section B.4.2, Instruction 4.2a; Model Patent Jury

5   Instructions for the Northern District of California (June 17, 2014), Section B.4.2, Instruction

6   4.2a; 35 U.S.C. § 112,  1, 2; *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed.

7   Cir. 2010) (en banc); *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed.

8   Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron*

9   *Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Purdue Pharma L.P. v.*

10  *Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an

11  adequate written description; however, it need not include the exact words of the claim); *Lampi*

12  *Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v.*

13  *Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly*

14  *& Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); In re Alton, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 54 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

### ~~17.~~ **18. ENABLEMENT [DISPUTED]**

#### Good's Proposal

The patent law contains certain requirements for the part of the patent called the specification. Good Technology contends that the claims of MobileIron's '016 patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, Good Technology must show by clear and convincing evidence that the '016 patent does not contain a sufficiently full and clear description of the claimed invention. To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the '016 patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of '016 filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)     the time and cost of any necessary experimentation;

(2)     how routine any necessary experimentation is in the field of the patent;

(3)     whether the patent discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field of the patent;

(6)     the level of ordinary skill in the field of the patent; and

(7)     the scope of the claimed invention.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 55 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

**GOOD'S POSITION**:  Good objects that MobileIron's proposed instruction is confusing, ambiguous and incomplete, and deviates from the model and omits from the model applicable language.

MobileIron objects that Good's proposed instruction reflects Good's position that MobileIron's counterclaim patent is invalid, but Good's proposal follows the model language and is appropriate.  Without such language, the jury may be confused and misled into believing MobileIron asserts invalidity for lack of enablement, when in fact MobileIron does not.

**MobileIron's Proposal**

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention.  This is known as the "enablement" requirement.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)     the time and cost of any necessary experimentation;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 56 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

(2)     how routine any necessary experimentation is in the field of the patent;

(3)     whether the patent discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field of the patent;

(6)     the level of ordinary skill in the field of the patent; and

(7)     the scope of the claimed invention.

No one or more of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original patent application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

**MOBILEIRON'S POSITION**:  MobileIron objects to Good's proposal as being written explicitly in terms of Good's contentions, which is inconsistent with the other proposed instructions on infringement and invalidity.  This will unnecessarily confuse and mislead the jury.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 57 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    Authorities

2    **Good's Proposal**

3    *See* The Federal Circuit Bar Association Model Patent Jury Instructions (May 2014), No.

4    4.2b; *Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 520 (Final Jury

5    Instructions) at 27-28 (N.D. Cal. June 10, 2014) (Grewal, J.); 35 U.S.C. § 112, ¶ 1; *Sitrick v.

6    Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The scope of the claims must be less

7    than or equal to the scope of the enablement' to 'ensure[ ] that the public knowledge is enriched

8    by the patent specification to a degree at least commensurate with the scope of the claims.'")

9    (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96

10   (Fed. Cir. 1999)); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir.

11   2007) (full scope of claimed invention must be enabled); *AK Steel Corp. v. Sollac*, 344 F.3d 1234,

12   1244 (Fed. Cir. 2003) (enabling the full scope of each claim is "part of the quid pro quo of the

13   patent bargain"); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed.

14   Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir.

15   2000); In re Wands, 858 F.2d 731, 737 (Fed. Cir. 1988) (factors for determining undue

16   experimentation).

17

18   **MobileIron's Proposal**

19   Federal Circuit Bar Association, Model Patent Jury Instructions (February 2012), Section

20   B.4.2, Instruction 4.2b; Model Patent Jury Instructions for the Northern District of California

21   (June 17, 2014), Section B.4.2, Instruction 4.2b.

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

## ~~18.~~  19.  INVALIDITY- ANTICIPATION [DISPUTED]

### Good's Proposal

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, each and every element in the claim must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.  You may not combine two or more items of prior art to find anticipation.  Anticipation must be determined on a claim-by-claim basis.

The description in the written reference does not have to be in exactly the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily present, so that someone of ordinary skill in the field of the patent looking at that one reference would be able to make and use the claimed invention.

To succeed in showing that a patent claim is invalid as anticipated by alleged prior art, the party asserting invalidity must convince you of this by clear and convincing evidence, in other words, it must present evidence that highly probably demonstrates that the claims are invalid and produces in your minds a firm belief or conviction that the claims are invalid.

Here is a list of the ways it can be shown that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others in the United States before the date of the invention;

– if the claimed invention was already patented or described in a printed publication, anywhere in the world before the date of the invention or more than a year before the effective filing date of the application for the patent. An invention was patented by another if the other patent describes the same invention claimed by the patent holder to a person having ordinary skill in the technology.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective filing date of the application for the patent. An invention was publicly used when it was either accessible to the public or commercially exploited;

– if the claimed invention was described in a published patent application filed by another in the United States before the date of the invention;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 59 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

– if the claimed invention was described in a patent granted on an application for patent by another filed in the United States and the application was filed before the date of the invention and the filing date of the application for the patent;

– if the claimed invention was already made by someone else in the United States before the date of invention, if that other person had not abandoned the invention or kept it secret;

– if the named inventor(s) did not invent the claimed invention but instead learned of the claimed invention from someone else.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice.

Diligence means working continuously, though not necessarily every day.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent. Whether the contribution is significant is measured against the scope of the full invention.

**GOOD'S POSITION**:  Good objects that MobileIron's proposed instruction is confusing, ambiguous, omits applicable language from the model, and does not accurately reflect the law.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 60 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

For example, MobileIron's proposal omits the correct statement of law that "You may not combine two or more items of prior art to find anticipation."  Combinations of multiple items of prior art may instead be considered with respect to alleged obviousness if appropriate.

MobileIron's proposal also omits the accurate and applicable term "exactly" from the following model language: "The description in the written reference does not have to be in *exactly* the same words as the claim…."

MobileIron also proposes, without offering any justification, to omit from the model instruction the accurate and applicable instruction that "a patent claim was not new … if the claimed invention was already made by someone else in the United States before the date of invention, if that other person had not abandoned the invention or kept it secret."  This instruction is applicable to this case, at least because Good has asserted that MobileIron's '016 patent is invalid in light of earlier inventions of others.

MobileIron also proposes the confusing use of "implied" rather than "*present*" in the following: "all of the requirements of the claim must be there, either stated or necessarily *implied*, so that someone of ordinary skill in the field of the patent looking at that one reference would be able to make and use the claimed invention.  MobileIron's proposed use of "implied" instead of "present" does not accurately reflect the law.  *See, e.g.  Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003) ("a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is *__necessarily present__*, or inherent, in the single anticipating reference.").

MobileIron also proposes omitting the accurate and applicable instruction regarding the burden of showing invalidity:

> To succeed in showing that a patent claim is invalid as anticipated by alleged prior art, the party asserting invalidity must convince you of this by clear and convincing evidence, in other words, it must present evidence that highly probably demonstrates that the claims are invalid and produces in your minds a firm belief or conviction that the claims are invalid.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 61 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   This is a correct statement of the law applicable to this case.  The burden of proof appears in other

2   instructions, and its absence here would mislead the jury into thinking the burden is lower than

3   the law provides.

4        MobileIron also proposes omitting from the model several instructions regarding

5   conception, including an instruction concerning the requirement of corroborating evidence.

6   Omitting such instructions applicable in this case would mislead the jury.

7        MobileIron's proposal also omits a model instruction on inventors, yet refers to inventors

8   in this and other instructions without offering any guidance and tending to confuse the jury.

9        Further, there is no justification for omitting from the model the correct instruction that "a

10  patent claim was not new … if the named inventor(s) did not invent the claimed invention but

11  instead learned of the claimed invention from someone else."

12       Good objects to MobileIron's new proposal on the morning of the charge conference to

13  add instructions regarding an invention date and prior art references as untimely, unduly

14  emphasizing certain issues, vague, ambiguous, contrary to law, non-reciprocal and prejudicial.

15  Further, MobileIron's proposal would erroneously constrain what the jury may consider and

16  includes errors in the list of PX exhibits.

17       Should the Court use such instructions over Good's objections, there should be reciprocal

18  instructions regarding alleged prior art asserted against Good's patents.

19

20                          **MobileIron's Proposal**

21       A patent claim is invalid if the claimed invention is not new. For the claim to be invalid

22  because it is not new, each and every element in the claim must have existed in a single device or

23  method that predates the claimed invention, or must have been described in a single previous

24  publication or patent that predates the claimed invention.  In patent law, these previous devices,

25  methods, publications or patents are called "prior art references." If a patent claim is not new we

26  say it is "anticipated" by a prior art reference.  Anticipation must be determined on a claim-by-

27  claim basis.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 62 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the patent looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways it can be shown that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others in the United States before the date of the invention;

– if the claimed invention was already patented or described in a printed publication, anywhere in the world before the date of the invention or more than a year before the effective filing date of the application for the patent. An invention was patented or described by another if the other patent or printed publication describes the same invention claimed by the patent holder to a person having ordinary skill in the technology. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective filing date of the application for the patent. An invention was publicly used when it was either accessible to the public or commercially exploited;

– if the claimed invention was described in a published patent application filed by another in the United States before the date of the invention;

– if the claimed invention was described in a patent granted on an application for patent by another filed in the United States and the application was filed before the date of the invention and the filing date of the application for the patent.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.   A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

The invention date of the '322 patent is February 27, 2006.

In deciding whether MobileIron's '016 patent is invalid as anticipated or obvious, you may only consider the facts and related testimony concerning the following prior art references:

U.S. Patent Publication No. 2002/0131404 to Mehta et al. (PX1286)

1        U.S. Patent No. 7,409,208 to Clare et al. (PX1285)

2        The Good For Enterprise Product (PX0497, PX0498, PX0499, PX1757)

3        The Ondeego AppCentral Product (PX0495, PX1292, PX0758, PX0759)

4    **MOBILEIRON'S POSITION**:   MobileIron objects to Good's proposal as making only

5    unhelpful modifications to Instruction 4.3a1 of the Model Patent Jury Instructions for the

6    Northern District of California (June 17, 2014).  For example, Good's proposal unnecessarily

7    restates the clear and convincing standard of proof.   In addition, Good's proposal adds the

8    sentence "You may not combine two or more items of prior art to find anticipation," which is (1)

9    redundant, since the instruction repeatedly says anticipation is based on a "single" device,

10   method, or publication, and (2) misleading because the jury may conclude that multiple

11   publications describing a single prior art system may not be considered together for anticipation

12   purposes.  MobileIron further objects to Good's proposal as listing forms of prior art that have not

13   been asserted in this case.  For example, Good proposes to instruct the jury that a patent may be

14   invalid "if the named inventor(s) did not invent the claimed invention," but Good did not timely

15   disclose any theory of invalidity under § 102(f).  MobileIron further objects to Good's proposal as

16   omitting the definition of "printed publication."  MobileIron further objects to Good's inclusion

17   of the two sentences beginning "To be an inventor…" as confusing and misleading, particularly

18   in the context of this instruction.

19        To the extent the Court gives any instructions implying that the named inventors on

20   MobileIron's '016 patent are incorrect or that Good can assert invalidity for incorrect

21   inventorship, MobileIron asks that the following instruction also be given (along with any

22   standard instructions regarding the presumption of validity that are needed to give it appropriate

23   context):

24        Corrections in the listing of inventors by the USPTO are presumed valid.  To rebut

25        this presumption, a party challenging patent validity for incorrect listing of

26        inventors must present clear and convincing, corroborated evidence that the

27        correction was improper.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 64 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    *See Winbond Elecs. Corp. v. ITC*, 2001 U.S. App. LEXIS 25113, *18 (Fed. Cir. 2001).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 65 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

Authorities

2

**Good's Proposal**

3

*See* Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

4

No. 4.3a1; The Federal Circuit Bar Association Model Patent Jury Instructions (May 2014), No.

5

4.3a-1; 35 U.S.C. § 102(a), (c), (e), (f) and (g); *Flex-Rest, LLC v. Steelcase, Inc.,* 455 F.3d 1351,

6

1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1379-82 (Fed.

7

Cir. 2005); *Apotex U.S.A., Inc. v. Merck & Co.,* 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen*

8

*Plant Science, Inc. v. Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S.*

9

*Cal. Edison Co.,* 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake,* 222 F.3d 1362, 1366-

10

70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia*

11

*AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v.*

12

*McCain Foods, Ltd.,* 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld,* 925 F.2d 1450 (Fed. Cir.

13

1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.,* 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American*

14

*Stock Exch., LLC v. Mopies,* 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer,* 655 F.2d 221, 226

15

(C.C.P.A. 1981).

16

*Golden Bridge Technology v. Apple,* Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final Jury

17

Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); *In re Klopfenstein,* 380 F.3d 1345, 1348-51

18

(Fed. Cir. 2004); Toro Co. v. Deere & Co., 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering*

19

*Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Pfaff v. Wells Elecs.*

20

*Inc.,* 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed. Cir. 2000);

21

*Abbott Labs. v. Geneva Pharms., Inc.,* 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v.*

22

*ITC,* 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 787 F.2d

23

1577, 1581 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v.*

24

*Chroma Graphics Corp.,* 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

25

*See* The Federal Circuit Bar Association Model Patent Jury Instructions (May 2014), No.

26

4.3d; 35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1349-50 (Fed. Cir. 1998); *Eli*

27

*Lilly & Co. v. Aradigm Corp.,* 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced*

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 66 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   *Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997); *Burroughs Wellcome Co. v.*

2   *Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-*

3   *Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).].

4

5       **MobileIron's Proposal**

6       Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

7   Section B.4.3, Instruction 4.3a1; Federal Circuit Bar Association, Model Patent Jury Instructions

8   (February 2012), Section B.4.3, Instruction 4.3a; MPEP §§ 715, 715.07.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 67 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

## ~~19.~~  **20.  INVALIDITY- OBVIOUSNESS [DISPUTED]**

### Good's Proposal

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

It may be established that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the patent.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the patent that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed invention provides an obvious solution to a known problem .in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    solve a problem and there are a finite number of identified, predictable solutions and (6) whether

2    the change resulted more from design incentives or other market forces.

3          To find it rendered the invention obvious, you must also find that the prior art provided a

4    reasonable expectation of success.

5          In determining whether the claimed invention was obvious, consider each claim

6    separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

7          In making these assessments, you must also take into account any objective evidence

8    (sometimes called "secondary considerations") that may have existed at the time of the invention

9    and afterwards that may shed light on whether or not the claimed invention would have been

10   obvious, such as:

11       1.    Whether the invention was commercially successful as a result of the merits of the
      claimed invention (rather than the result of design needs or market-pressure
12             advertising or similar activities);

13       2.    Whether the invention satisfied a long-felt need;

14       3.    Whether others had tried and failed to make the invention;

15       4.    Whether others invented the invention at roughly the same time;

16       5.    Whether others copied the invention;

17       6.    Whether there were changes or related technologies or market needs
      contemporaneous with the invention;
18

19       7.    Whether the invention achieved unexpected results;

20       8.    Whether others in the field praised the invention;

21       9.    Whether persons having ordinary skill in the art of the invention expressed
      surprise or disbelief regarding the invention;

22       10.   Whether others sought or obtained rights to the patent from the patent holder; and

23       11.   Whether the inventor proceeded contrary to accepted wisdom in the field.

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 69 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**GOOD'S POSITION**:  Good objects that MobileIron's proposed instruction is confusing, ambiguous, selectively departs from the model language without reason, does not accurately reflect the law, and omits the following applicable language from the model without providing any justification: "It may be established that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the patent."

**MobileIron's Proposal**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, a patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.  Obviousness must be shown by clear and convincing evidence.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the patent that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed invention provides an obvious solution to a known problem .in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 70 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions and (6) whether the change resulted more from design incentives or other market forces.

To find a patent claim obvious, you must also find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you must also take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on whether or not the claimed invention would have been obvious, such as:

1. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2. Whether the invention satisfied a long-felt need;

3. Whether others had tried and failed to make the invention;

4. Whether others invented the invention at roughly the same time;

5. Whether others copied the invention;

6. Whether there were changes or related technologies or market needs contemporaneous with the invention;

7. Whether the invention achieved unexpected results;

8. Whether others in the field praised the invention;

9. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

10. Whether others sought or obtained rights to the patent from the patent holder; and

11. Whether the inventor proceeded contrary to accepted wisdom in the field.

**MOBILEIRON'S POSITION**:   MobileIron objects to Good's proposal as containing awkward and redundant language.  MobileIron further objects to Good's proposal as omitting an

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 71 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

explicit statement that secondary considerations may exist pre- or post-invention.   MobileIron further objects to Good's use of "whether or not" in place of the model instruction's use of "whether" as misleading and legally unsupported.   For example, the jury may improperly consider the absence of certain secondary considerations as probative of obviousness.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 72 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    <u>Authorities</u>

2    **Good's Proposal**

3    *See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

4    Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); The Federal Circuit Bar Association

5    Model Patent Jury Instructions (May 2014), No. 4.3c.

6

7    **MobileIron's Proposal**

8    Federal Circuit Bar Association, Model Patent Jury Instructions (February 2012), Section

9    B.4.3, Instruction 4.3c.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 73 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

**20.   21.   INVALIDITY – LEVEL OF ORDINARY SKILL [JOINTLY PROPOSED]**

2

In deciding what the level of ordinary skill in the field of the invention is, you should

3

consider all the evidence introduced at trial, including but not limited to: (1) the levels of

4

education and experience of the inventor and other persons actively working in the field; (2) the

5

types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity

6

with which innovations are made; and (5) the sophistication of the technology.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 74 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1      <u>Authorities</u>

2      Federal Circuit Bar Association, Model Patent Jury Instructions (February 2012), Section

3  B.4.3, Instruction 4.3c(i).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 75 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

## 21.   22.  UNCLEAN HANDS

### MobileIron's Proposal

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit.  This is referred to as "unclean hands," and it is a defense that MobileIron contends precludes any recovery by Good Technology in this lawsuit.

Unclean hands is also a defense to Good Technology's false advertising claim.  In bringing a claim for false advertising, Good Technology should not be guilty of any false or misleading representation in its own advertisements.   If MobileIron can demonstrate that Good Technology acted inequitably in a way that relates the subject matter of Good Technology's false advertising claim, Good Technology may be barred from seeking relief.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, Good Technology acted in such an unfair way  in the matters relating to the controversy between Good Technology and MobileIron that, in fairness, Good Technology should be denied the relief it seeks in this lawsuit.  MobileIron must prove unclean hands by a preponderance of the evidence.

### Good's Proposal

[NO INSTRUCTION]

**GOOD'S POSITION**:   Good objects that MobileIron's proposed instruction is inappropriate because MobileIron failed to timely disclose any bases for or evidence of any unclean hands defense, which MobileIron only now, one week before trial, claims somehow pertains to Good's Lanham Act claim.  MobileIron failed to designate a witness for trial on any such purported affirmative defense in the Parties' Joint Pre-Trial Statement, and MobileIron never identified any such witness in its Rule 26(a)(1) Initial Disclosures and Updated Initial

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 76 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

Disclosures, nor did MobileIron identify evidence in these disclosures supporting any such purported defense, particularly not with respect to Good's Lanham Act claim.[3]   Accordingly, MobileIron should be precluded from using such evidence at trial.  *See, e.g.*, Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37(c), advisory committee notes (establishing a "self-executing sanction" for failure to comply with the disclosure requirements of Rule 26: "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.").

Even if MobileIron were permitted to pursue any purported unclean hands defense, which it should not be, it would be an equitable matter for the Court, not the jury, to resolve.  *See, e.g., Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987) (explaining that like unclean hands, inequitable conduct "is purely equitable in nature" and "thus does not give rise to the right of trial by jury." (quotations and citations omitted)); *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06CV01191, 2008 WL 382385 at *2 (February 12, 2008 E.D.Mo. 2008) ("There is no need to burden the jury with evidence of equitable misconduct that is to be decided by the Court.").

In addition, MobileIron's instruction does not accurately reflect the law, as any purported unclean hands claim by MobileIron "would have to directly relate to" Good's allegations regarding MobileIron's misrepresentations. See *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 666 (W.D.Wa. 2009). Yet MobileIron's proposed instruction is not limited to the subject matter of the specific statements at issue, which would confuse the jury and invite error.

Good further objects that MobileIron's proposed instruction is confusing, ambiguous, includes inapplicable language, does not accurately reflect the law and facts, and is not party-neutral.

---

[3] In fact, MobileIron's purported unclean hands defense — buried in its omnibus Sixth Affirmative Defense along with laches, estoppel, and waiver — is sandwiched between two patent-specific affirmative defenses (5th Affirmative Defense: Prosecution Laches and 6th Affirmative Defense: Prosecution History Estoppel).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 77 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1        Good further objects that MobileIron's proposed instruction improperly suggests a result

2  and indicates that MobileIron has already prevailed on an unclean hand defense, in a paragraph

3  that beings: "Unclean hands is also a defense to Good Technology's false advertising claim."

4        Further, MobileIron offers no justification for reconsidering the Court's prior ruling that

5  the Lanham Act claims would be presented to the jury, as noted in Good's July 9 responses (Dkt.

6  Nos. 453 & 454) to MobileIron's July 8 "Motions To Clarify."  Good's responses (Dkt. Nos. 453

7  & 454) are incorporated by reference as if fully set forth here.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 78 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1          Authorities

2          **MobileIron's Proposal**

3          Federal Circuit Bar Association, Model Patent Jury Instructions (February 2012), Section

4    B.5, Instruction 5.5; authorities cited therein; *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165,

5    1177 (9th Cir. 2007) ("'Unclean hands is a defense to a Lanham Act infringement suit.' *Japan*

6    *Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (citation

7    omitted)).   'Trademark law's unclean hands defense springs from the rationale that it is essential

8    that the plaintiff should not in his trade mark, or in his advertisements and business, be himself

9    guilty of any false or misleading representation.' *Id.*   (citation and internal quotation marks

10   omitted).  'To show that a trademark plaintiff's conduct is inequitable, defendant must show that

11   plaintiff used the trademark to deceive consumers.'*Id.*   (citation omitted). 'Bad intent is the

12   essence of the defense of unclean hands.' *Id.*   (citations omitted)."); *Fuddruckers, Inc. v. Doc's*

13   *B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("To prevail, the defendant must demonstrate

14   that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its

15   claims. *CIBA–GEIGY*, 747 F.2d at 855. '[E]quity requires that those seeking its protection shall

16   have acted fairly and without fraud or deceit *as to the controversy in issue.*' *Ellenburg v.*

17   *Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985) (emphasis added).")

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 79 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**22.  23.  LANHAM ACT FALSE ADVERTISING DAMAGES [DISPUTED]**

**Good's Proposal**

If you find that MobileIron engaged in false advertising in violated violation of the Lanham Act, you must then determine the amount of damages to be awarded to Good Technology to compensate it for the violations. Damages means the amount of money which will reasonably and fairly compensate Good Technology for any injury you find was caused by MobileIron's unfair competition in violation of the Lanham Act.

You should consider the following:

- The injury to Good Technology's reputation;
- The injury to and/or loss of Good Technology's goodwill, including injury to Good Technology's general business reputation;
- The lost profits that Good Technology would have earned but for MobileIron's unfair competition. Profit is determined by deducting all expenses from gross revenue;
- The expense of preventing customers from being deceived; and
- The cost of future corrective advertising or promotion reasonably required to correct any public confusion caused by MobileIron's unfair competition.

**GOOD'S POSITION:**

Good objects that MobileIron's proposed instruction is confusing, unduly limited, inconsistent with prior Orders by the Court and with the model instruction language that is applicable to this case and § 1117, and fails to follow controlling case law.

**MobileIron's Proposal**

If you find for Good Technology on its false advertising claim, you must determine the amount of MobileIron's profits, if any, that Good is entitled to. This is known as "disgorgement"

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

of MobileIron's profits.   Disgorgement is intended to award profits only on sales that are attributable to the false advertising; an award of MobileIron's profits is only appropriate if it is reasonable to presume that every dollar MobileIron has made has come directly out of Good Technology's pocket.   Once Good Technology has identified MobileIron's gross profits resulting from the false advertising, the burden shifts to MobileIron to show any costs that should be deducted from that amount.

**MOBILEIRON'S POSITION**:   MobileIron objects to this instruction as improper in light of the Court's ruling on MobileIron's Motion for Summary Judgment, Dkt. #349.   Pursuant to the Court's order, Good is precluded from asserting that it has suffered any economic harm. *Id*. at 5, fn. 22 ("Good states that it offered a 30(b)(6) witness and suggests that such a witness could have offered testimony about the harm suffered by Good.   ***But Good was obligated to provide any such information about harm in its interrogatory responses***.   *See* Fed. R. Civ. P. 26(3)(1).   ***Having failed to provide that information during discovery, Good many not now rely on it.***   And, in any event, the declaration submitted by Good's 30(b)(6) witness, Dr. Nicko Van Someren, ***does not allege that Good suffered any actual injury***.   *See* Docket No. 234-13.") (emphasis added); *see also id*. at 6 ("Where the Lanham Act allows injury of a non-economic nature to suffice, the UCL confers standing only where an economic injury has been alleged. ***Because Good has not shown any evidence of economic harm***, the UCL claims fail as a matter of law.") (emphasis added).   The  Court has limited Good's Lanham Act claim to disgorgement of profits and injunctive relief.   Dkt. No. 437 at 5-6 (discussing disgorgement as the only available remedy for Good for its Lanham Act claim).

Furthermore, MobileIron believes that Good Technology's Lanham Act claim should be bifurcated and tried before the Court, as explained in its motions for clarification (Dkt Nos. 442 and 443).   If this claim is not presented to the jury, the instructions relating to the Lanham Act claim will not be necessary.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 81 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    Authorities

2    **Good's Proposal**

3    *See* Ninth Circuit Model Jury Instructions, 15.25; 15 U.S.C. § 1117.

4

5    **MobileIron's Proposal**

6    *See* Ninth Circuit Model Jury Instructions, 15.25; 15 U.S.C. § 1117; *Lindy Pen Co. v. Bic

7    Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) ("an accounting is intended to award profits only

8    on sales that are attributable to the infringing conduct"); *TrafficSchool.com, Inc. v. Edriver Inc.*,

9    653 F.3d 820, 831 (9th Cir. 2011)  (an award of profits with no proof of harm is an uncommon

10   remedy in a false advertising suit," only "appropriate in false comparative advertising cases,

11   where it's reasonable to presume that every dollar defendant makes has come directly out of

12   plaintiff's pocket"); *Fed. Agric. Mortg. Corp v. It's a Jungle Out There, Inc.*, 2005 U.S. Dist.

13   LEXIS 40456, *32-33 (N.D. Cal. Dec. 7, 2005) (profits must be reasonably attributable to the

14   alleged infringement); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1134 (9th Cir.

15   1986) ("in assessing profits the plaintiff shall be required to prove defendant's sales only;

16   defendant must prove all elements of cost or deduction claimed").

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 82 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

### 23.  24.  PATENT DAMAGES [DISPUTED]

#### Good's Proposal

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that a valid claim of a patent has been infringed, you must determine the amount of money damages to be awarded to the patent holder to compensate it for the infringement.

The amount of those damages must be adequate to compensate the patent holder for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

The patent holder has the burden to persuade you of the amount of its damages.  You should award only those damages that the patent holder more likely than not suffered.  While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  A patent holder is not entitled to damages that are remote or speculative.

#### **GOOD'S POSITION:**

Good objects that MobileIron's proposed instruction is confusing and duplicative, and deviates from and modifies the model instruction language that is applicable to this case, includes inapplicable language and does not accurately reflect the law.  For example, MobileIron's proposed instruction adds to the model extensive additional language regarding apportionment that would be confusing to the jury and mislead the jury into believing it necessarily must consider any purported evidence of apportionment and must apportion in all circumstances.  This is contrary to law, as the jury is not required to do so.  For example, if the patentee has identified the proper product on which to base a royalty, then apportionment is not needed.  Further, using

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 83 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   the value of a multi component product may be proper, including where the patented features

2   drive product demand or where the product at issue is a "single functioning unit."  Further, the

3   jury may weigh and reject evidence of alleged apportionment as it deems appropriate.

4       Good further objects that MobileIron's proposal to add to the model a superfluous, vague

5   and confusing statement that "The damages award should be based on sound economic proof."

6   The model language concerning burden of proof and other matters already addresses the relevant

7   issues, and MobileIron's proposed addition would create undue emphasis.

8

9                                      **MobileIron's Proposal**

10      I will instruct you about the measure of damages.  By instructing you on damages, I am

11  not suggesting which party should win on any issue.  If you find that a valid claim of a patent has

12  been infringed, you must determine the amount of money damages to be awarded to the patent

13  holder to compensate it for the infringement.

14      The amount of those damages must be adequate to compensate the patent holder for the

15  infringement.  A damages award should put the patent holder in approximately the financial

16  position it would have been in had the infringement not occurred, but in no event may the

17  damages award be less than a reasonable royalty.  You should keep in mind that the damages you

18  award are meant to compensate the patent holder and not to punish an infringer.  An important

19  and related concept, which applies to all types of patent damages, is apportionment.   In

20  determining patent damages for products having multiple components and features, you must

21  consider evidence that would tend to separate or apportion damages between the patented features

22  and the unpatented features of the multi-component product.  In other words, patent damages

23  should be based only on the apportioned value of a multi-component product that is attributable to

24  the patented feature.

25      The patent holder has the burden to persuade you of the amount of its damages.  You

26  should award only those damages that the patent holder more likely than not suffered.  While a

27  patent holder is not required to prove its damages with mathematical precision, it must prove

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 84 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1  them with reasonable certainty.  A patent holder is not entitled to damages that are remote or

2  speculative.

3         The damages award should be based on sound economic proof.

4         **MOBILEIRON'S POSITION**:  MobileIron objects to Good's instruction because it

5  relates to lost profits, which are no longer at issue in this case.  MobileIron further objects to

6  Good's construction because it excludes language elaborating on the burden of proof for

7  damages, including the requirement that damages be proven with a reasonable certainty, not be

8  remote or speculative, and be based on sound economic proof.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 85 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    Authorities

2    **Good's Proposal**

3        *See Golden Bridge Technology v. Apple*, Case No. 5:12-cv-04882-PSG, Dkt. 523 (Final

4    Jury Instructions) (N.D. Cal. June 11, 2014) (Grewal, J.); *Emblaze v. Apple*, Case No. 5:11-cv-

5    01079-PSG, Dkt. 603 (Rev. Final Jury Instructions) (N.D. Cal. July 10, 2014) (Grewal, J.);

6    similar to Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

7    No. 5.1 [35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir.

8    2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir.

9    1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v.*

10   *Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (en banc); *see also* The Federal Circuit Bar

11   Association Model Patent Jury Instructions (May 2014), No. 6.1.

12

13   **MobileIron's Proposal**

14       Order Granting Motion For Summary Judgment On Lost Profit Damages (Dkt. No. 378);

15   Defendant MobileIron, Inc.'s Answer, Affirmative Defenses and Counterclaims to Plaintiff's

16   First Amended Complaint for Patent Infringement (Dkt. No. 41 at 10, 14); Model Patent Jury

17   Instructions for the Northern District of California (June 17, 2014), Section B.5, Instruction 5.7

18   (citing 35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir.

19   2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir.

20   1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v.*

21   *Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (en banc)); *Garretson v. Clark*, 111 U.S. 120,

22   121, 4 S. Ct. 291, 28 L. Ed. 371, 1884 Dec. Comm'r Pat. 206 (1884) (explaining that a patent

23   plaintiff "must in every case give evidence tending to separate or apportion the defendant's

24   profits and the patentee's damages between the patented feature and the unpatented features, and

25   such evidence must be reliable and tangible, and not conjectural or speculative; or he must show,

26   by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 86 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 87 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1
2

**24.  25.  PATENT DAMAGES – DATE OF COMMENCEMENT – GOOD
TECHNOLOGY'S AND MOBILEIRON'S PRODUCTS [JOINTLY PROPOSED]**

3
4

Damages that a patent holder may be awarded by you commence on the date that the

alleged infringer has both infringed and been notified of the patent.

5
6

Good Technology and MobileIron agree that for Good's allegations that MobileIron's

7

products infringe the Good Technology patents, the date of commencement was November 14,

2012.

8
9

Good Technology and MobileIron agree that for MobileIron's allegations that Good

10

Technology's products infringe MobileIron's patent, the date of commencement was March 1,

2013.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 88 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    <u>Authorities</u>

2        The Federal Circuit Bar Association Model Patent Jury Instructions (May 2014), No. 6.8;

3   Model Patent Jury Instructions for the Northern District of California (June 17, 2014), Section

4   B.5, Instruction 5.8 (citing 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech*

5   *Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138

6   F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir.

7   1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices*

8   *for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987)).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 89 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

25.  26.  CALCULATING DAMAGES IN CASES OF INDUCEMENT OR
CONTRIBUTORY INFRINGEMENT [DISPUTED]

**MobileIron's Proposal**

In order to recover damages for induced infringement, a patent holder must either prove that the accused product necessarily infringes the patent in suit or prove acts of direct infringement by others that were induced by the accused infringer. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, the patent holder must further prove the number of direct acts of infringement of the patent in suit, for example, by showing individual acts of direct infringement or by showing that a particular class of products or product uses directly infringes.

In order to recover damages for contributory infringement, a patent holder must either prove that the accused product necessarily infringes the patent in suit or prove acts of direct infringement by others to which the accused infringer made a substantial contribution. Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, the patent holder must further prove the number of direct acts of infringement of the patent in suit, for example, either by showing individual acts of direct infringement or by showing that a particular class of products or product uses directly infringes.

**Good's Proposal**

**[no instruction]**

**GOOD'S POSITION:**

Good objects that MobileIron's proposed instruction is confusing, includes inapplicable language and does not accurately reflect the law.

MobileIron's proposed instruction is superfluous, unduly repetitive of infringement instructions, and unnecessary. None of the Federal Circuit Bar Association, the American Intellectual Property Law Association, or the National Patent Jury instructions were found to include an equivalent or corresponding instruction regarding special requirements for calculating

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 90 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    damages in cases of inducement of infringement or contributory infringement. No authority

2    requires the instruction. Indeed, judges in this district omit this instruction. *See, e.g.*, Final Jury

3    Instructions, *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 12-CV-00630-LHK (N.D. Cal.

4    April 27, 2014) (Dkt. 1842); Final Jury Instructions, *TV Interactive Data Corp. v. Sony Corp.*,

5    No. 3:10-cv-00475 (N.D. Cal. Mar. 25, 2013) (Dkt. 774); *Power Integrations, Inc. v. Fairchild*

6    *Semiconductor Int'l, Inc.*, Final Jury Instructions, No. 09-5235-MMC (N.D. Cal. March 4, 2014)

7    (Dkt. 551).  The instruction unnecessarily reiterates the requirements for finding inducement of

8    infringement or contributory infringement: that there must be an act of direct infringement; it is

9    an unnecessarily duplicative instruction added to what will already be lengthy instructions and

10   risk confusing the jury.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 91 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1     <u>Authorities</u>

2     **MobileIron's Proposal**

3     Model Patent Jury Instructions for the Northern District of California (June 17, 2014)

4     Section B.5, Instruction 5.9 (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d

5     1263 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed.

6     Cir. 2009).

7

8     **Good's Proposal**

9     [See "Good's Position" above]

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 92 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

~~26.~~  **27.  PATENT DAMAGES – REASONABLE ROYALTY – ENTITLEMENT**
**[DISPUTED]**

2

3

**Good's Proposal**

4

If you find that infringement has been shown, the patent holder is entitled to at least a

5

reasonable royalty to compensate it for that infringement.

6

7

8

**GOOD'S POSITION:**

9

Good's proposed instruction is a correct and applicable statement of law and adheres to

10

the applicable language of the model instruction.  Omitting it would tend to mislead the jury.   .

11

12

**MobileIron's Proposal**

13

[No instruction.]

14

**MOBILEIRON'S POSITION**:  MobileIron objects to this instruction as unnecessary in

15

a case where neither party is seeking (or permitted to seek) lost profits damages.  *See* Order

16

Granting Motion for Summary Judgment on Lost Profits Damages, Dkt. #378.   The parties'

17

proposals for Instruction No. 23 (Patent Damages) already instruct that, where infringement is

18

found, the patent holder is entitled to no less than a reasonable royalty.  Thus, this instruction is

19

redundant and unnecessary.

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    <u>Authorities</u>

2    **Good's Proposal**

3    *See* The Federal Circuit Bar Association Model Patent Jury Instructions (May 2014), No.

4    6.5; 35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009);

5    *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir.

6    2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998)

7    (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20

8    (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite*

9    *Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Model Patent Jury

10   Instructions for the Northern District of California (June 17, 2014), No. 5.6 [35 U.S.C. § 284.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 94 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

## ~~27.~~ **28.**  DAMAGES- REASONABLE ROYALTY [DISPUTED]

### Good's Proposal

If you determine that any products made, used or sold by an alleged infringer have infringed any valid claims of any of the patents at issue in this case, then the patent holder should be awarded at least a reasonable royalty for all sales associated with each such product infringing a particular patent.

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  In considering this hypothetical negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

It is up to you, based on the evidence, to decide what royalty is appropriate in this case.

**GOOD'S POSITION:** Good objects that MobileIron seeks to improperly delete the introductory paragraph of the model instruction and mislead the jury, withholding from the jury the following accurate statement of the law: "If you determine that any products sold by an alleged infringer have infringed any valid claims of any of the patents at issue in this case, then the patent holder should be awarded at least a reasonable royalty for all sales associated with each such product infringing a particular patent." This instruction is goes to the heart of the reasonable royalty analysis and its omission would mislead the jury.

Good further objects that MobileIron seeks to improperly exclude the following applicable statement of law: "Evidence of things that happened after the infringement first began can be

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 96 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation." This reflects the seminal "book of wisdom" concept that applies to the hypothetical negotiation, and its omission risks misleading the jury to reach a decision without considering appropriate evidence. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005); Federal Circuit Bar Association Model Patent Jury Instructions § B.6.6.6.

Good further objects that MobileIron seeks to improperly include instructions regarding "a one-time lump sum payment" that are not applicable to this case. Neither Good's nor MobileIron's experts have opined that a one-time lump sum payment is appropriate, and including such an instruction would be misleading and confusing. Good further objects that such an instruction suggests a decision on an improper basis not at issue in the case. Good further objects that an instruction or verdict on such a lump-sum payment may be misused by MobileIron and invade the Court's province in considering equitable issues of injunctive relief.

**MobileIron's Proposal**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering this hypothetical negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 97 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 98 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for

2   a license covering both past and future infringing sales.

3          It is up to you, based on the evidence, to decide what royalty is appropriate in this case.

4          **MOBILEIRON'S POSITION**:  MobileIron objects to Good's proposal because it makes

5   unnecessary changes to the Model Jury instructions, and misstates the law, particularly to the

6   extent it suggests a royalty must be recovered for "all sales associated with each such product

7   infringing a particular patent."

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 99 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

**Good's Proposal**

3

*See* Model Patent Jury Instructions for the Northern District of California (June 17, 2014),

4

No. 5.7; *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v.*

5

*Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572,

6

1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en

7

banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120

8

(S.D.N.Y. 1970); *Emblaze v. Apple*, Case No. 5:11-cv-01079-PSG, Dkt. 603 (Rev. Final Jury

9

Instructions) (N.D. Cal. July 10, 2014) (Grewal, J.).

10

11

**MobileIron's Proposal**

12

Model Patent Jury Instructions for the Northern District of California (June 17, 2014)

13

Section B.5, Instruction 5.7 (citing *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338

14

(Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v.*

15

*C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d

16

1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*,

17

318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 100 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   ~~28.~~  **29.**  **PATENT DAMAGES – REASONABLE ROYALTY – THE ENTIRE MARKET**
**VALUE RULE [DISPUTED]**

2                                 **MobileIron's Proposal**

3          In determining reasonable royalty damages for products having multiple components and

4   features, a patent holder can recover damages based on the entire value of a product if the patent

5   holder can establish that the patented feature was the primary basis for customer demand for the

6   entire multi-component product.  If there is not sufficient evidence that the patented feature is the

7   primary basis for demand for the entire product, you must consider evidence that would tend to

8   separate or apportion damages between the patented features and the unpatented features of the

9   multi-component product.  In other words, reasonable royalty damages should be based only on

10  the apportioned value of a multi-component product that is attributable to the patented feature.

11

12                                 **Good's Proposal**

13         [NO INSTRUCTION]

14         **GOOD'S POSITION:**

15         Good objects that MobileIron's proposed instruction is not in the model instructions,

16  deviates from the model instruction language that is applicable to this case, includes inapplicable

17  language, and does not properly reflect the law.  Good further objects that MobileIron's proposed

18  instruction is confusing, superfluous and duplicative.  MobileIron's proposed instruction would

19  be confusing to the jury and mislead the jury into believing it necessarily must consider any

20  purported evidence of apportionment and must apportion in all circumstances.  This is contrary to

21  law, as the jury is not required to do so.  For example, if the patentee has identified the proper

22  product on which to base a royalty, then apportionment is not needed.  Further, using the value of

23  a multi component product may be proper, including not only where the patented features drive

24  product demand, but also where the product at issue is a "single functioning unit."  The separate

25  instruction concerning damages, based on the model instructions, already addresses the relevant

26  issues, and MobileIron's proposed addition would create undue emphasis.  Further, the jury may

27  weigh and reject evidence of alleged apportionment as it deems appropriate.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 101 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1    Authorities

2    **MobileIron's Proposal**

3    *Garretson v. Clark*, 111 U.S. 120, 121, 4 S. Ct. 291, 28 L. Ed. 371, 1884 Dec. Comm'r

4    Pat. 206 (1884) (explaining that a patent plaintiff "must in every case give evidence tending to

5    separate or apportion the defendant's profits and the patentee's damages between the patented

6    feature and the unpatented features, and such evidence must be reliable and tangible, and not

7    conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the

8    profits and damages are to be calculated on the whole machine, for the reason that the entire value

9    of the whole machine, as a marketable article, is properly and legally attributable to the patented

10   feature."). *See also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir.

11   2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Cornell Univ. v.*

12   *Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 285 (N.D.N.Y. 2009).

13

14   **Good's Proposal**

15   [See "Good's Position" above]

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 102 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

29.  30.  PATENT DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS
[JOINTLY PROPOSED]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items,  and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 103 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

14.     The opinion and testimony of qualified experts.

15.     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 104 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

<u>Authorities</u>

2

The Federal Circuit Bar Association Model Patent Jury Instructions (February, 2012),

3

Section B.6, Instruction 6.7 (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir.

4

2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed.

5

Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable

6

royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009), cert. denied,

7

130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-*

8

*Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098,

9

1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996);

10

Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific*

11

*Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 105 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   ~~30.~~  **31.   PATENT DAMAGES – REASONABLE ROYALTY – USE OF SETTLEMENT AGREEMENTS [JOINTLY PROPOSED]**

2

3   The damages experts for both parties in this case have referred to settlement agreements in

4   connection with their opinions as to the reasonable royalties that would be owed if you find

5   infringement of a valid patent claim.  Each of these settlement agreements cover patents other

6   than, or in addition to, the patents-in-suit.

7   There are several things you must keep in mind when considering such evidence of

8   settlement agreements.

9   First, where a settlement agreement covers patents other than, or in addition to, the patent

10  under consideration, you should consider whether the party advocating the use of the settlement

11  agreement has established that the scope of the rights conveyed in the settlement agreement is

12  comparable in scope to the license that would result from the hypothetical negotiation concerning

13  the patent under consideration. If it is not, you should consider whether the party advocating the

14  use of the settlement agreement has established that a portion of the consideration for that

15  agreement can be attributed with reasonable certainty to the use of the technology protected by

16  the patent under consideration.

17  Second, the license fees negotiated during the course of a lawsuit may be influenced by

18  factors unrelated to the value of the patent or patents that are the subject of the settlement

19  agreement. Such factors may include a threat of high litigation costs that may be strongly

20  influenced by a desire to avoid full litigation, as well as the threat of an injunction, enhanced

21  damages for willful infringement, and future litigation.

22  Third, whether the settlement agreements were negotiated on dates that are earlier or later

23  than the date on which the alleged infringement began, and whether the economic circumstances

24  were different at the time the settlement agreements were negotiated compared to the time of the

25  alleged infringement are factors to consider regarding whether the settlement agreements are

26  relevant to the hypothetical negotiation between Good Technology and MobileIron in this case.

27  The negotiation assumed in the hypothetical negotiation is assumed to take place just before the

28  alleged infringement begins.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 106 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1      <u>Authorities</u>

2      *See Intellectual Ventures I LLC v. Symantec Corp.*<u>, Case No. 1:10-cv-01067-LPS, Dkt.</u>

3  <u>673 (Final Jury Instructions For Jury Trial) (D. Del. Feb. 5. 2015) (Stark, J.);</u> *LaserDynamics v.*

4  *Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) "(The use of prior settlement

5  agreements to prove the amount of a reasonable royalty is questionable."); *Hanson v. Alpine*

6  *Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) ("License fees negotiated in the face

7  of a threat of high litigation costs may be strongly influenced by a desire to avoid full

8  litigation."); *eBay, Inc. v. MercExchange, LLC*, 547 U.S. at 396–97 (Kennedy, J., concurring)

9  (recognizing that a patentee may use "the threat of an injunction . . . for undue leverage in

10  negotiations"); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320–

11  21 (Fed. Cir. 2010) ("litigation itself can skew the results of the hypothetical negotiation.")

12  (citation omitted); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 (Fed. Cir. 1983) (the

13  "license was negotiated against a backdrop of continuing litigation and . . . infringement of the []

14  patent" and thus the "the district court could properly discount the probative value of the []

15  license with regard to a reasonable royalty").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 107 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

### ~~31.~~ **32.** PATENT DAMAGES – REASONABLE ROYALTY – COMPARABILITY OF LICENSE AGREEMENTS [JOINTLY PROPOSED]

One of the factors you should consider in determining a reasonable royalty is whether there are agreements that are comparable to the license that would result from the hypothetical negotiation concerning a particular patent in suit. Both parties have presented expert testimony to establish a reasonable royalty. In attempting to establish a reasonable royalty, agreements relied on by the parties' experts must be sufficiently comparable to the hypothetical license at issue in suit.

When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice. The circumstances surrounding a comparable agreement, however, do not need to be identical to those surrounding the hypothetical negotiation because any reasonable royalty analysis necessarily involves an element of approximation and uncertainty.

You should exercise vigilance when considering past licenses to technologies other than the patent in suit. Your evaluation of the comparability of a past license to the hypothetical license agreement the parties to this lawsuit would have negotiated should involve consideration of the comparability of the technology (in the past agreement as compared with the hypothetical agreement the parties here would have reached) as well as consideration of the comparability of the commercial terms and economic circumstances (in the past agreement as compared with the hypothetical agreement the parties here would have reached). When considering past agreements and technologies other than the patent in suit, the party advocating a particular agreement must account for differences in the technologies and economic circumstances of the contracting parties.

In evaluating whether a license agreement advanced by a party is comparable to the license that would result from the hypothetical negotiation concerning a particular patent in suit, the following factors may be considered:

1.      The date of the agreement;

2.      The type of agreement;

3.      The scope of the agreement, including that it may include more patents than are at

1        issue in this action;

2    4.    Whether the agreement includes both accused and non-accused technology;

3    5.    The relationship between the parties to the agreement;

4    6.    The intended use of the technology; and

5    7.    Any other of the relevant factors listed above in [Instruction No. 40].

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 109 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authorities

*See Intellectual Ventures I LLC v. Symantec Corp.*, Case No. 1:10-cv-01067-LPS, Dkt. 673 (Final Jury Instructions For Jury Trial) (D. Del. Feb. 5, 2015) (Stark, J.); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) (rejecting use of licenses providing "finished software products and source code, as well as services such as training, maintenance, marketing and upgrades"); *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-26 (Fed. Cir. 2009).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 110 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

**MOBILEIRON'S UNTIMELY PROPOSED "SUPPLEMENTAL INSTRUCTIONS" SHOULD BE REJECTED**

Good objects to MobileIron's new proposal on the morning of the charge conference to add instructions regarding "inventorship-presumption of validity" (Dkt. 514 at 28), "smallest saleable unit" (id. at 19), "non-infringing sales" (id. at 20), "nominal damages" (id. at 21) and "limited relevance of certain documents" (id. at 22) as untimely, unduly emphasizing certain issues, vague, ambiguous, contrary to law, prejudicial, and not part of or conforming to appropriate model instructions.  Further, MobileIron's proposals would erroneously constrain what the jury may consider.

Good further objects on the following bases and reserves the right to supplement or otherwise amend its objections after it has had a sufficient opportunity to consider MobileIron's untimely proposals:

**Inventorship- presumption of validity**:  Good further objects that there is nothing in the model instructions about any such presumption, and the 9th Cir. instructions on inventorship note that "Correction of inventorship is not an issue for the jury . . ." (9th Cir. Model Patent Jury Instructions at 4.3(c) n.19 (citing *Stark v. Advanced Magnetics, Inc., et al.*, 119 F.3d 1551 (Fed Cir. 1997)).  Further, this proposal is contrary to MobileIron's proposal to not mention the presumption for the patents, which would subsume any issue MobileIron seeks to address.\

**Smallest saleable unit**:  Both parties' proposals already include language from the 9th Cir. Model and already appropriately address damages issues.  MI's new proposal is prejudicial, confusing, and duplicative, and prejudicially emphasizes certain theories.  Further, MobileIron's cited cases provide no support regarding the proposed "nominal damages" language.

**Non-infringing sales**: Nothing in the model instructions supports this, and existing proposals already appropriately address damages issues. MI's new proposal is prejudicial, confusing, and duplicative and prejudicially emphasizes certain theories.

**Nominal damages**:  Nothing in the model instructions supports this, and existing proposals already appropriately address damages issues. MI's new proposal is prejudicial, confusing, and duplicative, and prejudicially emphasizes certain theories.  MobileIron's cited

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1   cases are inapposite.  The Fed. Cir. actually *reversed* the grant of summary judgment because

2   there was evidence in the record which could be used to determine a royalty rate.  *Info-Hold, Inc.*

3   *v. Muzak LLC*, 783 F.3d 1365, 1371-1372 (Fed. Cir. 2015):

4       **Limited relevance of certain documents**: This proposed instruction is confusing and

5   unnecessarily highlights certain documents.  MobileIron cites inapposite cases involving evidence

6   of prior physical abuse in a case of sexual abuse of a minor (Tsinnijinnie), evidence of acts of

7   violence in a drug conspiracy case (Baker), evidence of a prior conviction in a drug importation

8   case (Rubio-Villareal), and evidence of threats to show the state of mind in a murder conviction

9   (Baldwin).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 112 -

GOOD'S SUPP TO AMENDED
JOINT PROPOSED JURY INSTRUCTIONS
CV12-05826 PSG

1

2

3

4   Dated: July 27, 2015                    MCKOOL SMITH HENNIGAN, P.C.

5

6                                           By        /s/ Trent E. Campione
                                            Courtland L. Reichman
7                                           Steven J. Pollinger
                                            Craig N. Tolliver
8                                           Geoffrey L. Smith
                                            Eric C. Green
9

10                                          Attorneys for Plaintiffs
11                                          Good Technology Corporation and
                                            Good Technology Software, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY                              - 113 -                    GOOD'S SUPP TO AMENDED
                                                                      JOINT PROPOSED JURY INSTRUCTIONS
                                                                      CV12-05826 PSG